THOMAS R. BURKE (CA Bar No. 141930)
  thomasburke@dwt.com
DAVIS WRIGHT TREMAINE LLP
50 California Street, 23rd Floor
San Francisco, California 94111
Telephone: (415) 276-6500

AMBIKA KUMAR (*pro hac vice* application forthcoming)
  ambikakumar@dwt.com
DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Telephone: (206) 757-8030

ADAM S. SIEFF (CA Bar No. 302030)
  adamsieff@dwt.com
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, 24th Floor
Los Angeles, California 90017
Telephone: (213) 633-6800

Attorneys for Plaintiff
YELP INC.

IN THE UNITED STATES DISTRICT COURT

THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| YELP INC., <br><br> Plaintiff, <br><br> v. <br><br> KEN PAXTON, ATTORNEY GENERAL OF THE STATE OF TEXAS, in his official capacity, <br><br> Defendant. | Case No. 3:23-cv-04977 <br><br> **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

## I. PRELIMINARY STATEMENT

1. This lawsuit seeks to prevent Defendant Texas Attorney General Ken Paxton ("Attorney General") from punishing Plaintiff Yelp Inc. ("Yelp") for publishing truthful information about businesses that offer pregnancy-related counseling to the public. *See* Ex. 1. The Attorney General—who disagrees with the decision to publish this information—has announced his intent to sue Yelp, as soon as September 29, for stating that crisis pregnancy centers "typically provide limited medical services and may not have licensed medical professionals onsite." This threat targets truthful speech fully protected by the First Amendment, which Yelp months ago replaced with a notice that even the Attorney General admits is "accurate." Yelp seeks declaratory and injunctive relief to prevent the further violation of its rights under the First Amendment to the United States Constitution.

2. Yelp provides an online forum that connects people with local businesses. Yelp users have contributed more than 260 million cumulative reviews of more than 6.3 million active claimed local business locations.[1] Consumers and businesses count on Yelp to provide trustworthy and reliable information that people can use to make decisions, whether about where to eat dinner, which plumber to hire, or which health service providers they should contact. Yelp works hard to maintain that trust. When Yelp detects that consumers may be deceived when they search for information about local businesses on Yelp, Yelp provides additional information to help mitigate the potential for deception.

3. That is what happened here. Yelp learned that some crisis pregnancy centers— businesses that offer pregnancy-related counseling, but not abortion services or referrals to abortion providers—were leading users seeking abortion care away from medical providers to anti-abortion counseling services. Beginning in August 2022, Yelp published a notice informing consumers that crisis pregnancy centers "typically provide limited medical services and may not have licensed medical professionals onsite." This is a truthful statement intended to enable Yelp users to make informed choices. Yelp never removed crisis pregnancy centers from its platform,

---

[1] Yelp Internal Data, as of December 31, 2022. Contributed reviews include those that are recommended, not recommended, or removed from Yelp's platform.

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF     1

1  and consumers who are looking for the services offered by crisis pregnancy centers can contribute
2  reviews, ratings, and other content to the Yelp business pages corresponding to those centers, just
3  as they would other businesses listed on Yelp. Yelp also for years has made substantial efforts to
4  categorize crisis pregnancy centers more accurately, and to distinguish them from health care
5  providers that do offer abortions or abortion referrals.

6  4. In February 2023, the Attorney General signed a letter demanding Yelp remove its
7  original notice about crisis pregnancy centers, claiming the notice was misleading. Although the
8  previous notice was truthful and not misleading, Yelp updated the notice to state that "Crisis
9  Pregnancy Centers do not offer abortions or referrals to abortion providers." The Attorney General
10 has publicly conceded that this statement is "accurate," but still intends to punish Yelp using his
11 authority to prosecute allegedly deceptive trade practices.

12 5. The First Amendment bars that action. The Attorney General may not punish Yelp
13 for publishing truthful information, *Bartnicki v. Vopper*, 532 U.S. 514, 527-28 (2001), including
14 truthful consumer information, *Va. State Bd. of Pharm. v. Va. Citizens Consumer Council, Inc.*,
15 425 U.S. 748, 770-73 (1976). Such "[o]fficial reprisal for protected speech" is especially
16 pernicious because it "threatens to inhibit the exercise" of free expression in the future. *Hartman*
17 *v. Moore*, 547 U.S. 250, 256 (2006) (cleaned up).

