Alyssa Bixby-Lawson
Assistant Attorney General
CA Bar No. 267107 / TX Bar No. 24122680
Office of the Attorney General
P.O. Box 12548, Capital Station
Austin, Texas 78711-2548
Tel.: (210) 270-1118 | Fax: (512) 302-0667
Alyssa.Bixby-Lawson@oag.texas.gov

Ryan S. Baasch (*pro hac vice application pending*)
Division Chief, Consumer Protection Division
TX Bar No. 24129238
Office of the Attorney General
P.O. Box 12548, Capital Station
Austin, Texas 78711-2548
Tel: (512) 463-9917
Ryan.Baasch@oag.texas.gov

Scott Froman (*pro hac vice application pending*)
Assistant Attorney General
TX Bar No. 24122079
Office of the Attorney General
P.O. Box 12548, Capital Station
Austin, Texas 78711-2548
Tel: (512) 463-1264
Scott.Froman@oag.texas.gov

Attorneys for Defendant
KEN PAXTON, ATTORNEY GENERAL OF
THE STATE OF TEXAS

IN THE UNITED STATES DISTRICT COURT

THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| YELP INC., | Case No. 3:23-cv-04977-TLT |
| Plaintiff, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S COMBINED RESPONSE TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND MOTION TO DISMISS** |
| v. | |
| KEN PAXTON, ATTORNEY GENERAL OF THE STATE OF TEXAS, in his official capacity, | |
| Defendant. | Case Filed: September 27, 2023 |

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ...........................................................................................................1

II.    PROCEDURAL AND FACTUAL BACKGROUND..............................................2

III.   STANDARD OF REVIEW ..........................................................................................3

     A.     Motion for Preliminary Injunction...........................................................3

     B.     Motion to Dismiss.........................................................................................3

IV.    YELP CANNOT OBTAIN A PRELIMINARY INUNCTION BECAUSE ITS CLAIMS SHOULD BE DISMISSED ...........................................................................................3

     A.     The *Younger* Abstention Doctrine Bars this Court from exercising jurisdiction affecting the Texas State Court Proceeding.....................................................4

     B.     Yelp Cannot Establish Personal Jurisdiction ..........................................6

          1.     This Court Lacks General Personal Jurisdiction Because the Texas Defendant is Not "At Home" in California...................................6

          2.     This Court Lacks Specific Personal Jurisdiction Because Yelp's Claim Is Based on Conduct in Texas...................................................7

               i.     Defendant's Activities Were Not Purposefully Directed Toward California ...........................................................8

               ii.    Yelp's Claim Does Not Arise Out of or Relate to Any California Contacts..................................................................11

               iii.   Exercising Personal Jurisdiction Over a Texas State Agency Would Be Unreasonable ............................................12

     C.     Venue in California is Improper ..............................................................14

     D.     Yelp's First Amendment Argument Fails..............................................16

V.     YELP HAS NOT SHOWN IMMEDIATE AND IRREPARABLE HARM....................18

VI.    CONCLUSION..............................................................................................................19

1

2

## TABLE OF AUTHORITIES

**Cases**                                                                                          **Page**

*Am. Trucking Ass'n, Inc. v. City of Los Angeles,*
    559 F.3d 1046 (9th Cir. 2009) ...................................................................3

*Atl. Marine Constr. Co. v. U.S. Dist. Court,*
    571 U.S. 49 (2013).....................................................................................14

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.,*
    874 F.3d 1064 (9th Cir. 2017) ............................................................ 7-8, 11

*B&G Prod. Co. v. Vacco,*
    No. 0:98-cv-2436, 1999 WL 33592887, D. Minn. Feb. 19, 1999 ...................10

*Bristol-Myers Squibb Company v. Connors,*
    979 F.3d 732 (9th Cir. 2020) ............................................................. 1, 4-7

*Bruton v. Gerber Products Co.,*
    703 F. App'x 468 (9th Cir. 2017) ...............................................................17

*Burger King Corp. v. Rudzewicz,*
    471 U.S. 462 (1985).............................................................................. 7-8, 12

*Calder v. Jones,*
    465 U.S. 783 (1984)......................................................................................8

*Canatella v. California,*
    404 F.3d 1106 (9th Cir. 2005) .....................................................................5

*Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York,*
    447 U.S. 557 (1980).....................................................................................16

*CollegeSource, Inc. v. AcademyOne, Inc.,*
    653 F.3d 1066 (9th Cir. 2011) .....................................................................6

*Daimler AG v. Bauman,*
    571 U.S. 117 (2014)......................................................................................7

*Dedication and Everlasting Love to Animals v. Commonwealth of Pennsylvania,*
*Bureau of Charitable Organizations,*
    101 F. App'x 224 (9th Cir. 2004). ...............................................................15

*Doe 1 v. AOL L.L.C.,*
    552 F.3d 1077 (9th Cir. 2009) ....................................................................14

*Dole Food Co. v. Watts,*
    303 F.3d 1104 (9th Cir. 2002) .....................................................................7

*Freestream Aircraft (Bermuda) Freestream Aircraft Ltd. v. Aero Law Grp.,*
    905 F.3d 597 (9th Cir. 2018) .......................................................................8

*Gulf Ins. Co. v. Glasbrenner,*
    417 F.3d 353 (2d Cir. 2005)................................................................14

*Hartman v. Moore,*
    547 U.S. 250 (2006)........................................................................8

*Hunt v. Erie Ins.Grp.,*
    728 F.2d 1244 (9th Cir. 1984)...........................................................9

*In re Marino,*
    949 F.3d 483 (9th Cir. 2020)...........................................................19

*Ins. Co. of N. Am. v. Marina Salina Cruz,*
    649 F.2d 1266 (9th Cir. 1981) ....................................................12-13

*Int'l Shoe Co. v. Wash.,*
    326 U.S. 310 (1945)........................................................................6

*J. McIntyre Mach., Ltd. v. Nicastro,*
    564 U.S. 873 (2011)........................................................................8

*Ky. v. Graham,*
    473 U.S. 159 (1985)........................................................................6

*Leroy v. Great W. United Corp.,*
    443 U.S. 173 (1979)..................................................................13-16

*Lopez v. Brewer,*
    680 F.3d 1068 (9th Cir. 2012) ...........................................................3

*M&A Gabaee v. Cmty. Redevelopment Agency,*
    419 F.3d 1036 (9th Cir. 2005)...........................................................6

*Mavrix Photo, Inc. v. Brand Techs., Inc.,*
    647 F.3d 1218 (9th Cir. 2011)...........................................................6

*Mazurek v. Armstrong,*
    520 U.S. 968 (1997) (per curiam)......................................................3

*Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog;*
    954 F.2d 1174 (6th Cir. 1992) .......................................................9-10

*Morales v. TWA,*
    504 U.S. 374 (1992)......................................................................18

