THOMAS R. BURKE (CA Bar No. 141930)
  thomasburke@dwt.com
DAVIS WRIGHT TREMAINE LLP
50 California Street, 23rd Floor
San Francisco, California 94111
Telephone: (415) 276-6500

AMBIKA KUMAR (*pro hac vice*)
  ambikakumar@dwt.com
SARA A. FAIRCHILD (*pro hac vice*)
  sarafairchild@dwt.com
DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Telephone: (206) 757-8030

ADAM S. SIEFF (CA Bar No. 302030)
  adamsieff@dwt.com
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, 24th Floor
Los Angeles, California 90017
Telephone: (213) 633-6800

Attorneys for Plaintiff
YELP INC.

# IN THE UNITED STATES DISTRICT COURT

## THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| YELP INC., | Case No.  3:23-cv-04977-TLT |
| Plaintiff, | **YELP INC.'S REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** |
| v. | |
| KEN PAXTON, ATTORNEY GENERAL OF THE STATE OF TEXAS, in his official capacity, | Date:     November 7, 2023<br>Time:     9:00 AM<br>Dept.:    Courtroom 9 |
| Defendant. | Action Filed: September 27, 2023 |

## **TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ................................................................................................. 1

II.     YELP WILL PREVAIL ON THE MERITS .......................................................... 2

     A.      The Attorney General's Conduct Violates The First Amendment .......................... 2

     B.      The Texas DTPA Claim Fails. ..................................................................... 4

     C.      The Attorney General's Jurisdictional Defenses Fail. ........................................ 5

            1.      This Court has personal jurisdiction over the Attorney General ................. 5

                    a.      The Attorney General directed his actions toward California ......... 5

                    b.      Yelp's claims arise from this California-directed conduct ............. 7

                    c.      No "compelling case" makes jurisdiction unreasonable. ................ 7

            2.      Venue is proper in this District. .................................................. 9

            3.      The *Younger* abstention defense fails ......................................... 10

                    a.      *Younger* does not insulate bad faith from federal review ............. 10

                    b.      The Attorney General's action is in bad faith. ........................... 11

                    c.      Abstention would threaten Section 1983's protections ................. 14

III.    OTHER REQUIREMENTS FOR A PRELIMINARY INJUNCTION ARE MET ......... 15

IV.    CONCLUSION .............................................................................................. 15

YELP'S REPLY ISO MOT. FOR PRELIM. INJ.
Case No. 3:23-cv-04977-TLT

DAVIS WRIGHT TREMAINE LLP
50 CALIFORNIA STREET, 23RD FLOOR
SAN FRANCISCO, CALIFORNIA 94111
Tel: (415) 276-6500

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*303 Creative LLC v. Elenis*,
   600 U.S. 570 (2023) .......................................................................................................... 3

5

6

*Backpage.com, LLC v. Dart*,
   807 F.3d 229 (7th Cir. 2015) .......................................................................................... 3

7

*Baffert v. Cal. Horse Racing Bd.*,
   332 F.3d 613 (9th Cir. 2003) ..................................................................................... 10, 11

8

9

*Ballard v. Savage*,
   65 F.3d 1495 (9th Cir. 1995) ....................................................................................... 7, 9

10

11

*Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*,
   223 F.3d 1082 (9th Cir. 2000) ..................................................................................... 5, 6

12

*Banh v. Am. Honda Motor Co.*,
   2020 WL 4390371 (C.D. Cal. 2020) ............................................................................... 9

13

14

*Bantam Books, Inc. v. Sullivan*,
   372 U.S. 58 (1963) ............................................................................................................ 3

15

16

*Bartnicki v. Vopper*,
   532 U.S. 514 (2001) ......................................................................................................... 2

17

18

*Boschetto v. Hansing*,
   539 F.3d 1011 (9th Cir. 2008) ......................................................................................... 7

19

*Bose Corp. v. Consumers Union of U.S., Inc.*,
   466 U.S. 485 (1984) ......................................................................................................... 3

20

21

*Bristol-Myers Squibb Co. v. Connors*,
   979 F.3d 732 (9th Cir. 2020) ........................................................................................ 11

22

23

*Buckley v. Valeo*,
   424 U.S. 1 (1976) ............................................................................................................. 2

24

*Bullfrog Films, Inc. v. Wick*,
   847 F.2d 502 (9th Cir. 1988) ........................................................................................... 2

25

26

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985) ......................................................................................................... 8

27

*Calder v. Jones*,
   465 U.S. 783 (1984) ..................................................................................................... 5, 6

28

*Cohens v. Virginia*,
   19 U.S. 264 (1821) .............................................................................................................. 15

*Cook v. Harding*,
   879 F.3d 1035 (9th Cir. 2018) ............................................................................................ 10

*Council for Periodical Distribs. Ass'n v. Evans*,
   642 F. Supp. 552 (M.D. Ala. 1986), *aff'd*, 827 F.2d 1483 (11th Cir. 1987) .......................... 11

*CTS, Inc. v. CFTC*,
   149 F.3d 679 (7th Cir. 1998) ................................................................................................. 4

*Cullen v. Fliegner*,
   18 F.3d 96 (2d Cir. 1994) ............................................................................................... 11, 12

*Dajani v. Dell Inc.*,
   2009 WL 815352 (N.D. Cal. 2009) ........................................................................................ 9

*Davis v. Avvo, Inc.*,
   345 F. Supp. 3d 534 (S.D.N.Y. 2018) ..................................................................................... 4

*Def. Distributed v. Grewal*,
   971 F.3d 485 (5th Cir. 2020) ........................................................................................ 6, 7, 8

*Dex Media W., Inc. v. City of Seattle*,
   696 F.3d 952 (9th Cir. 2012) ................................................................................................. 4

*DIRECTV v. EQ Stuff, Inc.*,
   207 F. Supp. 2d 1077 (C.D. Cal. 2002) .................................................................................. 8

*Dobbs v. Jackson Women's Health Organization*,
   142 S. Ct. 2228 (2022) ......................................................................................................... 13

*Edwards v. District of Columbia*,
   755 F.3d 996 (D.C. Cir. 2014) .............................................................................................. 4

*Fitzgerald v. Peek*,
   636 F.2d 943 (5th Cir. 1981) ............................................................................................... 11

*Flowers v. Seki*,
   87 F.3d 1318, 1996 WL 311473 (9th Cir. 1996) ................................................................ 11

*Frampton v. City of Baton Rouge*,
   2022 WL 90238 (M.D. La. 2022) ........................................................................................ 12

*Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*,
   905 F.3d 597 (9th Cir. 2018) ........................................................................................... 7, 8

*Fund Tex. Choice v. Paxton*,
   2023 WL 2558143 (W.D. Tex. 2023) .................................................................................. 13

*Grand River Enters. Six Nations, Ltd. v. Pryor,*
    425 F.3d 158 (2d Cir. 2005) ..................................................................................7