18 6. Yelp requests an order declaring the Attorney General's threatened prosecution
19 unconstitutional; finding that Yelp's publication of the original crisis pregnancy center notice did
20 not violate the Texas Deceptive Trade Practices Act (Tex. Bus. & Comm. Code § 17.46); enjoining
21 the Attorney General from prosecuting Yelp or taking any other action to in any way penalize Yelp
22 for exercising its free speech rights; and awarding Yelp its attorneys' fees for having to file this
23 action to vindicate those rights.

24 **II. PARTIES**

25 7. Yelp Inc. is a Delaware corporation with its principal place of business in San
26 Francisco, California.

27 8. Ken Paxton is the Attorney General of the State of Texas. He is sued in his official
28 capacity. He is the chief law enforcement officer of the State of Texas and authorized to enforce

1  the Texas Deceptive Trade Practices Act.  *See* Tex. Bus. & Com. Code §§ 17.45(8); 17.47(a).

## III.   SUBJECT MATTER JURISDICTION

9. This action arises under the United States Constitution, particularly the First and Fourteenth Amendments.  It also arises under the Civil Rights Act, 42 U.S.C. §§ 1983 and 1988.

10. This Court has subject-matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1343(a), and 1367(a), because Yelp's claims either arise under federal law or share a common nucleus of operative fact with claims that arise under federal law.

11. This Court has authority under the Declaratory Judgment Act, 28 U.S.C. § 2201(a), to decide this dispute and award relief because it presents an actual case or controversy within the Court's jurisdiction.

## IV.   PERSONAL JURISDICTION AND VENUE

12. The Court has personal jurisdiction over the Attorney General under Fed. R. Civ. Proc. 4(k)(1)(A) and Cal. Code Civ. Proc. § 410.10 because he has engaged in specific conduct purposefully aimed at chilling the speech of a California resident in the State of California, including by transmitting threats to Yelp in the Northern District of California where Yelp is headquartered.  The Attorney General's actions have already caused and, unless enjoined, will continue to cause Yelp irreparable injuries in California.

13. Venue is proper in this District under 28 U.S.C. §§ 1391(b)(1) & (2) because the injuries giving rise to this action have been and will continue to be suffered by Yelp in San Francisco, California.

## V.   DIVISIONAL ASSIGNMENT

14. Assignment to the San Francisco Division is proper under Local Civil Rule 3-2(c) & (e) because the injuries giving rise to this action have been and will continue to be suffered by Yelp in San Francisco County, California.

## VI.   FACTUAL ALLEGATIONS

**A.   Yelp.com and Its Services**

15. Yelp owns and operates Yelp.com, a popular local search website, mobile website, and related mobile applications that allow users to share information about their communities and

1  make informed decisions about local businesses and other local entities. Using Yelp's platform, members of the public may read and write reviews, as well as access many other forms of consumer-related information about local businesses, services, and other entities, including restaurants, doctors, auto mechanics, plumbers, churches, and government agencies.

16. One of Yelp's founding principles is that the best sources for information about a local community are the community members themselves. Yelp users have contributed more than 260 million reviews of local business and other entities on Yelp's platform. These reviews allow other consumers to find a broad range of helpful information about local companies and other consumer-facing entities.

17. Yelp's business model depends on maintaining the trust of its tens of millions of users by providing reliable, trustworthy, and useful information. Yelp accordingly devotes significant resources to mitigate false, fraudulent, immaterial, and misleading reviews. It employs sophisticated software to weed out suspicious reviews, such as those that might result from a conflict of interest, improper solicitation, or that that may be unreliable or irrelevant. "Yelp invested tens of millions of dollars and hundreds of thousands of hours in developing and maintaining" this software, "which runs on hundreds of computers." *Multiversal Enterprises-Mammoth Properties, LLC v. Yelp Inc.*, 74 Cal. App. 5th 890, 894 (2022). The software is continually maintained and updated by a team of experienced engineers to protect the integrity of experiences on Yelp.