*Monster Beverage Corp. v. Herrera,*
    650 Fed. App'x. 344 (9th Cir. 2016) ...................................................6

*Morningside Church v. Rutledge,*
    9 F.4th 615 (8th Cir. 2021)..............................................................9

*Pennhurst State Sch. & Hosp. v. Halderman,*
    465 U.S. 89 (1984).........................................................................2

iv

*Peterson v. Kennedy,*
    771 F.2d 1244 (9th Cir. 1985) ........................................................................9

*Picot v. Weston,*
    780 F.3d 1206 (9th Cir. 2015) ........................................................................8

*Piedmont Label Co. v. Sun Garden Packing Co.,*
    598 F.2d 491 (9th Cir. 1979) ........................................................................14

*PTI, Inc. v. Philip Morris Inc.,*
    100 F. Supp. 2d 1179 (C.D. Cal. 2000) ........................................................12

*Reese v. BP Exploration,*
    643 F.3d 681 (9th Cir. 2011) ........................................................................17

*Richmond Techs., Inc. v. Aumtech Bus. Sols.,*
    No. 5:11-cv-02460-LHK, 2011 WL 2607158 (N.D. Cal. July 1, 2011)..........14

*Schwarzenegger v. Fred Martin Motor Co.,*
    374 F.3d 797 (9th Cir. 2004) ..........................................................................7

*Southland Sod Farms v. Stover Seed Co.,*
    108 F.3d 1134 (9th Cir. 1997) ......................................................................17

*Sprint Communications, Inc. v. Jacobs,*
    571 U.S. 69 (2013) ........................................................................................4-5

*State ex rel. Rosenblum v. Living Essentials, LLC,*
    529 P.3d 939 (Or. 2023) ................................................................................16

*Stone v. Tex.,*
    76 Cal. App. 4th 1043 (1999) ........................................................................12

*Stormans, Inc. v. Selecky,*
    586 F.3d 1109 (9th Cir. 2009) ........................................................................3

*Stroman Realty, Inc. v. Wercinski,*
    513 F.3d 476 (5th Cir. 2008) ...................................................................10, 13

*Thos. P. Gonzalez Corp. v. Consejo Nacional De Produccion De Costa Rica,*
    614 F.2d 1247 (9th Cir. 1980) ........................................................................9

*Turner v. Abbott,*
    53 F. Supp. 3d 61 (D.D.C. 2014) ....................................................................7

*Walden v. Fiore,*
    571 U.S. 277 (2014)......................................................................................8-9

*Washington v. Los Angeles Cnty. Sheriff's Dep't,*
    833 F.3d 1048 (9th Cir. 2016) ........................................................................3

*Winter v. Nat. Res. Def. Council, Inc.,*
    555 U.S. 7 (2008)............................................................................................3

v

Defendant's Combined Response to Plaintiff's Motion for Preliminary Injunction and Motion to Dismiss
Case No. 3:23-cv-04977-TLT

*Woodke v. Dahm*,
    70 F.3d 983 (8th Cir. 1995) .................................................................14

*World-Wide Volkswagen Corp. v. Woodson*,
    444 U.S. 286 (1980)...........................................................................13

*Yahoo! Inc. v. La. Ligue Contre Le Racisme*,
    433 F.3d 1199 (9th Cir. 2006) .............................................................9

*Younger v. Harris*,
    401 U.S. 37 (1971)..................................................................... *passim*

**Rules**

Cal. Civ. Proc. Code § 410.10 ......................................................................6

Fed. R. Civ. P. 12(b)(1)........................................................................1, 3

Fed. R. Civ. P. 12(b)(2)..........................................................1, 3, 6, 14

Fed. R. Civ. P. 12(b)(3)..........................................................1, 3, 14, 16

Tex. R. Civ. P. 99(b) ...................................................................................19

Tex. R. Civ. P. 194.2(a) .............................................................................19

**Statutes**

28 U.S.C. § 1391(b) ...........................................................................14-15

28 U.S.C. § 1391(b)(1) ..............................................................................14

28 U.S.C. § 1391(b)(2) ..............................................................................14

28 U.S.C. § 1406(a) ...................................................................................13

Tex. Bus. & Com. Code §§ 17.41–17.63 ....................................................2

Tex. Bus. & Com. Code § 17.46(a) ...........................................................18

Tex. Bus. & Com. Code § 17.62 ................................................................11

**Constitutional Provisions**

Tex. Const. art. III, § 58 ..............................................................................7

Defendant's Combined Response to Plaintiff's Motion for Preliminary Injunction and Motion to Dismiss
Case No. 3:23-cv-04977-TLT

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Defendant Ken Paxton, Attorney General of the State of Texas, files this combined (1) brief in response to Yelp Inc.'s ("Yelp's") *Notice of Motion for Preliminary Injunction and Memorandum of Points and Authorities in Support* (ECF # 16) and (2) Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1)-(3) because *Younger* abstention bars this suit, this Court lacks personal jurisdiction over Defendant, and this is an improper venue.

Following a State investigation into Yelp's violation of the Texas Deceptive Trade Practices Act, Defendant sent Yelp a 7-day notice of its intention to file suit against Yelp pursuant to 17.47(a) of the Texas Business and Commerce Code.  Yelp, in an attempt to prevent Defendant from filing suit against it in Texas state court, filed this case in California federal district court.

As detailed below, this case should be dismissed, and Yelp is unlikely to succeed on the merits of it for several reasons.  First, this case presents the archetypal example of a civil court proceeding in which the Ninth Circuit has held that the *Younger* abstention precludes jurisdiction. Indeed, this Circuit's recent *Younger* abstention case law is so emphatically on-point and fatal for Yelp that it calls into question whether Yelp had a good-faith basis to file this lawsuit. Specifically, in *Bristol-Myers Squibb v. Connors*, the Court affirmed that *Younger* abstention categorically forecloses federal court suits for an injunction against a State Attorney General enforcing a State deceptive trade practices statute, *even* where the First Amendment is implicated. *See Bristol-Myers Squibb Company v. Connors*, 979 F.3d 732, 735 (9th Cir. 2020).  And other threshold problems are just as fatal. Yelp has not established either general or specific personal jurisdiction over Defendant because Defendant is not "at home" in California, and Yelp's claim is based on conduct in Texas.  Additionally, venue is improper because none of the events giving rise to this suit occurred in the Northern District of California.  Finally, although Defendant's First Amendment argument can—and must—be more fully litigated in Texas State Court, it will ultimately fail because Yelp's disparate treatment of pregnancy resource centers misled consumers.

Furthermore, Yelp has not shown that it will suffer immediate and irreparable harm as a

result of the State's suit, much less from having to litigate its First Amendment argument in a Texas State court. "That a litigant's choice of forum is reduced has long been understood to be a part of the tension inherent in our system of federalism." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 123 (1984).