*Harris v. Quinn,*
    573 U.S. 616 (2014) ...........................................................................................3

*Health & Hosp. Corp. of Marion Cnty. v. Talevski,*
    599 U.S. 166 (2023) .........................................................................................14

*Herbal Brands, Inc. v. Photoplaza, Inc.,*
    72 F.4th 1085 (9th Cir. 2023).............................................................................5

*Hunt v. Erie Ins. Grp.,*
    728 F.2d 1244 (9th Cir. 1984)............................................................................6

*IMDb.com Inc. v. Becerra,*
    962 F.3d 1111 (9th Cir. 2020)............................................................................3

*Insurance Co. of North America v. Marina Salina Cruz,*
    649 F.2d 1266 (9th Cir. 1981)............................................................................9

*Kalman v. Cortes,*
    646 F. Supp. 2d 738 (E.D. Pa. 2009) ................................................................9

*Kennedy v. Google LLC,*
    2023 WL 5440787 (N.D. Cal. 2023)..................................................................2

*Kentucky v. Graham,*
    473 U.S. 159 (1985) ...........................................................................................8

*Kern v. Clark,*
    331 F.3d 9 (2d Cir. 2003) .................................................................................15

*Leroy v. Great Western United Corp.,*
    443 U.S. 173 (1979) .........................................................................................10

*Levitt v. Yelp! Inc.,*
    765 F.3d 1123 (9th Cir. 2014)............................................................................4

*Lewellen v. Raff,*
    843 F.2d 1103 (8th Cir. 1988).....................................................................11, 13

*Lowe v. SEC,*
    472 U.S. 181 (1985) ...........................................................................................3

*Makaeff v. Trump Univ., LLC,*
    715 F.3d 254 (9th Cir. 2013)..............................................................................3

*Miami Herald Publishing Co. v. Tornillo,*
    418 U.S. 241 (1974) ...........................................................................................3

*Mir v. Kirchmeyer*,
    2014 WL 2436285 (S.D. Cal. 2014) ................................................................. 12

*Morales v. Trans World Airlines, Inc.*,
    504 U.S. 374 (1992) ................................................................................... 4, 5

*Mother & Unborn Baby Care of N. Tex., Inc. v. State*,
    749 S.W.2d 533 (Tex. App. 1988) ................................................................. 12

*Myers v. Bennett Law Offs.*,
    238 F.3d 1068 (9th Cir. 2001) ....................................................................... 9

*N.Y. Times Co. v. Sullivan*,
    376 U.S. 254 (1964) ..................................................................................... 2

*Netflix, Inc. v. Babin*,
    641 F. Supp. 3d 319 (E.D. Tex. 2022) .......................................................... 12

*New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*,
    491 U.S. 350 (1989) ................................................................................... 10

*Newton v. Thomason*,
    22 F.3d 1455 (9th Cir. 1994) ....................................................................... 10

*Panavision Int'l, LP v. Toeppen*,
    141 F.3d 1316 (9th Cir. 1998) .................................................................... 7, 8

*Partington v. Gedan*,
    961 F.2d 852 (9th Cir. 1992) ....................................................................... 12

*Peterson v. Kennedy*,
    771 F.2d 1244 (9th Cir. 1985) ....................................................................... 6

*Robertson v. Wegmann*,
    436 U.S. 584 (1978) ................................................................................... 11

*Serv. Women's Action Network v. Mattis*,
    320 F. Supp. 3d 1082 (N.D. Cal. 2018) .......................................................... 9

*Shaw v. Garrison*,
    467 F.2d 113 (5th Cir. 1972) ....................................................................... 13

*Sierra Pac. Airlines v. Dallas Aerospace*,
    6 F. App'x 606 (9th Cir. 2001) ..................................................................... 9

*Sprint Commc'ns, Inc. v. Jacobs*,
    571 U.S. 69 (2013) ..................................................................................... 14

*Steffel v. Thompson*,
    415 U.S. 452 (1974) ................................................................................... 14

v

DAVIS WRIGHT TREMAINE LLP
50 CALIFORNIA STREET, 23RD FLOOR
SAN FRANCISCO, CALIFORNIA 94111
Tel: (415) 276-6500

*Susan B. Anthony List v. Driehaus*,
   573 U.S 149 (2014) ............................................................................................. 14, 15

*Thomas P. Gonzalez Corp. v. Consejo Nacional De Produccion De Costa Rica*,
   614 F.2d 1247 (9th Cir. 1980) ............................................................................... 6

*Torries v. Hebert*,
   111 F. Supp. 2d 806 (W.D. La. 2000) ................................................................. 11

*Twitter, Inc. v. Paxton*,
   2021 WL 1893140 (N.D. Cal. 2021), *aff'd on other grounds*,
   56 F.4th 1170 (9th Cir. 2022) ...................................................................... 1, 5, 9

*Vrdolyak v. Avvo, Inc.*,
   206 F. Supp. 3d 1384 (N.D. Ill. 2016) ................................................................. 4

*W. Va. State Bd. of Educ. v. Barnette*,
   319 U.S. 624 (1943) ............................................................................................. 2

*Walden v. Fiore*,
   571 U.S. 277 (2014) ............................................................................................. 6

*Wilson v. Thompson*,
   593 F.2d 1375 (5th Cir. 1979) ............................................................................. 14

*World Famous Drinking Emporium, Inc. v. City of Tempe*,
   820 F.2d 1079 (9th Cir. 1987) ............................................................................. 10

*Wyatt Tech. Corp. v. Malvern Instruments, Inc.*,
   2010 WL 11508372 (C.D. Cal. 2010) ................................................................. 5

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*,
   433 F.3d 1199 (9th Cir. 2006) ............................................................................. 6

*Ex parte Young*,
   209 U.S. 123 (1908) ............................................................................................. 8

*Younger v. Harris*,
   401 U.S. 37 (1971) .....................................................................................*passim*

*Zwickler v. Koota*,
   389 U.S. 241 (1967) ............................................................................................. 10

**Statutes**

28 U.S.C. § 1391(b)(2) ............................................................................................... 9

42 U.S.C. § 1983 .................................................................................................... 1, 14

California Business & Professions Code § 2253(b) ................................................... 4

vi

YELP'S REPLY ISO MOT. FOR PRELIM. INJ.
Case No. 3:23-cv-04977-TLT

DAVIS WRIGHT TREMAINE LLP
50 CALIFORNIA STREET, 23RD FLOOR
SAN FRANCISCO, CALIFORNIA 94111
Tel: (415) 276-6500

California Code of Civil Procedure § 425.16 ................................................................ 8

**Constitutional Provisions**

U.S. Const., amend. I ................................................................................ *passim*

**Other Authorities**

Wright & Miller, 14D Fed. Prac. & Proc. Juris. § 3802 (4th ed.) ................................ 10

YELP'S REPLY ISO MOT. FOR PRELIM. INJ.
Case No. 3:23-cv-04977-TLT

DAVIS WRIGHT TREMAINE LLP
50 CALIFORNIA STREET, 23RD FLOOR
SAN FRANCISCO, CALIFORNIA 94111
Tel: (415) 276-6500

## I.     INTRODUCTION

The Attorney General does not deny his intent to silence Yelp from making admittedly true statements, or that his conduct has done that.  Nor does he seriously defend the merits of his claims under the Texas Deceptive Trade Practices Act.  Instead, he asks the Court to deny Yelp access to a federal forum to vindicate its federal rights.  The Court should enter a preliminary injunction.