18. Yelp also polices attempts to bypass its policies in other ways, even as those attempts grow more advanced. For example, in recent years, there has been a rise of review exchange groups, which attempt to publish fraudulent online reviews on platforms like Yelp, making them less reliable for everyone. These groups facilitate the buying, selling, or exchange of fake reviews.[2] In response, Yelp continued to invest in automated and manual content moderation, to better identify such groups and their handiwork and stem the impact of their attempts to publish

---

[2] Greg Sterling, *Yelp Cracks Down on 'Review Rings' as Google Continues to See Widespread Mapspam*, Search Engine Land (Jan. 10, 2020), https://searchengineland.com/yelp-cracksdown-on-review-rings-as-google-continues-to-see-widespreadmapspam-327432; Sudheer Someshwara, *Yelp Updates Recommendation Software to Better Target and Mitigate Content from Online Review Exchange Groups* (Feb. 25, 2021), https://blog.yelp.com/news/yelp-updates-recommendation-software-to-better-target-and-mitigate-content-from-online-reviewexchange-groups/.

untrustworthy content.

19. Yelp's efforts extend to providing additional information that may help dispel potential consumer deception or confusion. For example, since 2012, Yelp has maintained a Consumer Alert program, which aims to fight the spread of misinformation on Yelp. A Consumer Alert is a pop-up notice that is placed on a business page to warn users when Yelp has detected particularly egregious activity (for example, large numbers of reviews coming from a single IP address, or reviews from users who may be connected to a group that coordinates incentivized fake reviews) or attempts to mislead them (for example, compensated review activity).[3] Consumers can also find accurate information about food safety, health scores, and restaurant inspections, provided by Yelp on Yelp business pages. Yelp displays health score information through partnerships with local government and by working with third-party partners that collect public data from local health departments.

### B. Yelp Discovers and Corrects Misleading Information About Crisis Pregnancy Centers on its Service.

20. Reports from 2018 alerted Yelp to attempts by some crisis pregnancy centers ("CPCs") to mislead consumers about their services.[4] Specifically, Yelp learned that some CPCs were diverting consumers seeking medical abortions away from actual medical providers by manipulating search results to promote their non-abortion services in response to queries such as, "Where can I get an abortion?"[5]

21. Yelp investigated the issue, including by reviewing leading research. A 2014 study at the University of North Carolina found, for example, that 80 percent of CPC websites provided at least one false or misleading piece of information.[6] A 2018 study by researchers at the

---

[3] Yelp maintains a microsite where it publishes information about its efforts to fight the spread of misinformation its platform, including information about its Consumer Alerts and an annual Trust & Safety Report, at https://trust.yelp.com/.

[4] Robin Marty, *How Google Maps Leads Women Seeking Abortions Astray*, Gizmodo (Feb. 12, 2018), https://gizmodo.com/how-google-maps-leads-women-seeking-abortions-astray-1822882758; HBO, *Last Week Tonight With John Oliver*, "Crisis Pregnancy Centers," (April 8, 2018), www.youtube.com/watch?v=4NNpkv3Us1I

[5] *See also* Expose Fake Clinics, "What exactly is a fake clinic?" ExposeFakeClinics.com (accessed Sept. 27, 2023), https://www.exposefakeclinics.com/what-is-a-cpc-2

[6] Amy G. Bryant et al., "Crisis pregnancy center websites: Information, misinformation, and disinformation" Contraception (December 2014), https://pubmed.ncbi.nlm.nih.gov/25091391/

---

5

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

University of Georgia and Emory University found that 58 percent of Georgia CPC websites failed to inform visitors that the centers do not provide abortions or refer patients to facilities that offer abortions.[7] And in 2019, researchers at the University of Pittsburgh School of Medicine and University of California at San Francisco found that many CPCs operate in "bad faith" by "employ[ing] sophisticated strategies to draw in women who are seeking abortion services," only for these women "to find that they neither provide abortion nor refer to abortion providers."[8]

22. Based on these studies, Yelp manually evaluated thousands of business pages providing pregnancy-related services and, where appropriate, categorized a business as a "Crisis Pregnancy Center." This category included businesses offering pregnancy-related services, but not abortion services or referrals to abortion providers.[9]

23. By the same token, Yelp users who initiate searches on the platform for pregnancy resources or services, or specifically for CPCs, have no difficulty reaching Yelp business pages for CPCs—thanks in part to the specific category for those businesses—and consumers have the ability to provide reviews, ratings, and other contributions to CPC business pages, just as they would other businesses listed on Yelp. This designation better connects members of the public to the information they seek: while some people come to Yelp to find businesses that offer pregnancy resources, others turn to Yelp to find reliable information specifically about abortion care providers.