Yelp's motion for preliminary injunction should be denied and this suit should be dismissed.

## II.     PROCEDURAL AND FACTUAL BACKGROUND

This case arises out of the Defendant's investigation into Yelp's disparagement of the goods, services, or business of another by giving a false or misleading representation of facts in violation of Texas Deceptive Practices—Consumer Protection Act, Tex. Bus. & Com. Code §§ 17.41–17.63 ("DTPA").  Specifically, Yelp posted a "consumer notice" on the Yelp business pages of every pregnancy resource center across the nation, misleadingly stating that these centers "typically provide limited medical services and may not have licensed medical professionals onsite."  Sieff Ex. 11 ¶ 19, ECF # 16-2. This was a highly unusual disclaimer because pregnancy resource centers are establishments that provide a host of counseling and services to pregnant women and frequently *do* have medical professionals on-site. *Id.* ¶¶ 15-16. They just do not provide abortions. *Id.* Yelp did not append this "consumer notice" to the pages of other providers that catered to pregnant women—specifically, ones that *do* provide abortions—even though many of those facilities do *not* have medical professionals on-site. *Id.* ¶ 20. And Yelp was candid that politics—not an interest in informing consumers—was the primary motivation for this discrepancy. *Id.* ¶ 18.

On February 7, 2023, the Attorneys General of twenty-four States, including Texas, expressed their concerns in a joint letter to Yelp's CEO Jeremy Stoppelman. On September 22, 2023, in accordance with section 17.47(a) of the Texas Business and Commerce Code, Defendant sent Yelp a notice informing Yelp of its intention to file suit for Yelp's violations of the DTPA. On September 27, 2023, however, Yelp filed the present suit to prevent Defendant from filing its Texas suit for violations of the Texas DTPA.  According to Yelp, this suit "seeks to prevent [Defendant] from punishing [Yelp] for publishing truthful information about businesses that offer

1    pregnancy-related counseling to the public."  ECF # 1 at 1.

2          On September 28, 2023, Defendant's office filed suit against Yelp in the 335th District

3    Court of Bastrop County, Texas, alleging DTPA violations arising out of Yelp's false or

4    misleading representation of facts on the Yelp business pages of pregnancy resource centers.

5    Sieff Ex. 11.  That suit seeks civil penalties, injunctive relief, and damages for Yelp's DTPA

6    violations.

7          On October 2, 2023, Yelp filed a Motion for Preliminary Injunction in this Court, seeking

8    to enjoin Defendant from taking any further action in the Texas State Court lawsuit.  Defendant

9    now files this combined response to that motion and motion to dismiss Yelp's claims against it.

10   **III.    STANDARD OF REVIEW**

11        **A.  Motion for Preliminary Injunction.**

12          "A preliminary injunction is an extraordinary and drastic remedy, one that should not be

13   granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Lopez v. Brewer*,

14   680 F.3d 1068, 1072 (9th Cir. 2012) (internal marks omitted) (quoting *Mazurek v. Armstrong*,

15   520 U.S. 968, 972 (1997) (per curiam)).  That burden is heavy: "A preliminary injunction is an

16   extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S.

17   7, 24 (2008). "A plaintiff seeking a preliminary injunction must establish (1) that he is likely to

18   succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary

19   relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public

20   interest." *Id.* at 20; *see also Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009); *Am.*

21   *Trucking Ass'n, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009).

22        **B.  Motion to Dismiss.**

23          Defendant moves to dismiss under Federal Rule of Civil Procedure 12(b)(1) because

24   *Younger* abstention applies.  *See Washington v. Los Angeles Cnty. Sheriff's Dep't*, 833 F.3d 1048,

25   1058 (9th Cir. 2016). Defendant additionally moves to dismiss for lack of personal jurisdiction

26   and improper venue pursuant to Fed. R. Civ. P. 12(b)(2)-(3).

27   **IV.    YELP CANNOT OBTAIN A PRELIMINARY INJUNCTION BECAUSE**

28   **ITS CLAIMS SHOULD BE DISMISSED.**

---

Yelp's claims should be dismissed because: (1) *Younger* abstention bars this Court from exercising jurisdiction in a way that interferes with Defendant's state court proceeding against Yelp; (2) Yelp cannot establish personal jurisdiction over Defendant; and (3) Venue in the Northern District of California is improper.

## A. The *Younger* Abstention Doctrine Bars this Court from exercising jurisdiction affecting the Texas State Court Proceeding.

In *Younger v. Harris*, the U.S. Supreme Court coupled its consideration of comity between state and federal courts with "the basic doctrine of equity jurisprudence that courts of equity should not act . . . to restrain a criminal prosecution," in determining that federal courts must typically refrain from enjoining a pending state criminal proceeding.  *See Younger v. Harris*, 401 U.S. 37, 43-44 (1971); *see also Bristol-Myers Squibb Company v. Connors*, 979 F.3d 732, 735 (9th Cir. 2020).  Subsequent cases have cited the "concern for comity and federalism" in their decision to "expand the protection of *Younger* beyond state criminal prosecutions, to certain civil enforcement proceedings."  *See Bristol-Myers Squibb Company*, 979 F.3d at 735. This is such an action.

In 2020, the Ninth Circuit unequivocally concluded that *Younger* abstention applied to facts materially identical to the present case.  *See id.* (quoting *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69, 78 (2013)). The facts of *Bristol-Myers* arose out of a suit in state court by Hawaii's Attorney General seeking civil penalties, injunctive relief, and damages against pharmaceutical companies for their allegedly deceptive drug marketing.  *See id.* at 734. Those pharmaceutical companies then turned to federal court, seeking injunctive relief against the Hawaii Attorney General.  *Id.*

The Court examined past precedent of the U.S. Supreme Court to identify the characteristics of "certain civil proceedings" in which *Younger* abstention would be appropriate:

> Such enforcement actions are characteristically initiated to sanction the federal plaintiff, *i.e.* the party challenging the state action, for some wrongful act.  In cases of this genre, a state actor is routinely a party to the state proceeding and often initiates the action. Investigations are commonly involved, often culminating in the filing of a formal complaint or charges.

*See id.* at 735-36 (quoting *Sprint Communications, Inc.*, 571 U.S. 69, 79-80 (2013)).

1    The Court compared those characteristics with the pharmaceutical companies' action

2    against the Hawaii Attorney General, noting that "federal-court inquiry into why a state attorney

3    general chose to pursue a particular case, or into the thoroughness of the State's pre-filing

4    investigation, would be entirely at odds with *Younger*'s purpose of leaving state governments

5    'free to perform their separate functions in their separate ways.'" *Id.* at 738-39 (quoting *Younger*,

6    401 U.S. at 44)).