Yelp is likely to prevail on the merits.  The Attorney General claims Yelp's CPC advisory is misleading because Yelp fails to publish comparable advisories about abortion clinics.  The First Amendment, however, protects Yelp's discretion to decide what contextual information to provide its users.  Just as the First Amendment forbids the Attorney General from compelling the *San Francisco Chronicle* to print articles to "balance" allegedly biased coverage, he cannot compel Yelp to publish advisories about abortion clinics.  The CPC notice is not commercial speech.  Even if it were, the CPC notice is not misleading and concerns lawful activity—the Attorney General does not and cannot provide any evidence to the contrary.

The Attorney General cannot evade federal judicial review.  The Court has personal jurisdiction over the Attorney General because he has "engaged in retaliatory conduct expressly aimed at chilling the speech of a California resident" to a California audience.  *Twitter, Inc. v. Paxton*, 2021 WL 1893140, at *2 (N.D. Cal. 2021), *aff'd on other grounds*, 56 F.4th 1170 (9th Cir. 2022) (en banc).  Venue is proper because Yelp is suffering harm in this District, where it is headquartered.  And there is no basis for prudential abstention under *Younger v. Harris*, 401 U.S. 37, 53-54 (1971).  Where, as here, a state official acts in bad faith to suppress speech, a federal court retains its obligation to decide actionable controversies.  A different ruling would exceed the limited comity-based exception to that obligation, destroy Section 1983's constitutional shield against hostile state actors, and invite more bad faith prosecutions to suppress speech.

The Attorney General's bad faith is transparent.  Seven months after bullying Yelp into self-censorship and publicly crediting Yelp for revising the notice, the Attorney General abruptly announced his intent to punish Yelp for publishing the "misleading" notice and prevent Yelp from disseminating it or any other "misleading" speech about CPCs, purportedly based on his "investigation."  The Attorney General offers no evidence of an investigation, nor was there a basis

DAVIS WRIGHT TREMAINE LLP
50 CALIFORNIA STREET, 23RD FLOOR
SAN FRANCISCO, CALIFORNIA 94111
Tel: (415) 276-6500

1    for one, as Yelp's statement—which still appears on its platform—is clear and "literally true."

2        This misconduct recalls well-worn tactics to censor disfavored speech through bad faith

3    threats of meritless state court litigation.  The Court should enter a preliminary injunction.

4    **II.      YELP WILL PREVAIL ON THE MERITS**

5        **A.      The Attorney General's Conduct Violates The First Amendment.**

6        The Attorney General does not dispute that the First Amendment bars state action to punish

7    or prevent publication of truthful information of public concern.  *Bartnicki v. Vopper*, 532 U.S.

8    514, 527 (2001) (Mot. 6).  His putative defense instead rests on the premise that the government

9    may punish or prevent the dissemination of truthful information on a public issue when—

10   unaccompanied by the government's preferred message—it creates an alleged bias at odds with

11   official state policy.  Opp. 17.  The First Amendment, however, does not permit a government

12   official to honor the Constitution only when it suits his political agenda.

13       This country has a "profound national commitment to the principle that debate on public

14   issues should be uninhibited, robust, and wide-open."  *N.Y. Times Co. v. Sullivan*, 376 U.S. 254,

15   270 (1964).  "If there is any fixed star in our constitutional constellation, it is that no official, high

16   or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of

17   opinion or force citizens to confess by word or act their faith therein."  *W. Va. State Bd. of Educ.*

18   *v. Barnette*, 319 U.S. 624, 642 (1943).  The First Amendment thus secures a publisher's right to

19   decide what to disseminate, even if the government perceives its choices as biased.  *See, e.g.*,

20   *Bullfrog Films, Inc. v. Wick*, 847 F.2d 502, 510 (9th Cir. 1988) (Mot. 12) (First Amendment

21   prohibits "government editorial oversight … in the interest of 'balance'"); *accord* Br. of Texas et

22   al. as Amici in Supp. of Pet., *303 Creative LLC v. Elenis*, 2021 WL 5053177, at *6 (U.S. filed Oct.

23   28, 2021) (Attorney General agreeing that "the government cannot force individuals to be

24   'instruments for fostering public adherence to an ideological point of view they find

25   unacceptable'").  The Attorney General's (new) contrary position—effectively, "that government

26   may restrict the speech of some elements of our society in order to enhance the relative voice of

27   others"—is "wholly foreign to the First Amendment."  *Buckley v. Valeo*, 424 U.S. 1, 48-49 (1976);

28   *see also, e.g.*, *Kennedy v. Google LLC*, 2023 WL 5440787, at *2 (N.D. Cal. 2023) (Thompson, J.)

DAVIS WRIGHT TREMAINE LLP
50 CALIFORNIA STREET, 23RD FLOOR
SAN FRANCISCO, CALIFORNIA 94111
Tel: (415) 276-6500

(rejecting Robert F. Kennedy Jr.'s claim that YouTube unlawfully censored COVID videos).

The decision in *Miami Herald Publishing Co. v. Tornillo*, 418 U.S. 241 (1974) (Mot. 10, 12), is on point. There, the Supreme Court unanimously held that the First Amendment bars the government from attacking alleged "bias and manipulative reportage" by coercing the publication of balanced content. *Id.* at 250, 258 (invalidating Florida law requiring publishers to give political candidate equal space to reply to published criticism). The "intrusion into the function of editors" was alone unconstitutional. *Id.* at 258. *Tornillo* states a per se rule: "any… compulsion to publish that which reason tells [an editor] should not be published is unconstitutional." *Id.* at 256 (cleaned up); *see 303 Creative LLC v. Elenis*, 600 U.S. 570, 603 (2023) (First Amendment bars state action that compels private speech). The Attorney General violates that rule by threatening Yelp with the ordeal of bad faith prosecution unless it corrects its "disparate" treatment of CPCs. Opp. 17-18. His conduct—exercised through extortion and abuse of power—unquestionably violates the First Amendment. *See also, e.g.*, *Backpage.com, LLC v. Dart*, 807 F.3d 229, 231 (7th Cir. 2015) (Posner, J.) (First Amendment forbids state officer's "attempt to suppress the protected speech of private persons by threatening that legal sanctions will at his urging be imposed unless there is compliance with his demands") (citing *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 64-72 (1963)).