24. After the Supreme Court's decision in *Dobbs v. Jackson Women's Health Organization*, 142 S. Ct 2228 (2022), Yelp recommitted to providing accurate, useful, and trustworthy information about reproductive health services to users. This led Yelp to add a "Consumer Notice" on business pages for designated Crisis Pregnancy Centers informing consumers that these businesses "typically provide limited medical services and may not have

---

[7] Andrea Swartzendruber et al., "Sexual and Reproductive Health Services and Related Health Information on Pregnancy Resource Center Websites: A Statewide Content Analysis," Womens Health Issues (Jan-Feb 2018), https://pubmed.ncbi.nlm.nih.gov/29158038/.

[8] Sonya Borrero, "Crisis Pregnancy Centers: Faith Centers Operating in Bad Faith," 34 J. Gen. Intern. Med. 144, 144-45 (2019), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6318184/.

[9] Madeleine Schmidt, *Yelp Fixed Its Anti-Choice Clinic Problem. Why Can't Google Do the Same?* Rewire News Group (Oct. 1, 2019), https://rewirenewsgroup.com/2019/10/01/yelp-fixed-its-anti-choice-clinic-problem-why-cant-google-do-the-same/.

licensed medical professionals onsite."[10] This is a true statement based on evidence of what CPCs "may not" offer and what they "typically" provide. In fact, the Office of the Attorney General of the State of California issued a consumer alert to Californians on June 1, 2022 that, in sum and substance, included the same statement.[11]

### C. Attorney General Paxton Demands That Yelp Remove The Crisis Pregnancy Center Notice.

25. A coalition of 24 state attorneys general, including Attorney General Paxton, wrote Yelp on February 7, 2023, demanding that it "rescind its August announcement immediately[.]" Ex. 2 at 1. The letter claims the information in the Consumer Notice "is misleading" and designed "to discourage women and families from accessing their services." *Id.* at 2.

26. Yelp responded by letter the following day, citing research demonstrating that its Consumer Notice "is accurate and not misleading." Ex. 3 at 2-3. Yelp further explained that its goal is not to steer users one way or another, but to enable them to access the information they desire based on the queries they enter. Users "have no difficulty reaching pages for Crisis Pregnancy Centers," if that is what they wish to access, and Yelp "has taken no action to remove Crisis Pregnancy Center business pages from Yelp." *Id.* at 3. "Any claim that Yelp users interested in Crisis Pregnancy Centers are being 'diverted' from those businesses," Yelp explained, "is not credible." *Id.*

27. Solely to address the (unfounded) concerns raised in the letter, and while explicitly confirming that the previous language was not misleading, Yelp agreed to revise the Consumer Notice to state that "Crisis Pregnancy Centers do not offer abortions or referrals to abortion providers." *Id.* at 3.

---

[10] Noorie Malik, *Providing consumers with reliable information about reproductive health services*, Yelp.com Blog (Aug. 23, 2022), https://blog.yelp.com/news/providing-consumers-with-reliable-information-about-reproductive-health-services/

[11] Attorney General Bonta Issues Consumer Alert Warning Californians That Crisis Pregnancy Centers Do Not Offer Abortion or Comprehensive Reproductive Care (June 1, 2022), https://oag.ca.gov/news/press-releases/attorney-general-bonta-issues-consumer-alert-warning-californians-crisis.

28. On February 14, 2023, the Attorney General's office issued an updated press release stating this Revised Consumer Notice—an example of which appears on a business page below—provided "an accurate description."[12]



### D. Attorney General Paxton Announces His Intent To Prosecute Yelp

29. The Attorney General mailed Yelp a letter dated September 22, 2023 providing "notice of intent to file suit against Yelp, Inc." (cleaned up) having "concluded that Yelp . . . violated" the Texas Deceptive Trade Practices Act by publishing the original (and since updated) Consumer Notice. *See* Ex. 1 at 1. The letter states that the Attorney General is authorized to file suit within "seven days." *Id.* at 1; *see also* Tex. Bus. & Com. Code § 17.47(a) (requiring seven-days' notice before filing suit). The letter warns that the Attorney General is authorized to seek "civil penalties of up to $10,000.00 per violation" as well as "attorneys' fees," among other penalties. *Id.* at 1. Notably, the letter does not confine its threat to Yelp's "violations" in Texas,