7        The Court went on to identify another general set of facts in which *Younger* abstention

8    would be appropriate.  *See id.* at 738.  The Court stated:

> The State's action has been brought under a statute that punishes those who engage in
> deceptive acts in commerce, and the State seeks civil penalties and punitive damages to
> sanction the companies for their allegedly deceptive labeling practices.  On its face, the
> action fits comfortably within the class of cases described in *Sprint*, and abstention under
> *Younger* is warranted.

12   *Id.*

13       Defendant's investigation and subsequent suit against Yelp fits neatly within this

14   framework: Defendant initiated its investigation into Yelp to sanction that company for some

15   wrongful act, and both Defendant and Yelp are parties to the present suit that Yelp initiated.  This

16   case is also nearly identical to *Bristol-Myers* because like that case Defendant began investigating

17   Yelp and subsequently brought suit against the company for violating the State's deceptive trade

18   practices statute.  *Younger* abstention applies in this case, as in that case, to preclude this Court's

19   exercise of jurisdiction.  Here, as in those cases, the State has an important interest in protecting

20   consumers from deceptive trade practices and abstention is necessary to leave the State "free to

21   perform [its] separate functions in [its] separate ways." *See Bristol-Myers Squibb Company*, 979

22   F.3d 732, 738-39 (9th Cir. 2020). That means this case must be dismissed. *See Canatella v.*

23   *California*, 404 F.3d 1106, 1113 (9th Cir. 2005) ("*Younger* abstention imposes **mandatory** limits

24   on the federal courts' ability to exercise jurisdiction.")

25       No possible rejoinder from Yelp could save this suit. For example, Yelp might claim that

26   the presence of its First Amendment argument here should somehow overcome *Younger*

27   abstention. But the *Bristol-Myers* court rejected that *exact argument*, noting that "[a]bstention

28   routinely applies even when important rights are at stake." *Bristol-Myers Squibb Company*, 979

F.3d at 738 ("The companies' First Amendment concerns do not bring this case" outside of *Younger*). Yelp might also claim that this case is distinguishable from *Bristol-Myers* because here (unlike there) the plaintiff won a race to the courthouse. But the Ninth Circuit has foreclosed that exact argument too. Specifically, in *Monster Beverage Corp. v. Herrera*, 650 Fed. App'x. 344 (9th Cir. 2016), the Court explained, again in a materially similar setting, that "*Younger* abstention is required when state court proceedings are initiated before any proceedings **of substance on the merits** have taken place in federal court," *id.* at 346 (emphasis added) (quoting *M&A Gabaee v. Cmty. Redevelopment Agency*, 419 F.3d 1036, 1040 (9th Cir. 2005)). Any other approach to timing would just enable impermissible "gamesmanship." And here, State court proceedings were indisputably initiated before any proceedings of substance had occurred in this federal action—indeed, State court proceedings were initiated *one day* after Yelp filed this suit.

## B. Yelp Cannot Establish Personal Jurisdiction.

Defendant also moves to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2). This "official-capacity suit is, in all respects other than name, to be treated as a suit against the entity"—the Office of the Attorney General, an agency of the State. *Ky. v. Graham*, 473 U.S. 159, 166 (1985). Thus, Yelp "bears the burden of establishing that jurisdiction [over the Office of the Attorney General] is proper." *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011).

"Where, as here, no federal statute authorizes personal jurisdiction, the district court applies the law of the state in which the court sits." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011). California's long-arm statute is limited by the principles of due process. *See* Cal. Civ. Proc. Code § 410.10. To satisfy due process, a defendant must be subject to either general jurisdiction within a state or have "certain minimum contacts with [a state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945) (citations omitted).

### 1. This Court Lacks General Personal Jurisdiction Because the Texas Defendant is Not "At Home" in California.

Yelp has not and cannot establish general jurisdiction over Defendant in California. That

1  doctrine asks whether the defendant's "affiliations with the State are so 'continuous and
2  systematic' as to render [it] essentially at home in the forum." *Daimler AG v. Bauman*, 571 U.S.
3  117, 127 (2014) (citation omitted). The Office of the Attorney General *of Texas* is "at home" in
4  Texas, not California. *See* Tex. Const. art. III, § 58 (declaring Austin, Texas, is the seat of
5  government). Plaintiff cannot plausibly disagree, and the Complaint contains no allegations of
6  any "continuous and systematic" affiliations that could give rise to general personal jurisdiction.
7  *See Turner v. Abbott*, 53 F. Supp. 3d 61, 67 (D.D.C. 2014) (rejecting general personal jurisdiction
8  over the Texas Attorney General when defendant was neither domiciled, nor had a principal place
9  of business in, the District of Columbia).

10         2.      **This Court Lacks Specific Personal Jurisdiction Because Yelp's Claim Is**
11                 **Based on Conduct in Texas.**

12         The Office of the Attorney General of Texas is also not subject to specific personal
13  jurisdiction in California. Specific personal jurisdiction is proper only when the plaintiff's claim
14  "aris[es] out of or relat[es] to the defendant's contacts with the forum." *Bristol-Myers Squibb Co.*,
15  137 S. Ct. at 1780 (2017) (citation omitted). Defendant has done nothing material in this forum
16  that relates to this suit.

17         In the Ninth Circuit, a three-prong test determines whether a defendant has the "minimum
18  contacts" necessary for specific jurisdiction: (1) the defendant must either "purposefully direct
19  his activities" toward the forum or "purposefully avail himself of the privileges of conducting
20  activities in the forum;" (2) "the claim must be one which arises out of or relates to the defendant's
21  forum-related activities;" and (3) "the exercise of jurisdiction must comport with fair play and
22  substantial justice, *i.e.* it must be reasonable." *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d
23  1064, 1068 (9th Cir. 2017) (quoting *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002)).
24  "The plaintiff bears the burden of satisfying the first two prongs of the test." *Schwarzenegger v.*
25  *Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). If the plaintiff makes a prima facie
26  showing as to those first two prongs, "the burden then shifts to the defendant to 'present a
27  compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (quoting *Burger*
28  *King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

1
2

    i.  <u>Defendant's Activities Were Not Purposefully Directed Toward California.</u>

3

  For specific personal jurisdiction to exist, the defendant must have "purposefully directed"

4
its activities toward the forum or "purposefully availed" itself of "the privileges of conducting

5
activities in the forum." "[P]urposeful availment" and "purposeful direction" are "two distinct

6
concepts." *Id.* The former applies to claims sounding in contract while the latter applies to claims

7
sounding in tort. *Picot v. Weston*, 780 F.3d 1206, 1212 (9th Cir. 2015). Yelp's claim (to the

8
extent it is cognizable at all) "is a constitutional tort." *Hartman v. Moore*, 547 U.S. 250, 262 n.9

9
(2006). Thus, the "purposeful direction" inquiry applies. Purposeful direction can be shown in

10
two ways, but neither applies here. First, the Ninth Circuit has said that "the commission of an

11
intentional tort in a state is a purposeful act that will satisfy" the purposeful direction test.