Recognizing these protections, the Attorney General claims the consumer notice is commercial speech. *See* Opp. 16-17 (citing commercial speech cases). He is wrong. Commercial speech "does no more than propose a commercial transaction." *Harris v. Quinn*, 573 U.S. 616, 648 (2014) (citation omitted); *accord IMDb.com Inc. v. Becerra*, 962 F.3d 1111, 1122 (9th Cir. 2020) (same). Statements "warning consumers of fraudulent or deceptive business practices constitute a topic of widespread public interest[.]" *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 262 (9th Cir. 2013) (finding such statements eligible for protection under California's anti-SLAPP statute); *see* Dkt. 16-1 ¶¶ 6-9, 13-15 (Yelp created CPC notice to prevent deception). The First Amendment thus protects a Consumer Reports alert discouraging purchase of a particular loudspeaker system, *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 503-14 (1984), just as it protects any "opinion about a commercial product," *Lowe v. SEC*, 472 U.S. 181, 210 & n.58 (1985). *See also, e.g.*, *CTS, Inc. v. CFTC*, 149 F.3d 679, 686 (7th Cir. 1998) (advisories "not

DAVIS WRIGHT TREMAINE LLP
50 CALIFORNIA STREET, 23RD FLOOR
SAN FRANCISCO, CALIFORNIA 94111
Tel: (415) 276-6500

1   commercial speech because they do not propose a commercial transaction") (citing cases).

2       It makes no difference whether Yelp—like Consumer Reports—publishes other content

3   that could somehow be deemed advertising.  Even the Yellow Pages—a static business directory

4   with nothing like the editorial content Yelp provides—"clearly do 'more than propose a

5   commercial transaction'" and thus receive the First Amendment's full protection.  *Dex Media W.,*

6   *Inc. v. City of Seattle*, 696 F.3d 952, 959, 964-65 (9th Cir. 2012) (Yellow Pages with ads not

7   commercial speech); *see also, e.g.*, *Davis v. Avvo, Inc.*, 345 F. Supp. 3d 534, 540 (S.D.N.Y. 2018)

8   (attorney directory with ads not commercial speech); *Vrdolyak v. Avvo, Inc.*, 206 F. Supp. 3d 1384,

9   1388 (N.D. Ill. 2016) (same).  So, too, does Yelp's platform: a robust source of consumer

10  information, including reviews, photos, and consumer notices.  *See Levitt v. Yelp! Inc.*, 765 F.3d

11  1123, 1126 (9th Cir. 2014) (Yelp "provides an online forum on which its users express opinions");

12  *Edwards v. District of Columbia*, 755 F.3d 996, 1006-7 (D.C. Cir. 2014) (Yelp "provide[s]

13  consumers a forum to rate the quality of their experience").

14      Even if Yelp's speech were "commercial" (it is not), the Attorney General provides no

15  evidence to support his assertion "that other pregnancy-oriented entities *also* commonly lack

16  licensed, on-site medical professionals." Opp. 17.   Other "pregnancy-oriented entities" (i.e.,

17  abortion clinics) *must* employ medical professionals, *e.g.*, Cal. Bus. & Profs. Code § 2253(b), and

18  *do* offer a wider range of medical services (i.e., abortion care).  *See* Br. of Texas et al. as Amici in

19  Supp. of Pet., *NIFLA v. Becerra*, 2018 WL 461049, at *14 (U.S. filed Jan. 16, 2018) (the Attorney

20  General characterizing abortion procedures as "medical services").  No authority permits the

21  Attorney General to coerce Yelp into retracting protected speech or carrying his preferred message.

22      **B.      The Texas DTPA Claim Fails.**

23      The Attorney General does not dispute that the DTPA claim fails because none of its

24  statutory predicates apply.  *See* Mot. 12-13.  Indeed, he admits the DTPA likely has no application

25  to non-commercial speech, as it is outside "the conduct of any trade or commerce."  Opp. 17-18

26  (citation omitted).  These admissions independently confirm Yelp is likely to prevail on the merits.

27      *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374 (1992) (Opp. 18), does not require

28  Yelp to raise these (unrebutted) dispositive arguments in Texas state court.  In *Morales*, the Court

YELP'S REPLY ISO MOT. FOR PRELIM. INJ.
Case No. 3:23-cv-04977-TLT

*upheld* an injunction enjoining a Texas Attorney General's threats to enforce preempted state consumer protection laws. *Id.* at 382, 390 (cleaned up).  In the excerpt the Attorney General quotes, the Court faulted the district court for enjoining enforcement of provisions the State had not even threatened to enforce, since federal courts may not decide "the constitutionality of state laws … where it is not even clear the State itself would consider its law applicable." *Id.* at 382-83.  Yelp seeks only to enjoin enforcement action the Attorney General *has* threatened.

Threatening Yelp with the burden of a state court proceeding whose merits the Attorney General does not even defend is the archetype of bad faith.  *Cf. Wyatt Tech. Corp. v. Malvern Instruments, Inc.*, 2010 WL 11508372, at *5 (C.D. Cal. 2010) ("bad faith may be inferred … where the specific shortcomings of [a] case are identified by opposing counsel, and the decision is made to go forward despite the inability to respond to the arguments") (cleaned up).  It supports an inference that his putative enforcement action is not intended to be meritorious, but to cudgel Yelp into self-censorship. *See infra* § II.C.3.  That is not a legitimate basis for an enforcement action.

**C.     The Attorney General's Jurisdictional Defenses Fail.**

The Attorney General urges this Court to dismiss on jurisdictional grounds.  It should not.

### 1.     This Court has personal jurisdiction over the Attorney General.

The Attorney General claims personal jurisdiction is improper.  Opp. 7.  But another court in this District has already found that it has personal jurisdiction over the Attorney General in a lawsuit filed by California-based Twitter seeking to enjoin him from retaliating against it through proceedings in Texas.  *See Paxton*, 2021 WL 1893140, at *2. So too here.

Specific jurisdiction exists under *Calder v. Jones*, 465 U.S. 783 (1984), where, as here, (1) the defendant has "purposefully direct[ed] his activities [toward] the forum"; (2) the claim "arises out of or relates to the defendant's forum-related activities"; and (3) exercising jurisdiction is "reasonable." *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1090-91 (9th Cir. 2023).

#### a.     The Attorney General directed his actions toward California.

Purposeful direction exists where the defendant allegedly "engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000).  Unquestionably, the

YELP'S REPLY ISO MOT. FOR PRELIM. INJ.
Case No. 3:23-cv-04977-TLT

DAVIS WRIGHT TREMAINE LLP
50 CALIFORNIA STREET, 23RD FLOOR
SAN FRANCISCO, CALIFORNIA 94111
Tel: (415) 276-6500

1   Attorney General targeted Yelp, knowing Yelp is a California resident and demanding that Yelp

2   alter its speech, including *in California*.  *See* Dkt. 16-1 Ex. F (letter to Yelp in California); Dkt.