---

[12] Texas Attorney General Ken Paxton, Press Release, "Paxton Condemns Yelp for Discriminating Against Crisis Pregnancy Centers" (Feb. 14, 2023), https://www.texasattorneygeneral.gov/news/releases/paxton-condemns-yelp-discriminating-against-crisis-pregnancy-centers. The Attorney General of the Commonwealth of Kentucky, who was the lead author of the letter, also wrote that he "appreciate[d] Yelp's timely response in addressing our concerns." Kentucky Attorney General, Press Release, "Attorney General Cameron Issues Statement After Yelp Changes Policy Related to Discrimination Against Crisis Pregnancy Centers" (February 9, 2023), https://www.kentucky.gov/Pages/Activity-stream.aspx?n=AttorneyGeneral&prId=1317

but seeks to punish editorial choices—made by a California company—globally.

30. Based on this letter, Yelp believes the Attorney General will file suit as soon as Friday, September 29, 2023. Yelp not only expects imminent prosecution for these past exercises of its First Amendment rights, but the Attorney General's actions—taken despite Yelp's admittedly "accurate" Revised Consumer Notice—have caused Yelp concern about exercising those rights without inhibition in the future.

31. An injunction is necessary to avert an irreparable chill on Yelp's First Amendment rights, and free Yelp from either forgoing its rights or facing prosecution for exercising them.

## VII.   CLAIMS FOR RELIEF

### COUNT ONE:
### VIOLATION OF THE FIRST AND FOURTEENTH AMENDMENTS, PURSUANT TO 42 U.S.C. § 1983

32. Plaintiff incorporates all prior paragraphs of this Complaint.

33. The First Amendment protects the publication of truthful information that does not otherwise fall within any defined category of speech excluded from protection.

34. Yelp's publication of truthful statements about entities on Yelp pages is fully protected by the First Amendment without exception, as applied to the State of Texas under the Fourteenth Amendment.

35. The Attorney General has violated the First Amendment by seeking to punish Yelp's expressive activity without any legitimate government interest.

36. The Attorney General has violated the First Amendment by subjecting Yelp to illegitimate prosecution for the exercise of its First Amendment rights.

37. The Attorney General has violated the First Amendment by retaliating against Yelp for Yelp's exercise of its First Amendment rights. Yelp's publication of truthful statements about entities on Yelp pages is protected speech, the Attorney General's imminent lawsuit chills that speech, would silence a person of ordinary firmness from future First Amendment activities, and is transparently in reaction to, and motivated by, Yelp's protected speech.

**COUNT TWO:**
**DECLARATORY JUDGMENT,**
**PURSUANT TO 28 U.S.C. § 2201**

38. Plaintiff incorporates all prior paragraphs of this Complaint.

39. This action presents an actual case or controversy between Yelp and the Attorney General concerning rights secured to Yelp under the U.S. Constitution, the extent to which Texas Business & Commerce Code § 17.46 may impose liability on Yelp consistent with those rights, and whether the Attorney General can establish that Yelp's actions violate Texas Business & Commerce Code § 17.46. Declaratory relief is therefore necessary and appropriate.

## VIII.   PRAYER FOR RELIEF

WHEREFORE, Plaintiff Yelp respectfully requests that the Court:

1. Declare that Defendant's noticed intent to prosecute Plaintiff under Texas Business & Commerce Code § 17.46 is unconstitutional because Defendant seeks to punish Yelp for publishing truthful information protected by the First Amendment;

2. Declare that Yelp did not engage in any false, misleading, or deceptive acts or practices in violation of Texas Business & Commerce Code § 17.46 by publishing truthful information that CPCs "typically provide limited medical services and may not have licensed medical professionals onsite";

3. Preliminarily and permanently enjoin Defendant and his agents, employees, and all persons acting under his direction or control from taking any action to prosecute, fine, or in any way penalize Yelp, including under Texas Business & Commerce Code §17.46, for publishing the challenged consumer notices;

4. Enter judgment in favor of Yelp;

5. Award Yelp its reasonable costs and attorneys' fees, under 42 U.S.C. § 1988; and

6. Award Yelp all other such relief as the Court deems just and proper.

DATED: September 27, 2023           DAVIS WRIGHT TREMAINE LLP

By: */s/   Thomas R. Burke*
           Thomas R. Burke

Attorneys for Plaintiff Yelp Inc.