12
*Freestream Aircraft (Bermuda) Freestream Aircraft Ltd. v. Aero Law Grp.*, 905 F.3d 597, 603

13
(9th Cir. 2018). In this case, Defendant has not taken any action in California and the whole of its

14
investigation and suit of Yelp occurred in Texas.

15

  Where, as here, the defendant's conduct "takes place *outside* the forum," it may constitute

16
purposeful direction if the conduct "has effects inside the forum state." *Id.* at 604. This second

17
method of showing purposeful direction is known as the "effects" test from *Calder v. Jones*, 465

18
U.S. 783 (1984). *Axiom Foods, Inc.*, 874 F.3d at 1069. But even under the effects test, the inquiry

19
turns on "the defendant's contacts with the forum State itself, *not the defendant's contacts with*

20
*persons who reside there*." *Walden v. Fiore*, 571 U.S. 277, 285 (2014) (emphasis added). In other

21
words, "the plaintiff cannot be the only link between the defendant and the forum. Rather, it is

22
the defendant's conduct that must form the necessary connection with the forum State that is the

23
basis for its jurisdiction over him." *Id.* In the end, the question is whether a defendant has

24
"purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus

25
invoking the benefits and protections of its laws," or whether the relationship to the forum is being

26
driven by the plaintiff instead. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

27

  Here, Defendant has not "invoke[ed] the benefits and protections of [California's] laws."

28
*J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 880 (2011). Defendant's office has simply

communicated with and sued a corporation that operates nationwide and happens to have its headquarters in California. That is insufficient for specific personal jurisdiction.

The Ninth Circuit has held "that use of the mails, telephone, or other international communications simply do not qualify as purposeful activity invoking the benefits and protection of the state." *Thos. P. Gonzalez Corp. v. Consejo Nacional De Produccion De Costa Rica*, 614 F.2d 1247, 1254 (9th Cir. 1980). As a "general rule," "use of the mails" is "legally insufficient to satisfy the" purposeful availment requirement. *Peterson v. Kennedy*, 771 F.2d 1244, 1262 (9th Cir. 1985) (deciding the question "as a matter of law"). Similarly, "[a] cease and desist letter is not in and of itself sufficient to establish personal jurisdiction over the sender of the letter." *Yahoo! Inc. v. La. Ligue Contre Le Racisme*, 433 F.3d 1199, 1208 (9th Cir. 2006).

Thus, "[t]he mere fact that [the defendant] communicated with [the plaintiff] in the state, and may have committed a tort in the exchange of correspondence," (he did not commit a tort) "does not show that [the defendant] purposefully availed itself of the privilege of conducting business in California." *Hunt v. Erie Ins.Grp.*, 728 F.2d 1244, 1248 (9th Cir. 1984). When the plaintiff's decision to locate in "California force[s] [the defendant] to send mail to that State," the defendant has not purposefully availed itself of any benefits of operating in California. *Hunt*, 728 F.2d at 1248.

This rule applies with special force when a private litigant tries to hale a sovereign into court across state lines. Consider, for example *Morningside Church, Inc. v. Rutledge*, in which a Missouri church received both a civil investigative demand from the Attorney General of Arkansas regarding alleged violations of Arkansas' DTPA and a subpoena and other communications from local California law enforcement officials. *See Morningside Church v. Rutledge*, 9 F.4th 615, 617-18 (8th Cir. 2021). When the church sued those officials in Missouri, the Eighth Circuit upheld the district court's dismissal for lack of personal jurisdiction. According to the Court, the church failed to demonstrate that the "defendants' 'conduct connects [them] to the forum in a meaningful way.'" *See id.* (quoting *Walden v. Fiore*, 571 U.S. 277, 290 (2014)).

Other courts also protect state officials from suits in foreign states. In *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, the Sixth Circuit held that Michigan lacked

personal jurisdiction over state officials from Nevada, Washington, and South Carolina based on mere in-state communications. 954 F.2d 1174 (6th Cir. 1992). The Court noted, "[t]elephone conversations and letters are insufficient to fulfill the [purposeful availment requirement]." *Id.* at 1177. Additionally, when state officials "have undertaken no economic activity in the [forum] state," they have not purposefully availed themselves of any benefits of doing business in that state. *Id.*

The distinction between a government defendant and a private defendant is "[a] significant difference" because "the 'business' activity involved is the 'business' of government regulation." *B&G Prod. Co. v. Vacco*, No. 0:98-cv-2436, 1999 WL 33592887, at *4 (D. Minn. Feb. 19, 1999). In *B&G Products*, the New York Attorney General applied a New York environmental law to a Minnesota company, including "through a Notice of Violation sent to the company office in Minnesota." *Id.* at *1. When the company challenged that law in Minnesota, its case was dismissed for lack of personal jurisdiction. As the Court explained, "[i]n today's global economy, many of the parties subject to [one state's] regulations will be companies located in other states or even other countries." *Id.* at *4. "By merely regulating a Minnesota-based company, New York has not subjected itself to lawsuit in the home state of one of its many regulatory targets." *Id.*

Perhaps the most detailed analysis of this issue occurred in *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476 (5th Cir. 2008). There, a Texas-based real estate company sued the Commissioner of the Arizona Department of Real Estate, in her official capacity, claiming that her regulatory action violated the Commerce Clause. *Id.* at 480–81. The Arizona Commissioner's sole contacts with Texas were a cease-and-desist order and correspondence with the plaintiff's attorneys. *Id.* at 484. The Fifth Circuit held that, in sending a cease-and-desist letter to a Texas resident, the Commissioner "was not engaged in commercial transactions to obtain a commercial benefit by acting in a governmental capacity to enforce Arizona law." *Id.* at 485. The official thus had not "'purposefully availed' herself of the benefits of Texas law like someone actually 'doing business' in Texas." *Id.* at 484.

The *Stroman* Court rejected the plaintiff's argument that jurisdiction existed under the "effects test" because the defendant's conduct was "targeted to affect an in-state plaintiff." *Id.*

The court reasoned that, while the "effects" of the Arizona official's enforcement activity were felt in Texas, she was "not expressly aiming her actions at Texas." *Id.* at 485–86 (alterations and quotation marks omitted). Rather, the state official was "essentially asserting nationwide authority over any real estate transactions involving Arizona residents or property," meaning that "the only jurisdictional basis [was] the alleged harm to a Texas resident." *Id.* at 486. That meant that the nexus to Texas was "based entirely on the unilateral actions of [plaintiff], not [defendant]," since "it was [plaintiff] who chose to market Arizona properties and transact business with Arizona residents" from Texas. *Id.* "[T]he unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." *Id.* (quotation omitted).