3   16-1 Ex. H (notice of intent to sue, not limited to Texas CPCs); Dkt. 16-2 Ex. 11 ¶ 32 (seeking to

4   enjoin Yelp from posting information on CPC listings generally).  "California is the focal point

5   both of the [Attorney General's conduct] and of the harm suffered."  *Calder*, 465 U.S. at 789; *see*

6   *also, e.g.*, *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1209

7   (9th Cir. 2006) (directing Yahoo! to make changes in California was "intentional act … expressly

8   aimed at [California]"); *Bancroft*, 223 F.3d at 1087 (jurisdiction proper where defendant sent letter

9   to domain name registrar seeking to interfere with California-based plaintiff's rights).

10       The Attorney General cites cases holding communication to a forum resident is insufficient

11   to create jurisdiction.  *See* Opp. 9-11.  Many do not apply *Calder*, and all are irrelevant where, as

12   here, "the actual *content* of communications with a forum gives rise" to an "intentional tort."  *Def.*

13   *Distributed v. Grewal*, 971 F.3d 485, 493-94 (5th Cir. 2020) (emphasis added); *accord Bancroft*,

14   223 F.3d at 1087; *e.g., Yahoo!*, 433 F.3d at 1209 (Opp. 9) (no jurisdiction based on letter that was

15   not "tortious or otherwise wrongful"); *Hunt v. Erie Ins. Grp.*, 728 F.2d 1244, 1248 (9th Cir. 1984)

16   (Opp. 9) (insurance dispute where insurer mailed payments and letter refusing coverage to insured

17   who had moved to California); *Peterson v. Kennedy*, 771 F.2d 1244, 1261-62 (9th Cir. 1985) (Opp.

18   9) (malpractice claim); *Thomas P. Gonzalez Corp. v. Consejo Nacional De Produccion De Costa*

19   *Rica*, 614 F.2d 1247, 1254 (9th Cir. 1980) (Opp. 9) (contract claim).  Nor is Yelp "the only link"

20   between the Attorney General and California.  Opp. 8 (quoting *Walden v. Fiore*, 571 U.S. 277,

21   285 (2014)).  The conduct here "is damaging not just to [Yelp], but to surrounding audiences," as

22   it requires censoring speech in California.  *Grewal*, 971 F.3d at 495 & n.9; *see also Walden*, 571

23   U.S. at 287-88 ("crux of *Calder*" was that "effects" of libelous article "connected the defendants

24   to California" because it was read by residents); Daire Decl. Ex. 4 (open letter from attorneys

25   general describing harm to national audiences from censoring Yelp).

26       None of the Attorney General's cases support his assertion that courts treat state officials

27   differently, nor do they.  *See* Opp. 9-10.  For example, in *Grewal*, the Fifth Circuit held personal

28   jurisdiction was proper over a New Jersey Attorney General who had sent cease-and-desist letters

YELP'S REPLY ISO MOT. FOR PRELIM. INJ.
Case No. 3:23-cv-04977-TLT

DAVIS WRIGHT TREMAINE LLP
50 CALIFORNIA STREET, 23RD FLOOR
SAN FRANCISCO, CALIFORNIA 94111
Tel: (415) 276-6500

to a Texas company that distributes information about three-dimensional printing of firearms.  971 F.3d at 485.  By demanding that the plaintiff "cease publication of their materials generally," rather than to New Jersey residents only, the Attorney General "projected himself across state lines and asserted a pseudo-national executive authority."  *Id.* at 492-93; *see also, e.g., Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 167 (2d Cir. 2005) (New York court could exercise jurisdiction over out-of-state attorneys general because they negotiated agreement that formed the basis of plaintiff's claim there).

### b. Yelp's claims arise from this California-directed conduct.

The second prong of the specific-jurisdiction test is met where, as here, the claim "arises out of or relates to the defendant's forum-related activities."  *Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 603 (9th Cir. 2018).  The very basis of Yelp's claim is the Attorney General's retaliatory campaign to suppress its speech, including in California.  Compl. ¶¶ 1-6, 33-37; *see Panavision Int'l, LP v. Toeppen*, 141 F.3d 1316 (9th Cir. 1998) (nexus satisfied where but for defendant's conduct directed toward forum, injury would not have occurred).  Without evidence, the Attorney General claims Yelp's speech is in Texas, Opp. 11, but that is false: the only evidence shows that Yelp's speech was made in California.  Dkt. 16-1; *see Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008) (uncontroverted facts "must be taken as true").

### c. No "compelling case" makes jurisdiction unreasonable.

Because Yelp's claim satisfies the first two prongs of the specific-jurisdiction test, there is a "strong presumption in favor of jurisdiction."  *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995).  To rebut it, the Attorney General must "present a *compelling case*" that additional considerations make exercising jurisdiction here unreasonable.  *Id.*  In evaluating this prong, courts consider seven factors: "(1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum."  *Freestream*, 905 F.3d at 607.  The first, third, fourth, fifth, and sixth factors

1   favor jurisdiction, and the remaining ones do not counsel a different result.

2       First, the Attorney General has purposefully interjected himself into California's affairs by

3   seeking to prevent a California-based company from publishing truthful information about CPCs

4   to California consumers. *See, e.g.*, *Panavision*, 141 F.3d at 1323 (first factor "strongly" favored

5   jurisdiction where defendant registered plaintiff's trademarks as his domain names "knowing that

6   this would likely injure [plaintiff] in California" and sent demand letter to plaintiff in California).

7       As to the third factor, exercising jurisdiction does not conflict with Texas's sovereignty.

8   Yelp's First Amendment claim turns on federal law—not the "validity of [Texas] laws," Opp. 13—

9   and it seeks to enjoin the Attorney General—not the state of Texas—from abusing his office to

10   suppress speech. Such "official-capacity actions for prospective relief are not treated as actions

11   against the State," *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985), and "do[] not affect[] the

12   state in its sovereign or governmental capacity," *Ex parte Young*, 209 U.S. 123, 159 (1908).

13       As to the fourth and sixth factors, California has "a 'manifest interest' in providing its

14   residents with a convenient forum for redressing injuries inflicted by out-of-state actors." *Burger*

15   *King Corp. v. Rudzewicz*, 471 U.S. 462, 473-74 (1985). The Attorney General's efforts to suppress

16   Yelp's speech not only deprive Yelp of its rights in California, they impact Californians' receipt

17   of accurate information. *See Grewal*, 971 F.3d at 495 & n.9 (censorship "damaging … to

18   surrounding audiences"); *see also* Cal. Code Civ. P. § 425.16 (California anti-SLAPP statute);

19   Daire Decl. Ex. 4 (discussing audiences' injuries). Yelp has a strong interest in litigating here,

20   where it can obtain convenient and effective relief.