Allowing "effects" jurisdiction based on such attenuated contacts would undermine state sovereignty. *Id.* The Fifth Circuit declined "to establish . . . a broad principle" that would allow "any state official seeking to enforce her state's laws" to "be subjected to suit in any state where the validity of her state's laws were in question." *Id.* at 486–87.

These cases foreclose personal jurisdiction over Defendant. His office has not undertaken economic activity in California. It has not even undertaken law-enforcement activity in California. All it has done is initiate an investigation and subsequently file suit in a Texas state district court against a company that happens to be headquartered in California.

        ii.   <u>Yelp's Claim Does Not Arise Out of or Relate to Any California Contacts.</u>

Defendant is not subject to specific personal jurisdiction for a second, independent reason: Yelp's claim does not "arise[] out of or relate[] to the defendant's forum related activities." *Axiom Foods, Inc.*, 874 F.3d at 1068.

Yelp's lawsuit is designed to prevent Defendant from taking action against it in Texas, not California. Specifically, Yelp prays that this Court will "preliminarily enjoin the Attorney General from taking any more action designed to deter Yelp from publishing truthful speech related to [pregnancy resource centers]." *See* ECF # 16 at 1. Defendant decided to initiate such an action in Texas state court, not in California. *See* Tex. Bus. & Com. Code Ann. § 17.62. It therefore cannot be said that Yelp's lawsuit arises out of or relates to any of Yelp's California

11

Defendant's Combined Response to Plaintiff's Motion for Preliminary Injunction and Motion to Dismiss
Case No. 3:23-cv-04977-TLT

1    contacts.

2              iii.    Exercising Personal Jurisdiction Over a Texas State Agency Would Be

3                      Unreasonable.

4          Lastly, the exercise of specific jurisdiction must be reasonable. To determine the

5    reasonableness of the forum the court considers: "(1) the extent of a defendant's purposeful

6    interjection; (2) the burden on the defendant in defending in the forum; (3) the extent of conflict

7    with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the

8    dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the

9    forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an

10   alternative forum." *Burger King Corp.*, 471 U.S. at 476–77.

11         Under these factors, exercising personal jurisdiction over Defendant is unreasonable.

12   First, for the reasons explained above, Defendant has not purposefully availed himself of

13   California's laws. By investigating whether Yelp violated a Texas law by misleading Texas

14   consumers, the Texas Attorney General does not "step outside the exclusive protection of [his]

15   own state and engage in activities touching another sovereignty." *Ins. Co. of N. Am. v. Marina*

16   *Salina Cruz*, 649 F.2d 1266, 1272 (9th Cir. 1981) (describing what "[t]he purposeful interjection

17   component of our analysis requires").

18         Second, the burden of litigating in California is significant. California courts have held

19   that "[t]he burden on [the State of Texas and a health center it owned] to defend against . . . claims

20   in California would be considerable." *Stone v. Tex.*, 76 Cal. App. 4th 1043, 1050 (1999).  The

21   State may be forced to retain local counsel to minimize travel costs.  Requiring Defendant's

22   employees to travel to California for litigation would further burden taxpayer resources. The

23   doctrine of personal jurisdiction "protects the defendant against the burdens of litigating in a

24   distant or inconvenient forum." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292

25   (1980).

26         Third, "requiring [Texas's Attorney General] to submit to California jurisdiction

27   constitutes an extreme impingement on state sovereignty." *PTI, Inc. v. Philip Morris Inc.*, 100 F.

28   Supp. 2d 1179, 1190 n.8 (C.D. Cal. 2000).  The "sovereign status of a defendant militates against

the reasonableness of jurisdiction." *Ins. Co. of N. Am.*, 649 F.2d at 1272 (recognizing the "higher sovereignty barrier" of a foreign nation but refusing to "minimize the sovereignty of the states within our federal system").   Defendant should not "have to defend [its] attempt to enforce [Texas] laws in courts throughout the nation." *Stroman Realty, Inc.*, 513 F.3d at 487. Texas, "as a sovereign, has a strong interest in not having an out-of-state court evaluate the validity of its laws." *Id.* Surely, Texas courts have the best claim to reviewing the lawfulness of state actions taken by Texas state agencies.

Fourth, California's interests in this case are minimal. This case concerns enforcement of a Texas statute, not a California statute. Yelp's claim is based on the federal Constitution, which applies equally across the country, not the California Constitution. And while Yelp has its principal place of business in California, in fact, "Yelp is a Delaware corporation." *See* ECF # 1 at 2.  Yelp is not a helpless California citizen that needs the protection of the State of California.

Fifth, resolving this case in Texas promotes judicial efficiency. Yelp's claim requires consideration of the Texas DTPA.  Respectfully, Texas judges are more familiar with that statute than California judges. *Cf. Leroy v. Great W. United Corp.*, 443 U.S. 173, 186 (1979) ("[F]ederal judges sitting in Idaho are better qualified to construe Idaho law, and to assess the character of Idaho's probable enforcement of that law, than are judges sitting elsewhere.").

Sixth, if its claim were meritorious, Yelp would be perfectly capable of "obtaining convenient and effective relief" in Texas. *World-Wide Volkswagen Corp.*, 444 U.S. at 292. Having to litigate personal jurisdiction and venue in California (including in any potential appeal) would make this case less convenient and any relief ordered potentially ineffective. Litigating in Texas State court would streamline the issues and reduce the arguments against the effectiveness of any relief ordered. *See Ins. Co. of N. Am.*, 649 F.2d at 1273 (noting that a defendant's sovereign-immunity objection to litigating in one forum would render it less "effective" for the plaintiff).

Seventh, Yelp has not argued that an alternative forum is unavailable. *Id.* (noting that the plaintiff bears the burden). Texas courts provide a perfectly good forum for resolving challenges to the constitutionality of the State's suit against Yelp.

For all these reasons, this court lacks general and specific jurisdiction and should dismiss

1  this action pursuant to Fed. R. Civ. P. 12(b)(2).

2  **C.   Venue in California is Improper.**

3         Improper venue is a third threshold defect in this suit and is another basis for dismissal.

4  *See* Fed. R. Civ. P. 12(b)(3); 28 U.S.C. § 1406(a). Venue requirements serve "to protect the

5  defendant against the risk that a plaintiff will select an unfair or inconvenient" forum. *Leroy*, 443

6  U.S. at 183–84. As a result, Yelp has the burden of showing that venue is proper in the Northern

7  District of California. *See Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496

8  (9th Cir. 1979).

9         "When venue is challenged, the court must determine whether the case falls within one of

10 the three categories set out in [28 U.S.C.] § 1391(b)." *Atl. Marine Constr. Co. v. U.S. Dist. Court*,

11 571 U.S. 49, 56 (2013). "[P]leadings need not be accepted as true, and facts outside the pleadings

12 may be considered." *Doe 1 v. AOL L.L.C.*, 552 F.3d 1077, 1081 (9th Cir. 2009). In this case,

13 Yelp invokes Section 1391(b)(1) & (2). *See* ECF #1 at page 3. Section 1391(b)(1) provides that

14 venue is proper in "a judicial district in which any defendant resides, if all defendants are residents

15 of the State in which the district is located" and section 1391(b)(2) provides that venue is proper

16 in "a judicial district in which a substantial part of the events or omissions giving rise to the claim

17 occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C.