21       The fifth factor, efficiency, favors jurisdiction because the relevant issues have been

22   briefed in this Court. *See DIRECTV v. EQ Stuff, Inc.*, 207 F. Supp. 2d 1077, 1082 (C.D. Cal. 2002)

23   (efficiency "achieved by a court that is already 'familiar with the facts and procedural history of

24   the litigation'"). Relitigating these issues in Texas would waste resources. This Court is the better

25   forum because the First Amendment bars the Attorney General's action against Yelp's speech,

26   without consideration of the Texas DTPA. California federal courts can, and routinely do, interpret

27   the DTPA, which is just one of many deceptive acts and practices statutes on the books in every

28   state. *See, e.g., Dajani v. Dell Inc.*, 2009 WL 815352, at *3 (N.D. Cal. 2009) (applying Texas

YELP'S REPLY ISO MOT. FOR PRELIM. INJ.
Case No. 3:23-cv-04977-TLT

DAVIS WRIGHT TREMAINE LLP
50 CALIFORNIA STREET, 23RD FLOOR
SAN FRANCISCO, CALIFORNIA 94111
Tel: (415) 276-6500

DTPA); *Banh v. Am. Honda Motor Co.*, 2020 WL 4390371, at \*13-14 (C.D. Cal. 2020) (same).

The remaining factors, burden on the defendant and existence of an alternative forum, do not tip the scale. The "inconvenience" of defending in a foreign state does "not overcome clear justifications for the exercise of jurisdiction" unless the burden "is so great as to constitute a deprivation of due process." *Ballard*, 65 F.3d at 1501. The Attorney General makes no such showing here, instead conceding he can "minimize travel costs" by retaining local counsel. Opp. 12. The existence of an alternative forum "becomes an issue only when the forum state is shown to be unreasonable"—which the Attorney General has failed to show here. *Sierra Pac. Airlines v. Dallas Aerospace*, 6 F. App'x 606, 610 (9th Cir. 2001).

The Attorney General relies heavily on *Insurance Co. of North America v. Marina Salina Cruz*, 649 F.2d 1266 (9th Cir. 1981). But that case involved an attempt to sue the Mexican Navy in Alaska after a boat negligently repaired in Mexico later sank in Alaska—facts far different from the Attorney General's intentional punishment of speech spoken in California, by a California resident, and available to all Californians. *See id.* at 1272.

The Attorney General's actions subject him to jurisdiction here.

## 2. Venue is proper in this District.

The Attorney General claims venue is improper because the "events giving rise to this lawsuit …. occurred only in Texas." Opp. 16. That is wrong. Venue is proper under 28 U.S.C. § 1391(b)(2) where the plaintiff's "harms" were "felt." *See Myers v. Bennett Law Offs.*, 238 F.3d 1068, 1075-76 (9th Cir. 2001); *accord Twitter*, 2021 WL 1893140, at \*2 (venue proper in this District over claims relating to issuance of civil investigative demand to Twitter). Indeed, in cases "brought on First Amendment grounds, impact becomes the *most important part* of the case," *Serv. Women's Action Network v. Mattis*, 320 F. Supp. 3d 1082, 1088 (N.D. Cal. 2018) (quoting *Kalman v. Cortes*, 646 F. Supp. 2d 738, 742 (E.D. Pa. 2009)) (emphasis added), because "[t]he suppression [of speech] is a more 'substantial' event than the decision to suppress." *Kalman*, 646 F. Supp. 2d at 742. Here, the most substantial events giving rise to Yelp's claim occurred in this District: Yelp engaged in speech and the Attorney General suppressed it in this District.

The Attorney General relies heavily on *Leroy v. Great Western United Corp.*, 443 U.S. 173

DAVIS WRIGHT TREMAINE LLP
50 CALIFORNIA STREET, 23RD FLOOR
SAN FRANCISCO, CALIFORNIA 94111
Tel: (415) 276-6500

(1979).  Opp. 14-16.  In *Leroy*, however, a Texas plaintiff mounted a constitutional challenge to an Idaho statute.  443 U.S. at 175.  Here, Yelp does not claim the Texas law is invalid or base its claims on the constitutionality of the DTPA.  Rather, Yelp bases its claim on the Attorney General's abuse of his office to punish First Amendment-protected speech and to prevent residents in California (and elsewhere) from receiving that speech.  Compl. ¶¶ 1-6, 33-37; *supra* § II.C.1.a.  In any event, *Leroy* interprets a prior version of the venue statute, 443 U.S. at 178 n.8, 183-85, and the Attorney General's arguments that Texas is the "one obvious locus," Opp. 14, are no longer relevant.  *See Newton v. Thomason*, 22 F.3d 1455, 1463-64 & n.8 (9th Cir. 1994) (venue no longer limited to "most convenient forum," so factors *Leroy* considered not controlling); Wright & Miller, 14D Fed. Prac. & Proc. Juris. § 3802 (4th ed.) ("*Leroy* is of limited, if any, significance now.").

### 3. The *Younger* abstention defense fails.

"[O]nly exceptional circumstances" warrant *Younger* abstention.  *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 368 (1989).  There are none here.

### a. *Younger* does not insulate bad faith from federal review.

"[W]herever the Federal courts sit, human rights under the Federal Constitution are always a proper subject for adjudication, and … we have not the right to decline the exercise of that jurisdiction simply because the rights asserted may be adjudicated in some other forum."  *Cook v. Harding*, 879 F.3d 1035, 1040 (9th Cir. 2018) (quoting *Zwickler v. Koota*, 389 U.S. 241, 248 (1967)).  Federal courts must therefore "enforce the mandated constraints on abstention so that such constitutional rights may be vindicated."  *Id.*  These constraints foreclose *Younger* abstention where, as here, an indicted state official impeached and under federal investigation for abusing his office brings a meritless action in a stunt to punish core speech at odds with his politics.

The Attorney General addresses only the threshold requirements of abstention.  Opp. 4-6.  But "[b]ad faith prosecution or harassment make abstention inappropriate even where these requirements are met."  *World Famous Drinking Emporium, Inc. v. City of Tempe*, 820 F.2d 1079, 1082 (9th Cir. 1987); *see also see also Baffert v. Cal. Horse Racing Bd.*, 332 F.3d 613, 621 (9th Cir. 2003) (same).  *Younger* itself held that a court should *not* abstain from enjoining a "bad faith" prosecution if "the danger of irreparable loss" "is both great and immediate."  *Younger*, 401 U.S.

at 45-46, 53-54; *accord Robertson v. Wegmann*, 436 U.S. 584, 586 n.2 (1978) ("bad faith prosecution establishes irreparable injury both great and immediate").  The Attorney General's extensive reliance on *Bristol-Myers Squibb Co. v. Connors*, 979 F.3d 732, 738 (9th Cir. 2020)—where the plaintiffs "expressly disclaimed" the bad-faith exception—is thus misplaced.