18 § 1391(b)(1) & (2). This venue analysis "require[s] courts to focus on relevant activities of the

19 defendant, not of the plaintiff." *Woodke v. Dahm*, 70 F.3d 983, 985 (8th Cir. 1995).4 "[F]or venue

20 to be proper, significant events or omissions material to the plaintiff's claim must have occurred

21 in the district in question." *Richmond Techs., Inc. v. Aumtech Bus. Sols.*, No. 5:11-cv-02460-

22 LHK, 2011 WL 2607158, at *10 (N.D. Cal. July 1, 2011) (quoting *Gulf Ins. Co. v. Glasbrenner*,

23 417 F.3d 353, 357 (2d Cir. 2005)).

24        Here, the controlling case is *Leroy*, 443 U.S. 173. There, a Texas corporation filed suit

25 against Idaho officials in Texas federal court. It challenged an Idaho statute that restricted its

26 activities in Texas. The Supreme Court held that the suit had "only one obvious locus—the

27 District of Idaho." *Id.* at 185.  "[T]he basis for [the Texas corporation's] federal claim" was

28 "action that was taken in Idaho by Idaho residents," namely "the enactment of the statute by the

Defendant's Combined Response to Plaintiff's Motion for Preliminary Injunction and Motion to Dismiss
Case No. 3:23-cv-04977-TLT

1    legislature, the review of [the Texas corporation's] filing, the forwarding of the comment letter

2    by [an Idaho official], and the entry of the order postponing the effective date of the tender by [an

3    Idaho official]—as well as the future action that may be taken in the State by its officials to punish

4    or to remedy any violation of its law." *Id.* at 185–86. Moreover, deciding the case "may well

5    depend on a proper interpretation of [Idaho's] statute, and federal judges sitting in Idaho are better

6    qualified to construe Idaho law, and to assess the character of Idaho's probable enforcement of

7    that law, than are judges sitting elsewhere." *Id.* at 186.

8           The fact that Texas was "where Idaho's statute had its impact on" the plaintiff was

9    insufficient. *Id.* Relying on such a fact "would subject the Idaho officials to suit in almost every

10   district in the country." *Id.* For those reasons, Idaho was the only proper venue under Section

11   1391(b). *See id.* at 187.

12          The Ninth Circuit has likewise applied *Leroy* to protect a state agency from improper

13   venue. In *Dedication and Everlasting Love to Animals v. Commonwealth of Pennsylvania, Bureau*

14   *of Charitable Organizations*, a California non-profit group solicited donations from citizens of

15   Pennsylvania. *See* Order Granting Def.'s Mot. Dismiss for Improper Venue, No. 2:02-cv-6483,

16   ECF 15 at 1–2 (C.D. Cal. Dec. 12, 2002). When a Pennsylvania state agency "informed" the non-

17   profit "that its mailings were insufficient under" Pennsylvania law, the non-profit challenged the

18   Pennsylvania law under the First Amendment in a California federal court. *Id.* at 2. The district

19   court held that venue was improper. "As in *Leroy*, any future enforcement actions would take

20   place in Pennsylvania and be initiated by Pennsylvania officials." *Id.* at 7. As a result, "the entirety

21   of the alleged conduct constituting infringement of Plaintiff's free speech . . . rights took or will

22   take place in Pennsylvania, not California." *Id.* "Further, there is an interest in preventing

23   Pennsylvania officials from being haled into court in any state where a resident's conduct in

24   Pennsylvania subjects it to possible Pennsylvania enforcement action." *Id.*  The Ninth Circuit

25   affirmed. *See* 101 F. App'x 224, 2004 WL 1336737 (9th Cir. 2004). It agreed that, "because the

26   acts complained of occurred or will occur in Pennsylvania, but not in California, California was

27   an improper venue," and "that there is a valid 'interest in preventing Pennsylvania officials from

28   being haled into court in any state where a resident's conduct in Pennsylvania subjects it to

possible Pennsylvania enforcement action.'" *Id.* At 1 (citing *Leroy*, 443 U.S. 173).

The same reasoning applies to this case. None of the events giving rise to this lawsuit occurred in the Northern District of California. They occurred only in Texas. Defendant is in Texas. The DTPA was passed in Texas and is enforced in Texas. Defendant's investigation of Yelp was initiated in Texas. Furthermore, if Yelp's venue argument were accepted, it would lead to the same result *Leroy* specifically rejected: state officials being subject to suit in every other state. Defendant has a duty to investigate potential DTPA violations that affect Texas consumers. The subject of a DTPA investigation could be headquartered anywhere. That is no reason to subject a state agency to suit everywhere. This Court should dismiss this suit for improper venue pursuant to Fed. R. Civ. P. 12(b)(3).

**D.    Yelp's First Amendment Argument Fails.**

Yelp's First Amendment argument will also fail.

It is well-established that government has a strong and constitutionally valid interest in "ban[ning] forms of communication more likely to deceive the public than to inform it," particularly in the commercial arena. *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 563-64 (1980). That is what the 50 States routinely do when they— like Defendant here—enforce their laws penalizing deceptive trade practices. *See, e.g.*, *State ex rel. Rosenblum v. Living Essentials, LLC*, 529 P.3d 939 (Or. 2023) (rejecting First Amendment defense to action against 5-hour ENERGY's misleading claims about alertness and focus). And Yelp's speech at issue in the State court proceedings was highly misleading. Yelp created the misimpression that pregnancy resource centers uniquely lack licensed, on-site medical professionals, when in fact those centers frequently *do* have such professionals.  Sieff Ex. 11 ¶ 16. Indeed, Yelp was *told* by specific centers that the centers had such professionals, yet Yelp left the misleading notice active. *Id.* ¶  23. By contrast, Yelp did not append this notice to other facilities that cater to pregnant women (*i.e.*, those that perform abortions), even though those centers frequently *lack* licensed, on-site medical professionals. *Id.* ¶ 20. That is classic misleading and deceptive behavior likely to leave consumers with a strong misimpression, and Yelp cannot hide behind the First Amendment to escape liability for it.