**b.      The Attorney General's action is in bad faith.**

A prosecution is in bad faith when it is brought (1) "without a reasonable expectation of obtaining a valid conviction," *Baffert*, 332 F.3d at 621 (citation omitted), or (2) "in retaliation for or to discourage the exercise of constitutional rights," *Lewellen v. Raff*, 843 F.2d 1103, 1109 (8th Cir. 1988) (quoting *Fitzgerald v. Peek*, 636 F.2d 943, 945 (5th Cir. 1981)); *see also Cullen v. Fliegner*, 18 F.3d 96, 104 (2d Cir. 1994) ("retaliatory or bad faith prosecution" independently "establishes irreparable injury for the purposes of the *Younger* doctrine").  Thus in *Lewellen*, the Eighth Circuit held that *Younger* did not prevent adjudication of an attorney's claims that prosecutors charged him with witness bribery because of his race, as retaliation for vigorously defending his client in a separate criminal case, and to thwart his campaign for state office.  843 F.2d at 1110; *see also*, *e.g.*, *Torries v. Hebert*, 111 F. Supp. 2d 806, 816 (W.D. La. 2000) (refusing to abstain from skating rink's claims seeking relief from prosecution for "contributing to the delinquency of a juvenile" because it played what the government called "gangster rap," since prosecution was "motivated at least in part" to deter playing of "constitutionally protected" music).

Although the Ninth Circuit has not, in a published decision, considered the second category of *Younger*-preclusive bad faith, courts across the country (including in the Ninth Circuit) recognize and apply this majority rule.[1]  *See*, *e.g.*, *Cullen*, 18 F.3d at 104 (disciplinary charges against teacher in bad faith when brought to retaliate for exercise of "First Amendment right to protest the school board elections"); *Council for Periodical Distribs. Ass'n v. Evans*, 642 F. Supp. 552, 565-67 (M.D. Ala. 1986), *aff'd*, 827 F.2d 1483, 1485 (11th Cir. 1987) (obscenity charges

---

[1] The Ninth Circuit addressed this issue once, in an unpublished decision, where it reversed a ruling refusing to find bad faith even though the state action "was brought with rather weak evidence, and without a strong basis to expect to prevail," holding that the state's "substantial bias" against the plaintiff and "speculative theories" both established bad faith.  *Flowers v. Seki*, 87 F.3d 1318, 1996 WL 311473, at *2 (9th Cir. 1996) (citing decisions in Second, Fifth and Tenth Circuits). There is even less evidence—i.e., none—supporting the Attorney General's claim here.

DAVIS WRIGHT TREMAINE LLP
50 CALIFORNIA STREET, 23RD FLOOR
SAN FRANCISCO, CALIFORNIA 94111
Tel: (415) 276-6500

against magazine publishers and distributors brought in retaliation for filing lawsuit challenging prior restraint); *Netflix, Inc. v. Babin*, 641 F. Supp. 3d 319, 335 (E.D. Tex. 2022) (enjoining obscenity and child pornography charges against streaming service where evidence showed prosecution retaliated for service's rights of expression and petition of the government to challenge earlier charges over same film); *Frampton v. City of Baton Rouge*, 2022 WL 90238, at *35 (M.D. La. 2022) (enjoining prosecution motivated by retaliation for press release critical of the police department and posting a video depicting arrest); *Mir v. Kirchmeyer*, 2014 WL 2436285, at *13 (S.D. Cal. 2014) (no abstention where federal plaintiff "alleged repeated harassment") (citing *Partington v. Gedan,* 961 F.2d 852, 861-62 (9th Cir. 1992)).

Under either formulation, the Attorney General's bad faith is plain.  First, the Attorney General has not even tried to defend his putative DTPA claim, let alone shown a "reasonable expectation" that it *might* have merit.  *Cullen*, 18 F.3d at 103.  The Attorney General admits Yelp's statement to consumers is "literally true"; suggests without support, and in defiance of settled law, that it should still be classified as commercial speech subject to scrutiny for supposedly material omissions; and submits no evidence to show that the alleged omission actually or could have objectively misled anyone.  *See supra* § II.A-B.  Although he claims this case "fits neatly" within *Younger* because of his "investigation," Opp. 5, there is no evidence of any investigation.  The Attorney General never served Yelp with a Civil Investigative Demand, asked it to cooperate, or even contacted Yelp during the pendency of his supposed investigation.  *See* Daire Decl. ¶¶ 2-4.  Nor was there anything *to investigate*, as there was never any question what the CPC notice says or how Yelp uses it.  This conduct is especially galling given that his office previously prosecuted a CPC under the DTPA for advertising itself in the "Abortion Information & Services" and "Clinics – Medical" sections of the Yellow Pages *and won*.  *See Mother & Unborn Baby Care of N. Tex., Inc. v. State*, 749 S.W.2d 533 (Tex. App. 1988).   To now claim Yelp's accurate communications about CPCs *to the same effect* are somehow deceptive is bad faith.

Second, the Attorney General's conduct confirms his actions are retaliatory and designed to punish and prevent Yelp (and others) from speaking on a contested political issue.  The Attorney General's opposition to abortion is a centerpiece of his political platform.  *See* Dkt. 16-2 Ex. 12;

1   Daire Decl. Ex. 7.   When the Supreme Court decided *Dobbs v. Jackson Women's Health*

2   *Organization*, 142 S. Ct. 2228 (2022), he "celebrat[ed]" the result and created a holiday to

3   commemorate the decision.   Dkt. 16-2 Ex. 12 at 147.   Another federal court found that the Attorney

4   General used his powers to project his own view on abortion into other states, with the intent to

5   limit access to legal abortions and information about them.   *Fund Tex. Choice v. Paxton*, 2023 WL

6   2558143, at *5-7 (W.D. Tex. 2023).   And here, in announcing his enforcement action, the Attorney

7   General highlighted a "lengthy public statement" from Yelp's CEO vowing to "fight[] the legal

8   battle against abortion bans," after *Dobbs*.   Daire Decl. Ex. 1; Malik Reply Decl. Ex. A.   He

9   repeated those justifications in his Petition, *see* Dkt. 16-2 Ex. 11 ¶¶ 17-19, and suggests *Yelp's*

10   "politics" were "the primary motivation" for the CPC-related communications, Opp. 2.

11       The timing and circumstances of the Attorney General's actions underscore his retaliatory

12   political motive.   The Attorney General first signed a letter from a coalition of his peers asserting

13   Yelp's CPC notice was "misleading" and "misguided."   Dkt. 16-1 Ex. F at 3-5.   Under pressure,

14   Yelp amended the (truthful) notice to be concededly "accurate."   Dkt. 16-2 Ex. 10.   After the

15   letter's primary author praised this as a "timely response" (*id.* Ex. 18), no other state acted against

16   Yelp, nor suggested such action would be proper.   But during this time, the Attorney General was

17   impeached and suspended from office by the Texas House of Representatives.   *See* Daire Decl.