Yelp's studies and statistics about pregnancy resource centers (ECF # 16 at 7-8) are beside the point because Defendant's enforcement action is predicated on Yelp's *disparate treatment* of pregnancy resource centers. *See, e.g.*, Sieff Ex. 11 ¶ 27. For example, Yelp points to a study (at 8) claiming that "in nine states," "only 26% and 16% of [pregnancy resource centers] have a registered nurse of physician on staff." But for Yelp to defend its disparate treatment of pregnancy resource centers, Yelp would have had to *at least* make a comparative assessment showing that pregnancy resource centers differ in a material way from other pregnancy-oriented entities. Otherwise, Yelp's highly unusual treatment of pregnancy resource centers—adding this notice to only *their* Yelp pages—sends a misleading message to consumers. *See, e.g.*, *Reese v. BP Exploration*, 643 F.3d 681, 691 (9th Cir. 2011) (government may make speech unlawful if it creates "impression of a state of affairs that differs in a material way from the one that actually exists"). And Defendant alleged in the State court proceedings that other pregnancy-oriented entities *also* commonly lack licensed, on-site medical professionals, but that Yelp inexplicably decided to exempt those entities from the disparaging notice that it applied to pregnancy resource centers. Sieff Ex. 11 ¶ 27.

Yelp's argument (at 6-10) that its speech at issue is "truthful" also misses the mark. It is axiomatic that speech which is "literally true" may nevertheless "misle[a]d, confuse, or deceive[] the consumer public." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1140 (9th Cir. 1997); *Bruton v. Gerber Products Co.*, 703 F. App'x 468, 471 (9th Cir. 2017) ("The California courts have held that even technically correct labels can be misleading."). Sometimes the misleading nature of the "literally true" speech is evident on its face, but sometimes it requires specialized evidence, such as "consumer surveys" and "expert testimony." *Southland*, 108 F.3d at 1140. Yelp will have an opportunity to adduce that kind of evidence in Texas State court. It does not have a right to preempt that litigation through this motion for preliminary injunction.

Yelp may also argue in its reply brief that its speech is not "commercial," and so some kind of heightened First Amendment scrutiny applies. That claim would be inaccurate. But, to the extent Yelp intends to make this claim about "commercial" speech, it would only underscore why this case does not belong in *this* Court. Specifically, Yelp has a State law statutory defense to

Defendant's Combined Response to Plaintiff's Motion for Preliminary Injunction and Motion to Dismiss
Case No. 3:23-cv-04977-TLT

Defendant's action if Yelp can establish that its underlying speech was not issued "in the conduct of any trade or commerce." Tex. Bus. & Com. Code § 17.46(a). That would be an argument highly similar to the claim that Yelp's speech is not "commercial" within the meaning of the First Amendment. The problem this creates for Yelp, though, is that "federal courts" should not "determine the constitutionality of state laws . . . where it is not even clear the State itself would consider its law applicable." *Morales v. TWA*, 504 U.S. 374, 382 (1992). In other words, this Court should not determine the constitutionality of Defendant's Deceptive Trade Practices Act enforcement action when it is possible that a Texas State court would not even consider the statute applicable. But any argument by Yelp about whether its speech is "commercial" within the meaning of the First Amendment is highly likely to call into question whether its speech was within "trade or commerce" under the Texas Deceptive Trade Practices Act. And *that* question is one for Texas State courts.

## V.   YELP HAS NOT SHOWN IMMEDIATE AND IRREPARABLE HARM.

Yelp also cannot obtain a preliminary injunction because it cannot show irreparable harm absent immediate relief.

Yelp's claim to irreparable harm (at 12) is just a re-hash of its First Amendment argument. But Yelp conspicuously fails to show how it will actually be harmed in any tangible, imminent way—even with respect to its First Amendment rights—absent a preliminary injunction.

Recall that Defendant's suit against Yelp is about Yelp's past speech. By its own admission, Yelp has "agreed" to stop disseminating that misleading speech. ECF No. 1 ¶ 27. Instead, Yelp now provides notice to its users that pregnancy resource centers "do not offer abortions or referrals to abortion providers." *Id.* Defendant does not claim that that statement violates the Texas Deceptive Trade Practices Act.  In other words, there is no immediate threat that anything Yelp is currently doing will be subject to enforcement by Defendant, and so no basis for a preliminary injunction.

What does that leave? Only Yelp's cost of litigating whether its *past* speech violated Texas law, in the Texas State court proceedings. Understandably, Yelp does not want to conduct that litigation. Unfortunately for Yelp, though, the Ninth Circuit has stated that "[l]itigation costs

generally do not qualify as irreparable harm." *In re Marino*, 949 F.3d 483, 488 (9th Cir. 2020). So Yelp cannot point to its ongoing participation in that suit as the basis for a preliminary injunction. Moreover, nothing imminent is even scheduled to happen in that suit. Yelp was served in that suit on October 6, 2023, making their answer due on October 30, 2023, pursuant to the Texas Rules of Civil Procedure. *See* Tex. R. Civ. P. 99(b). The rules do not even allow *discovery* to begin in that case until after the expiration of thirty days from the filing of Yelp's answer. Tex. R. Civ. P. 194.2(a). And Defendant has not filed any motions in that case, such as for a temporary injunction or any other kind of coercive relief.

## VI.   CONCLUSION

Defendant respectfully requests this Court deny Yelp's Motion for Preliminary Injunction, grant this Motion to Dismiss, and order any other relief, either at law or in equity, to which Defendant has shown itself justly entitled.

DATED: October 16, 2023

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

GRANT DORFMAN
Deputy First Assistant Attorney General

JAMES LLOYD
Deputy Attorney General for Civil Litigation

CHRISTOPER HILTON
Chief, General Litigation Division

*/s/ Alyssa Bixby-Lawson*
ALYSSA BIXBY-LAWSON
Assistant Attorney General
CA Bar No. 267107
TX Bar No. 24122680
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548

Telephone:  (210) 270-1118
Fax: (512) 320-0667
alyssa.bixby-lawson@oag.texas.gov

Ryan S. Baasch (*pending Pro Hac Vice*)
Division Chief, Consumer Protection Division
TX Bar No. 24129238
Office of the Attorney General
P.O. Box 12548, Capital Station
Austin, Texas 78711-2548
Tel: (512) 463-9917
Ryan.Baasch@oag.texas.gov

Scott Froman (*pending Pro Hac Vice*)
Assistant Attorney General
TX Bar No. 24122079
Office of the Attorney General
P.O. Box 12548, Capital Station
Austin, Texas 78711-2548
Tel: (512) 463-1264
Scott.Froman@oag.texas.gov

ATTORNEYS FOR DEFENDANT
KEN PAXTON, ATTORNEY GENERAL
OF THE STATE OF TEXAS

## CERTIFICATE OF SERVICE

I, Alyssa Bixby-Lawson, hereby certify that on October 16, 2023, I electronically filed *Defendant's Combined Response to Plaintiff's Motion for Preliminary Injunction and Motion to Dismiss* with the Clerk for the United States District Court for the Northern District of California using the CM/ECF system, which shall send electronic notification to counsel of record.

*/s/ Alyssa Bixby-Lawson*
ALYSSA BIXBY-LAWSON
Assistant Attorney General