18   Exs. 5-6.   In his first announced action after he returned to office, he sued Yelp for the notice it

19   had already amended, apparently to score points with his base of voters.   Courts routinely find bad

20   faith precludes abstention in cases (like this one) "where a prosecutor has pursued highly

21   questionable charges against the plaintiff apparently for the sole purpose of gaining publicity for

22   himself."   *Lewellen*, 843 F.2d at 1112 n.10; *see, e.g.*, *Shaw v. Garrison*, 467 F.2d 113, 118 (5th

23   Cir. 1972) (*Younger* did not apply when it was "obvious" state court prosecution was designed to

24   "promote[]" "the sale of [the prosecutor's] book").

25       Yelp is not the first publisher whose editorial choices the Attorney General has targeted—

26   it is just the first to fight back.   The Attorney General previously demanded Google not downrank

27   search results for CPCs, warning in a publicized letter that if Google "fail[ed] to resist th[e]

28   political pressure" from pro-choice leaders to ensure accurate search results, the Attorney General

1   and his co-signing state attorneys general "will act swiftly" in retaliation.  Daire Decl. Exs. 2-3.

2   Yelp stood on its rights, and the Attorney General followed through on his promise.[2]

3                         **c.       Abstention would threaten Section 1983's protections.**

4           The statute upon which the First Amendment claims in this case are premised—42 U.S.C.

5   § 1983—was enacted as part of the Civil Rights Act of 1871 to provide an affirmative remedy

6   for federal constitutional rights denied in former Confederate states that "could not, or would not,

7   fully protect" them in their own judicial systems.  *Health & Hosp. Corp. of Marion Cnty. v.*

8   *Talevski*, 599 U.S. 166, 176-77 (2023).  The remedy recognizes "the paramount role Congress

9   has assigned to the federal courts to protect constitutional rights," *Steffel v. Thompson*, 415 U.S.

10  452, 472-73 (1974), and demands skepticism whenever a state actor colorably accused of

11  violating federal rights seeks to evade federal judicial review of his conduct.  The Fifth Circuit

12  explained the danger of letting state officials hide behind abstention in cases like this one:

13          > State officials disposed to suppress speech could easily do so by bringing
            > oppressive criminal actions pursuant to valid statutes rather than by enacting invalid
14          > statutes or using other parts of the state legal machinery, and § 1983 would give no
            > effective relief unless they happen to warn their victims in advance…. When a
15          > significant chilling effect on free speech is created by a bad faith prosecution, the
            > prosecution will thus as a matter of law cause irreparable injury regardless of its
16          > outcome, and the federal courts cannot abstain from issuing an injunction.

17  *Wilson v. Thompson*, 593 F.2d 1375, 1383 (5th Cir. 1979) (citation omitted).

18          Uncodified principles of "comity" do not overcome this foundational commitment to equal

19  justice under law.  Abstention, which appears nowhere in the Constitution, is in direct "tension

20  with" the Supreme Court's repeated "reaffirmation of the principle that a 'federal court's

21  obligation to hear and decide' cases within its jurisdiction is 'virtually unflagging.'"  *Susan B.*

22  *Anthony List v. Driehaus*, 573 U.S 149, 167 (2014) (quoting *Sprint Commc'ns, Inc. v. Jacobs*, 571

23  U.S. 69, 77 (2013)); *see also Cohens v. Virginia*, 19 U.S. 264, 404 (1821) (federal court has "no

24  more right to decline the exercise of jurisdiction which is given, than to usurp that which is not

25

26  [2] The Attorney General's bad faith and misuse of a consumer protection statute to retaliate against
    speech that he dislikes is particularly outrageous given his view elsewhere that "[a] concerted
27  effort by government and industry to suppress speech violates America's most fundamental
    principles."  Daire Decl. Ex. 9; *see also* Br. of Texas et al. as Amici in Supp. of Pet., *303 Creative*
28  *LLC v. Elenis*, 2021 WL 5053177, at *6.

                                                        14

DAVIS WRIGHT TREMAINE LLP
50 CALIFORNIA STREET, 23RD FLOOR
SAN FRANCISCO, CALIFORNIA 94111
Tel: (415) 276-6500

given").  Yelp joins a unanimous Supreme Court in questioning the "continuing vitality" of such "prudential" justiciability doctrines, especially in cases that implicate constitutional rights. *Driehaus*, 573 U.S at 167 (declining, for now, to "resolve the continuing vitality" of one such doctrine).  The Court should exercise jurisdiction and enjoin the Attorney General from engaging in further conduct that violates those rights.

If nothing else, the Court should allow discovery to further develop the factual record of the Attorney General's bad faith and retaliatory motivations, and then hold an evidentiary hearing before deciding the issue.  *See Kern v. Clark*, 331 F.3d 9, 12 (2d Cir. 2003) (error to deny preliminary injunction on *Younger* grounds without evidentiary hearing regarding bad faith).

## III.    OTHER REQUIREMENTS FOR A PRELIMINARY INJUNCTION ARE MET

The Attorney General claims Yelp has failed to show irreparable harm.  But this case is not confined to Yelp's "past speech," Opp. 18, as the allegedly misleading language still appears on its website, Malik Reply Decl. ¶¶ 2-6; *see also id.* ¶ 7 (Yelp continues to self-censor), and the Attorney General has refused to agree to stay enforcement beyond December 15, Dkt. 17.  Nor is the effect of the Attorney General's conduct confined to CPCs or Yelp.  If a state could enjoin truthful speech about CPCs nationwide, no speech describing what is generally true would be safe.  The public interest and balance of harms overwhelmingly favor a preliminary injunction.  *See* Daire Decl. Ex. 4 (statement of state attorneys general contending that Yelp's consumer notice is in the public interest and truthful); *id.* Ex. 8 (statement from Reporters' Committee for Freedom of the Press warning that retaliatory actions like the Attorney General's risk journalistic freedoms).

## IV.    CONCLUSION

Yelp respectfully asks that the Court enter its proposed preliminary injunction.

DATED:  October 23, 2023                     DAVIS WRIGHT TREMAINE LLP

By: */s/  Ambika Kumar*
       Ambika Kumar

Attorneys for Plaintiff
YELP INC.

YELP'S REPLY ISO MOT. FOR PRELIM. INJ.
Case No. 3:23-cv-04977-TLT

DAVIS WRIGHT TREMAINE LLP
50 CALIFORNIA STREET, 23RD FLOOR
SAN FRANCISCO, CALIFORNIA 94111
Tel: (415) 276-6500