THOMAS R. BURKE (CA Bar No. 141930)
thomasburke@dwt.com
DAVIS WRIGHT TREMAINE LLP
50 California Street, 23rd Floor
San Francisco, California 94111
Telephone: (415) 276-6500

AMBIKA KUMAR (*pro hac vice*)
ambikakumar@dwt.com
SARA A. FAIRCHILD (*pro hac vice*)
sarafairchild@dwt.com
DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, Washington 98104
Telephone: (206) 757-8030

ADAM S. SIEFF (CA Bar No. 302030)
adamsieff@dwt.com
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, 24th Floor
Los Angeles, California 90017
Telephone: (213) 633-6800

Attorneys for Plaintiff
YELP INC.

IN THE UNITED STATES DISTRICT COURT

THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

YELP INC.,

Plaintiff,

v.

KEN PAXTON, ATTORNEY GENERAL OF THE STATE OF TEXAS, in his official capacity,

Defendant.

Case No. 3:23-cv-04977-TLT

**YELP INC.'S OPPOSITION TO MOTION TO DISMISS**

Date: February 20, 2024
Time: 2:00 PM
Dept.: Courtroom 9

Action Filed: September 27, 2023

# TABLE OF CONTENTS

Page

I. INTRODUCTION .......... 1

II. BACKGROUND .......... 2

A. Yelp's Efforts to Deter Misleading Information about Entities Offering Pregnancy-Related Services. .......... 2

B. Attorney General Paxton's Efforts to Silence Yelp. .......... 5

C. Procedural History .......... 6

III. LEGAL STANDARDS .......... 7

IV. THIS COURT HAS JURISDICTION TO DECIDE THIS DISPUTE. .......... 7

A. The Court Has Personal Jurisdiction Over the Attorney General. .......... 7

1. The Attorney General directed his actions toward California. .......... 8

2. Yelp's claims arise from this California-directed conduct. .......... 9

3. No "compelling case" makes jurisdiction unreasonable. .......... 10

B. Venue is Proper in this District. .......... 12

C. The *Younger* Abstention Defense Fails. .......... 13

1. Younger does not insulate bad faith from federal review. .......... 13

2. The Attorney General's action is in bad faith. .......... 14

3. Abstention would threaten Section 1983's protections. .......... 17

D. Any Doubts About Jurisdiction Should Be Resolved Through Discovery. .......... 18

V. CONCLUSION .......... 18



DAVIS WRIGHT TREMAINE LLP
50 CALIFORNIA STREET, 23RD FLOOR
SAN FRANCISCO, CALIFORNIA 94111
Tel: (415) 276-6500

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Arbaugh v. Y&H Corp.*,
546 U.S. 500 (2006) .......... 7

*Argueta v. Banco Mexicano, S.A.*,
87 F.3d 320 (9th Cir. 1996) .......... 7

*Baffert v. Cal. Horse Racing Bd.*,
332 F.3d 613 (9th Cir. 2003) .......... 13, 14

*Ballard v. Savage*,
65 F.3d 1495 (9th Cir. 1995) .......... 10, 11

*Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*,
223 F.3d 1082 (9th Cir. 2000) .......... 8

*Banh v. Am. Honda Motor Co.*,
2020 WL 4390371 (C.D. Cal. 2020) .......... 11

*Boschetto v. Hansing*,
539 F.3d 1011 (9th Cir. 2008) .......... 9

*Bristol-Myers Squibb Co. v. Connors*,
979 F.3d 732 (9th Cir. 2020) .......... 14

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985) .......... 10

*Calder v. Jones*,
465 U.S. 783 (1984) .......... 8, 9

*Cohens v. Virginia*,
19 U.S. 264 (1821) .......... 18

*Cook v. Harding*,
879 F.3d 1035 (9th Cir. 2018) .......... 13

*Council for Periodical Distribs. Ass'n v. Evans*,
642 F. Supp. 552 (M.D. Ala. 1986), *aff'd*, 827 F.2d 1483 (11th Cir. 1987) .......... 15

*Cullen v. Fliegner*,
18 F.3d 96 (2d Cir. 1994) .......... 14, 15

*Dajani v. Dell Inc.*,
2009 WL 815352 (N.D. Cal. 2009) .......... 11



DAVIS WRIGHT TREMAINE LLP
50 CALIFORNIA STREET, 23RD FLOOR
SAN FRANCISCO, CALIFORNIA 94111
Tel: (415) 276-6500

*Def. Distributed v. Grewal*,
971 F.3d 485 (5th Cir. 2020) ........ 8, 9, 10

*DIRECTV v. EQ Stuff, Inc.*,
207 F. Supp. 2d 1077 (C.D. Cal. 2002) ........ 11

*Dobbs v. Jackson Women's Health Org.*,
142 S. Ct. 2228 (2022) ........ 4, 16

*Dreier v. United States*,
106 F.3d 844 (9th Cir. 1996) ........ 7

*Fitzgerald v. Peek*,
636 F.2d 943 (5th Cir. 1981) ........ 14

*Flowers v. Seki*,
87 F.3d 1318, 1996 WL 311473 (9th Cir. 1996) ........ 14

*Frampton v. City of Baton Rouge*,
2022 WL 90238 (M.D. La. 2022) ........ 15

*Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*,
905 F.3d 597 (9th Cir. 2018) ........ 9, 10

*Fund Tex. Choice v. Paxton*,
2023 WL 2558143 (W.D. Tex. 2023) ........ 5, 16

*Grand River Enters. Six Nations, Ltd. v. Pryor*,
425 F.3d 158 (2d Cir. 2005) ........ 9

*Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*,
328 F.3d 1122 (9th Cir. 2003) ........ 18

*Health & Hosp. Corp. of Marion Cnty. v. Talevski*,
599 U.S. 166 (2023) ........ 17

*Herbal Brands, Inc. v. Photoplaza, Inc.*,
72 F.4th 1085 (9th Cir. 2023) ........ 8

*Hunt v. Erie Ins. Grp.*,
728 F.2d 1244 (9th Cir. 1984) ........ 8

*Ins. Co. of North Am. v. Marina Salina Cruz*,
649 F.2d 1266 (9th Cir. 1981) ........ 11

*Kalman v. Cortes*,
646 F. Supp. 2d 738 (E.D. Pa. 2009) ........ 12

*Kenneally v. Lungren*,
1992 WL 163605 (C.D. Cal. 1992) ........ 18

*Kentucky v. Graham*,
473 U.S. 159 (1985) .......... 10

*Kern v. Clark*,
331 F.3d 9 (2d Cir. 2003) .......... 18

*Laub v. U.S. Dep't of Interior*,
342 F.3d 1080 (9th Cir. 2003) .......... 18

*Leroy v. Great Western United Corp.*,
443 U.S. 173 (1979) .......... 12

*Lewellen v. Raff*,
843 F.2d 1103 (8th Cir. 1988) .......... 14, 17

*Mir v. Kirchmeyer*,
2014 WL 2436285 (S.D. Cal. 2014) .......... 15

*Mother & Unborn Baby Care of N. Tex., Inc. v. State*,
749 S.W.2d 533 (Tex. App. 1988) .......... 15

*Myers v. Bennett L. Offs.*,
238 F.3d 1068 (9th Cir. 2001) .......... 12

*Netflix, Inc. v. Babin*,
641 F. Supp. 3d 319 (E.D. Tex. 2022) .......... 15

*New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*,
491 U.S. 350 (1989) .......... 13

*Newton v. Thomason*,
22 F.3d 1455 (9th Cir. 1994) .......... 12

*Panavision Int'l, L.P. v. Toeppen*,
141 F.3d 1316 (9th Cir. 1998) .......... 8, 9, 10

*Partington v. Gedan*,
961 F.2d 852 (9th Cir. 1992) .......... 15

*Peterson v. Kennedy*,
771 F.2d 1244 (9th Cir. 1985) .......... 8

*ReadyLink Healthcare, Inc. v. State Compensation Ins. Fund*,
754 F.3d 754 (9th Cir. 2014) .......... 13

*Robertson v. Wegmann*,
436 U.S. 584 (1978) .......... 13

*Schwarzenegger v. Fred Martin Motor Co.*,
374 F.3d 797 (9th Cir. 2004) .......... 7



DAVIS WRIGHT TREMAINE LLP
50 CALIFORNIA STREET, 23RD FLOOR
SAN FRANCISCO, CALIFORNIA 94111
Tel: (415) 276-6500

*Serv. Women's Action Network v. Mattis*,
320 F. Supp. 3d 1082 (N.D. Cal. 2018) .......... 12

*Shaw v. Delta Airlines, Inc.*,
463 U.S. 85 (1983) .......... 13

*Shaw v. Garrison*,
467 F.2d 113 (5th Cir. 1972) .......... 17

*Sierra Pac. Airlines v. Dallas Aerospace*,
6 F. App'x 606 (9th Cir. 2001) .......... 11

*Sprint Commc'ns, Inc. v. Jacobs*,
571 U.S. 69 (2013) .......... 18

*Steffel v. Thompson*,
415 U.S. 452 (1974) .......... 17

*Susan B. Anthony List v. Driehaus*,
573 U.S 149 (2014) .......... 17, 18

*Thomas P. Gonzalez Corp. v. Consejo Nacional De Produccion De Costa Rica*,
614 F.2d 1247 (9th Cir. 1980) .......... 9

*Torries v. Hebert*,
111 F. Supp. 2d 806 (W.D. La. 2000) .......... 14

*Twitter, Inc. v. Paxton*,
2021 WL 1893140 (N.D. Cal. 2021),
*aff'd on other grounds*, 56 F.4th 1170 (9th Cir. 2022) .......... 1, 7, 12

*Walden v. Fiore*,
571 U.S. 277 (2014) .......... 9

*Wilson v. Thompson*,
593 F.2d 1375 (5th Cir. 1979) .......... 17

*Wolfe v. Strankman*,
392 F.3d 358 (9th Cir. 2004) .......... 7

*World Famous Drinking Emporium, Inc. v. City of Tempe*,
820 F.2d 1079 (9th Cir. 1987) .......... 13

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*,
433 F.3d 1199 (9th Cir. 2006) .......... 8

*Ex parte Young*,
209 U.S. 123 (1908) .......... 10

*Younger v. Harris*,
401 U.S. 37 (1971) .......... *passim*



DAVIS WRIGHT TREMAINE LLP
50 CALIFORNIA STREET, 23RD FLOOR
SAN FRANCISCO, CALIFORNIA 94111
Tel: (415) 276-6500

*Zwickler v. Koota*,
389 U.S. 241 (1967) ........................................ 13

**Statutes**

28 U.S.C. § 1391(b) ........................................ 1, 12

42 U.S.C. § 1983 ........................................ 2, 17

California Code of Civil Procedure § 425.16 ........................................ 11

Texas Business & Commerce Code
§ 17.41 ........................................ 6, 11, 12, 15
§ 17.47(a) ........................................ 6

**Rules**

Federal Rule of Civil Procedure
12(b)(1) ........................................ 7
12(b)(2) ........................................ 7
12(b)(3) ........................................ 7

**Constitutional Provisions**

U.S. Const., amend. I ........................................ *passim*

**Other Authorities**

Abigail English et al., *Crisis Pregnancy Centers in the U.S.: Lack of Adherence to Medical and Ethical Practice Standards*, 65 J. OF ADOLESCENT HEALTH 821 (2019) ........................................ 3

Amy G. Bryant et al., *Crisis pregnancy center websites: Information, misinformation, and disinformation*, CONTRACEPTION (Dec. 2014) ........................................ 3

Amy G. Bryant et al., *Why Crisis Pregnancy Centers Are Legal but Unethical*, 20 AMA J. ETHICS 269 (Mar. 2018) ........................................ 3

Andrea Swartzendruber et al., *A Web-Based Geolocated Directory of Crisis Pregnancy Centers (CPCs) in the United States: Description of CPC Map Methods and Design Features and Analysis of Baseline Data*, 6 JMIR PUB. HEALTH & SURVEILLANCE 1 (2020) ........................................ 3

Andrea Swartzendruber et al., *Sexual and Reproductive Health Services and Related Health Information on Pregnancy Resource Center Websites: A Statewide Content Analysis*, WOMEN'S HEALTH ISSUES (Jan-Feb 2018) ........................................ 3

5B C. Wright & A. Miller, Fed. Prac. & Proc. Juris. § 1350 (3d ed.) ........................................ 7

14D C. Wright & A. Miller, Fed. Prac. & Proc. Juris. § 3802 (4th ed.) ........................................ 12



DAVIS WRIGHT TREMAINE LLP
50 CALIFORNIA STREET, 23RD FLOOR
SAN FRANCISCO, CALIFORNIA 94111
Tel: (415) 276-6500

Carly Polcyn et al., *Truth and Transparency in Crisis Pregnancy Centers*, 1 WOMEN'S HEALTH REPS. 224 (2020) ........ 3

David E. Pozen, *Constitutional Bad Faith*, 129 HARV. L. REV. 885 (2016) ........ 15

Jennifer McKenna et al., *Designed to Deceive: A Study of the Crisis Pregnancy Center Industry in Nine States*, State Advocs. for Women's Rts. & Gender Equal. 5 (2021) ........ 3

Melissa N. Montoya et al., *The Problems with Crisis Pregnancy Centers: Reviewing the Literature and Identifying New Directions for Future Research*, 14 INT'L J. WOMEN'S HEALTH 757 (2022) ........ 3

Robin Marty, *How Google Maps Leads Women Seeking Abortions Astray*, Gizmodo (Feb. 12, 2018) ........ 2

Sonya Borrero et al., *Crisis Pregnancy Centers: Faith Centers Operating in Bad Faith*, 34 J. GEN. INTERN. MED. 144 (2019) ........ 3



DAVIS WRIGHT TREMAINE LLP
50 CALIFORNIA STREET, 23RD FLOOR
SAN FRANCISCO, CALIFORNIA 94111
Tel: (415) 276-6500

## I. INTRODUCTION

The Texas Attorney General has embarked on a campaign to punish Plaintiff Yelp Inc. ("Yelp") for publishing truthful information about "crisis pregnancy centers" ("CPCs") that undermines his position on abortion. CPCs offer some pregnancy-related services, but not abortion care or referrals, and many have reportedly misled consumers. This led Yelp to publish a notice that CPCs "typically provide limited medical services and may not have licensed medical professionals onsite." Yelp reluctantly revised the notice on individual Yelp pages after 24 state attorneys general (including Attorney General Paxton) claimed the statement is "misleading," but continues to publish the original statement elsewhere. Months later, Attorney General Paxton—fresh from his impeachment and acting alone—threatened to sue Yelp over the original statement, prompting this lawsuit to enjoin his unconstitutional misconduct. He now moves to dismiss this case on jurisdictional grounds, denying Yelp the chance to vindicate its federal constitutional rights in a federal forum and subjecting it to the very bad faith judicial process it seeks to avert. His motion—which does not seriously defend his conduct—must be denied.

***First***, this Court has personal jurisdiction over the Attorney General because he has "engaged in retaliatory conduct expressly aimed at chilling the speech of a California resident" to a California audience. *Twitter, Inc. v. Paxton*, 2021 WL 1893140, at *2 (N.D. Cal. 2021), *aff'd on other grounds*, 56 F.4th 1170 (9th Cir. 2022) (en banc). The Attorney General sent a letter threatening to sue Yelp, knowing Yelp is a California resident, and demanding that Yelp withhold or alter its speech nationwide, including in California where the speech was made. Specific jurisdiction is proper.

***Second***, venue is proper under 28 U.S.C. § 1391(b). Courts have held that "a substantial part of the events or omissions giving rise to the claim" occur where injury is felt. Yelp is suffering harm in this District, where it is headquartered.

***Third***, there is no basis for prudential abstention under *Younger v. Harris*, 401 U.S. 37, 53-54 (1971). Where, as here, a state official acts in bad faith to suppress speech, a federal court retains its obligation to decide actionable controversies. Seven months after bullying Yelp into self-censorship and publicly crediting it for revising the notice, the beleaguered Attorney General



DAVIS WRIGHT TREMAINE LLP
50 CALIFORNIA STREET, 23RD FLOOR
SAN FRANCISCO, CALIFORNIA 94111
Tel: (415) 276-6500

abruptly announced his intent to punish Yelp for publishing the "misleading" language and prevent Yelp from disseminating it or any other "misleading" speech about CPCs, purportedly based on his "investigation." The Attorney General—whose political platform centers on anti-abortion causes—offers no evidence of an investigation. Nor was there a basis for one, as Yelp's statement is clear and concededly "literally true." Abstention would exceed *Younger*'s limited comity-based exception to the Court's obligation to exercise jurisdiction, destroy Section 1983's constitutional shield against hostile state actors, and invite more bad faith prosecutions to suppress speech.

Yelp respectfully asks the Court to deny the motion to dismiss.

## II. BACKGROUND

### A. Yelp's Efforts to Deter Misleading Information about Entities Offering Pregnancy-Related Services.

Yelp owns and operates Yelp.com, a popular local search website, mobile website, and related mobile applications that allow users to share information about their communities and make informed decisions about local businesses and other local entities. Dkt. 1 ¶¶ 2, 15 ; Dkt. 16-1 ¶ 2. Members of the public may read and write reviews on Yelp, as well as access other forms of information about local businesses, services, and other entities. Dkt. 1 ¶¶ 2, 15; Dkt. 16-1 ¶ 2. Yelp users have contributed about 265 million cumulative reviews of local businesses and other entities. Dkt. 1 ¶ 2; Dkt. 16-1 ¶ 3.

Yelp devotes significant resources to deter and eliminate false, fraudulent, immaterial, and misleading reviews. Dkt. 1 ¶¶ 16-19; Dkt. 16-1 ¶ 4. It uses sophisticated software to weed out suspicious reviews, such as those that might result from a conflict of interest, improper solicitation, or that may be unreliable or irrelevant. Dkt. 16-1 ¶ 4. It also provides more information where helpful to dispel consumer deception or confusion. *Id.* ¶ 6 (describing Consumer Alert program).

That was the impetus for the events giving rise to this lawsuit. Reports from 2018 alerted Yelp to efforts by some entities offering pregnancy-related services to divert consumers seeking abortions away from abortion-care providers. Dkt. 16-1 ¶ 9; *see also* Dkt. 16-2 Ex. 1 (Robin Marty, *How Google Maps Leads Women Seeking Abortions Astray*, Gizmodo (Feb. 12, 2018)). Studies from top medical schools found that these entities, sometimes called crisis pregnancy



DAVIS WRIGHT TREMAINE LLP
50 CALIFORNIA STREET, 23RD FLOOR
SAN FRANCISCO, CALIFORNIA 94111
Tel: (415) 276-6500

centers ("CPCs"), achieve this diversion by providing misleading information. *See* Dkt. 16-2 Ex. 2 at 602-03 (Amy G. Bryant et al., *Crisis pregnancy center websites: Information, misinformation, and disinformation*, CONTRACEPTION (Dec. 2014)); *id.* Ex. 3 at 15-18 (Andrea Swartzendruber et al., *Sexual and Reproductive Health Services and Related Health Information on Pregnancy Resource Center Websites: A Statewide Content Analysis*, WOMEN'S HEALTH ISSUES (Jan-Feb 2018)). According to one study, CPCs "employ sophisticated strategies to draw in women who are seeking abortion services," who "find that they neither provide abortion nor refer to abortion providers." *Id.* Ex. 4 at 144-45 (Sonya Borrero et al., *Crisis Pregnancy Centers: Faith Centers Operating in Bad Faith*, 34 J. GEN. INTERN. MED. 144, 144-45 (2019)).

Consistent with these conclusions, studies show CPCs generally do not provide unlimited women's reproductive healthcare, are not licensed medical clinics, and have staff who are laypeople, not licensed professionals. *See id.* Ex. 5 at 271 (Amy G. Bryant et al., *Why Crisis Pregnancy Centers Are Legal but Unethical*, 20 AMA J. ETHICS 269, 271 (Mar. 2018)); *id.* Ex. 6 at 823 (Abigail English et al., *Crisis Pregnancy Centers in the U.S.: Lack of Adherence to Medical and Ethical Practice Standards*, 65 J. OF ADOLESCENT HEALTH 821, 823 (2019)) ("CPCs are typically staffed by volunteers without clinical training or licensure"); *id.* Ex. 7 at 760 (Melissa N. Montoya et al., *The Problems with Crisis Pregnancy Centers: Reviewing the Literature and Identifying New Directions for Future Research*, 14 INT'L J. WOMEN'S HEALTH 757, 760 (2022)) (citing study showing "only 26% and 16% of CPCs have a registered nurse or physician on staff, respectively"); *id.* Ex. 8 at 5, 7 (Jennifer McKenna et al., *Designed to Deceive: A Study of the Crisis Pregnancy Center Industry in Nine States*, State Advocs. for Women's Rts. & Gender Equal. 5, 7 (2021)) (same study showed CPCs "provided virtually no medical care" despite "misleadingly present[ing] themselves as medical facilities"); *id.* Ex. 9 at 225 (Carly Polcyn et al., *Truth and Transparency in Crisis Pregnancy Centers*, 1 WOMEN'S HEALTH REPS. 224, 225 (2020)) (CPCs "offer[] only select services" and are "largely staffed by volunteers" who "may not be licensed" to offer them); *id.* Ex. 19 at 2, 5 (Andrea Swartzendruber et al., *A Web-Based Geolocated Directory of Crisis Pregnancy Centers (CPCs) in the United States: Description of CPC Map Methods and Design Features and Analysis of Baseline Data*, 6 JMIR PUB. HEALTH & SURVEILLANCE 1, 2, 5

(2020)) (only 66.17% of CPCs offer any medical services, and even those offer only "limited medical services, such as limited obstetric ultrasounds to confirm pregnancy and testing for some sexually transmitted infections").

Pro-life medical organizations have themselves told the United States Supreme Court that CPCs "offer limited medical services." Br. of Am. Assoc. of Pro Life Obstetricians and Gynecologists, Am. Coll. of Pediatrics, & Christian Med. Assoc. as Amici Curiae in Supp. of Pet., *NIFLA v. Becerra*, 2018 WL 447347, at *5-6, 10, 14, 20 (U.S. filed Jan. 16, 2018) ("Pregnancy centers offer limited medical services"); *see also* Dkt. 16-2 Ex. 14 (*What is a Pregnancy Center?*, Heartbeat Int'l) (pro-life organization describing CPCs as providing information, material support, and in some cases, "limited medical care"). CPC websites often post disclaimers stating their service is a "limited medical clinic" or "limited medical facility." *See, e.g.*, Dkt. 16-2 Ex. 15 at 9; *id.* Ex. 16 at 2; *id.* Ex. 17 at 3. And the Attorney General has himself admitted that CPCs "differ markedly" from full-service reproductive healthcare clinics because of their more limited "services offered." Br. of Tex. et al. as Amici in Supp. of Pet., *NIFLA v. Becerra*, 2018 WL 461049, at *14 (U.S. filed Jan. 16, 2018).

Once alerted to this issue, Yelp manually evaluated pages providing pregnancy-related services and, where appropriate, categorized those that do not offer abortion services or referrals as "Crisis Pregnancy Centers." Dkt. 16-1 ¶ 10. Following the Supreme Court's decision in *Dobbs v. Jackson Women's Health Organization*, 142 S. Ct. 2228 (2022), Yelp added a "Consumer Notice" on CPC pages informing consumers that CPCs "typically provide limited medical services and may not have licensed medical professionals onsite." *Id.* ¶¶ 13-14. This was done to address the concerns, described in many reports and reviews on Yelp, that many consumers do not understand CPCs' role or the nature of their services. *Id.* ¶¶ 13-15. Yelp chose this language after considering several publicly available studies concluding the same thing. *Id.* ¶ 14 & Exs. C, D, E.

Then and now, users searching for pregnancy resources or services, including for CPCs, can access pages for CPCs, and can provide reviews, ratings, and other contributions to CPC pages, just as they can for other entities. *Id.* ¶ 11.



DAVIS WRIGHT TREMAINE LLP
50 CALIFORNIA STREET, 23RD FLOOR
SAN FRANCISCO, CALIFORNIA 94111
Tel: (415) 276-6500

### B. Attorney General Paxton's Efforts to Silence Yelp.

In response, a coalition of 24 state attorneys general, including Attorney General Paxton, wrote Yelp in California on February 7, 2023, claiming the Consumer Notice was "misleading" and designed "to discourage women and families from accessing [CPCs'] services." *See* Dkt. 1; Dkt. 16-1 Ex. F at 2. The Attorney General—who opposes abortions even where they are legal, and whose website lists dozens of actions to suppress information about and access to abortion, *see* Dkt. 16-2 Ex. 12—took issue with Yelp's purported attempt to "discredit" and "discriminate against" CPCs, characterizing its actions as part of a "dangerous axis of corporate and government power." Dkt. 16-1 Ex. F at 1-2. The letter criticized Yelp's decision not to affix any comparable notice to "abortion facilities operated by Planned Parenthood and related organizations," *id.* at 2, even though Yelp has seen no widespread academic studies, media reports, or other credible evidence indicating consumers are misled or confused about those facilities' services. *See* Dkt. 16-1 ¶ 15. The letter was part of the Attorney General's dedicated, ongoing, and successful effort to project his personal view on abortion into other states, with the intent to limit access to legal abortions and information about them. *See, e.g.*, *Fund Tex. Choice v. Paxton*, 2023 WL 2558143, at *5-7 (W.D. Tex. 2023) (reviewing evidence that the Attorney General's statements chilled protected speech related to obtaining abortions in states where procedures remained legal).

Yelp responded the following day, citing research demonstrating that the Notice "is accurate and not misleading." Dkt. 16-1 ¶ 16 & Ex. G at 2-3. Solely to address these unfounded concerns and avoid the possibility of unnecessary litigation, Yelp revised the already-truthful Consumer Notice to state that "Crisis Pregnancy Centers do not offer abortions or referrals to abortion providers." *Id.* Yelp continues to use the original statement on other parts of its platform. Dkt. 29-1 ¶¶ 2-6. On February 14, 2023, the Attorney General's office issued an updated press  release stating that the revised Notice provided "an accurate description"—even though the description implicitly acknowledges that CPCs offer only limited medical services, as Yelp originally stated. *Id.* (copy of revised Notice); Dkt. 16-2 Ex. 10 (Tex. Att'y Gen. Ken Paxton, Press Release, Paxton Condemns Yelp for Discriminating Against Crisis Pregnancy Centers (Feb. 14, 2023)). The other 23 state attorneys general who signed the February 7, 2023, letter took



DAVIS WRIGHT TREMAINE LLP
50 CALIFORNIA STREET, 23RD FLOOR
SAN FRANCISCO, CALIFORNIA 94111
Tel: (415) 276-6500

no action. In fact, the letter's lead author, the Kentucky Attorney General, publicly praised Yelp's response. *Id.* Ex. 18.

On May 27, 2023, the Attorney General was impeached and suspended from office by the Texas House of Representatives. *See* Dkt. 29-2 Exs. 5-6. He returned to office on September 18, 2023. Four days later, the Attorney General sent a letter to California-based Yelp with a "notice of intent to file suit" arising from Yelp publishing the original Consumer Notice in California, claiming Yelp violated the Texas Deceptive Trade Practices Act ("DTPA"). *See* Dkt. 16-1 Ex. H at 1 (cleaned up). Although the Attorney General claimed to have conducted an investigation, he has provided no evidence of this, nor did his office ever serve Yelp with a Civil Investigative Demand, ask it to cooperate, or even contact Yelp during the pendency of his supposed investigation. *See* Dkt. 29-2 ¶¶ 2-4.

**C. Procedural History**

On September 27, 2023, Yelp filed this action, seeking a declaration and injunction stopping the Attorney General from further penalizing Yelp for publishing truthful speech about CPCs. Dkt. 1. The next day, the Attorney General filed a petition against Yelp in Texas. Dkt. 16-2 Ex. 11 ("Petition"). The Petition asks the Texas court to enjoin Yelp from "[m]isrepresenting the status or amount of licensed medical professionals onsite in pregnancy resource centers" or "the services offered by pregnancy resource centers"; and from "[p]osting any further false and/or misleading disclaimers or representations regarding pregnancy resource centers," without any geographic limit. *Id.* ¶ 32. The Petition claims "Yelp has been given notice of the alleged unlawful conduct described below at least seven days before filing suit, as may be required by subsection 17.47(a) of the DTPA," *id.* ¶ 11, even though the letter is dated September 22, 2023, and did not arrive at Yelp's offices until September 26, 2023. Dkt. 16-1 ¶ 18 & Ex. H. The Petition seeks civil penalties of $10,000 per alleged violation, and $250,000 per alleged violation for consumers age 65 or older. Dkt. 16-2 Ex. 11 ¶ 33. The Attorney General states he expects to recover more than $1,000,000. *Id.* ¶ 3.

On October 2, 2023, Yelp filed a motion for preliminary injunction (Dkt. 16). On October 16, 2023, the Attorney General filed a response to the motion for preliminary injunction (Dkt. 24),

as well as a motion to dismiss (Dkt. 25) ("Mot."). A hearing on the motion for preliminary injunction is scheduled for November 7, 2023.

## III. LEGAL STANDARDS

In deciding motions to dismiss for lack of personal jurisdiction and improper venue under Rules 12(b)(2) and 12(b)(3), the Court may "consider facts outside of the pleadings" presented by a plaintiff in opposition. *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324 (9th Cir. 1996); *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). "[U]ncontroverted allegations in the complaint must be taken as true" and any "[c]onflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Schwarzenegger*, 374 F.3d at 800 (citations omitted).

In deciding a motion to dismiss under Rule 12(b)(1), the plaintiff is entitled to all reasonable inferences supported by its allegations. *See Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). The Court may consider extrinsic evidence introduced by a plaintiff to oppose such a motion. *See Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) (citing 5B C. Wright & A. Miller, Fed. Prac. & Proc. Juris. § 1350 (3d ed.) (stating that a "pleader may establish the actual existence of subject matter jurisdiction through extra-pleading material" and that "courts have broad discretion to consider" such "relevant and competent evidence")). Absent a full-fledged evidentiary hearing, facts pertinent to jurisdiction must be viewed in the light most favorable to the plaintiff. *Dreier v. United States*, 106 F.3d 844, 847 (9th Cir. 1996).

## IV. THIS COURT HAS JURISDICTION TO DECIDE THIS DISPUTE.

The Attorney General's Motion does not defend the merits of his deceptive trade practices claim. Instead, it focuses solely on asking this Court to dismiss on grounds of jurisdiction. But none of the jurisdictional arguments he makes should prevail.

### A. The Court Has Personal Jurisdiction Over the Attorney General.

The Attorney General claims personal jurisdiction is improper. Mot. 7. But another court in this District has already found that it has personal jurisdiction over the Attorney General in a lawsuit filed by California-based Twitter seeking to enjoin him from retaliating against it through proceedings in Texas. *See Paxton*, 2021 WL 1893140, at *2. So too here.



DAVIS WRIGHT TREMAINE LLP
50 CALIFORNIA STREET, 23RD FLOOR
SAN FRANCISCO, CALIFORNIA 94111
Tel: (415) 276-6500

Personal jurisdiction over the Attorney General is proper so long as the requirements of due process are satisfied. *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998) (explaining standard). In a statutory tort case, specific jurisdiction satisfies due process under *Calder v. Jones*, 465 U.S. 783 (1984) where (1) the defendant has "purposefully direct[ed] his activities [toward] the forum"; (2) the claim "arises out of or relates to the defendant's forum-related activities"; and (3) exercising jurisdiction is "reasonable." *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1090-91 (9th Cir. 2023). Here, this test is met.

**1. The Attorney General directed his actions toward California.**

Purposeful direction exists where the defendant allegedly "engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000). Unquestionably, the Attorney General targeted Yelp, knowing Yelp is a California resident and demanding that Yelp alter its speech, including *in California*. *See* Dkt. 16-1 Ex. F (letter to Yelp in California); Dkt. 16-1 Ex. H (notice of intent to sue, not limited to Texas CPCs); Dkt. 16-2 Ex. 11 ¶ 32 (seeking to enjoin Yelp from posting information on CPC listings generally). "California is the focal point both of the [Attorney General's conduct] and of the harm suffered." *Calder*, 465 U.S. at 789; *see also, e.g.*, *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1209 (9th Cir. 2006) (directing Yahoo! to make changes in California was "intentional act … expressly aimed at [California]"); *Bancroft*, 223 F.3d at 1087 (jurisdiction proper where defendant sent letter to domain name registrar seeking to interfere with California-based plaintiff's rights).

The Attorney General cites cases holding communication to a forum resident is insufficient to create jurisdiction. *See* Mot. 9-11. Many do not apply *Calder*, and all are irrelevant where, as here, "the actual *content* of communications with a forum gives rise" to an "intentional tort." *Def. Distributed v. Grewal*, 971 F.3d 485, 493-94 (5th Cir. 2020) (emphasis added); *accord Bancroft*, 223 F.3d at 1087; *e.g., Yahoo!*, 433 F.3d at 1209 (Mot. 9) (no jurisdiction based on letter that was not "tortious or otherwise wrongful"); *Hunt v. Erie Ins. Grp.*, 728 F.2d 1244, 1248 (9th Cir. 1984) (Mot. 9) (insurance dispute where insurer mailed payments and letter refusing coverage to insured who had moved to California); *Peterson v. Kennedy*, 771 F.2d 1244, 1261-62 (9th Cir. 1985) (Mot.





DAVIS WRIGHT TREMAINE LLP
50 CALIFORNIA STREET, 23RD FLOOR
SAN FRANCISCO, CALIFORNIA 94111
Tel: (415) 276-6500

9) (malpractice claim); *Thomas P. Gonzalez Corp. v. Consejo Nacional De Produccion De Costa Rica*, 614 F.2d 1247, 1254 (9th Cir. 1980) (Mot. 9) (contract claim). Nor is Yelp "the only link" between the Attorney General and California. Mot. 8 (quoting *Walden v. Fiore*, 571 U.S. 277, 285 (2014)). The conduct here "is damaging not just to [Yelp], but to surrounding audiences," as it requires censoring speech in California. *Grewal*, 971 F.3d at 495 & n.9; *see also Walden*, 571 U.S. at 287-88 ("crux of *Calder*" was that "effects" of libelous article "connected the defendants to California" because it was read by California residents); Dkt. 29-2 Ex. 4 (letter from attorneys general describing harm to national audiences from censoring Yelp).

None of the Attorney General's cases support his assertion that courts treat state officials differently, nor do they. *See* Mot. 9-10. For example, in *Grewal*, the Fifth Circuit held personal jurisdiction was proper over a New Jersey Attorney General who had sent cease-and-desist letters to a Texas company that distributes information about three-dimensional printing of firearms. 971 F.3d at 485. By demanding that the plaintiff "cease publication of their materials generally," rather than to New Jersey residents only, the Attorney General "projected himself across state lines and asserted a pseudo-national executive authority." *Id.* at 492-93; *see also, e.g., Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 167 (2d Cir. 2005) (New York court could exercise jurisdiction over out-of-state attorneys general because they negotiated agreement that formed the basis of plaintiff's claim there).

**2. Yelp's claims arise from this California-directed conduct.**

The second prong of the specific-jurisdiction test is met where, as here, the claim "arises out of or relates to the defendant's forum-related activities." *Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 603 (9th Cir. 2018). The basis of Yelp's claim is the Attorney General's retaliatory campaign to suppress its speech, including in California. Dkt. 1 ¶¶ 1-6, 33-37; *see Panavision*, 141 F.3d 1316 (nexus satisfied where but for defendant's conduct directed toward forum, injury would not have occurred). Without evidence, the Attorney General claims Yelp's speech is in Texas. Mot. 11. But that is false. Unrebutted evidence shows that Yelp's speech was made in California. Dkt. 16-1; *see Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008) (uncontroverted facts "must be taken as true").



DAVIS WRIGHT TREMAINE LLP
50 CALIFORNIA STREET, 23RD FLOOR
SAN FRANCISCO, CALIFORNIA 94111
Tel: (415) 276-6500

**3. No "compelling case" makes jurisdiction unreasonable.**

Because Yelp's claim satisfies the first two prongs of the specific-jurisdiction test, there is a "strong presumption in favor of jurisdiction." *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995). To rebut it, the Attorney General must "present a *compelling case*" that additional considerations make exercising jurisdiction here unreasonable. *Id.* In evaluating this prong, courts consider seven factors: "(1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum." *Freestream*, 905 F.3d at 607. The first, third, fourth, fifth, and sixth factors favor jurisdiction, and the remaining ones do not counsel a different result.

First, the Attorney General has purposefully interjected himself into California's affairs by seeking to prevent a California-based company from publishing truthful information about CPCs to California consumers. *See, e.g.*, *Panavision*, 141 F.3d at 1323 (first factor "strongly" favored jurisdiction where defendant registered plaintiff's trademarks as his domain names "knowing that this would likely injure [plaintiff] in California" and sent demand letter to plaintiff in California).

As to the third factor, exercising jurisdiction does not conflict with Texas's sovereignty. Yelp's First Amendment claim turns on federal law—not the "validity of [Texas] laws," Mot. 13—and it seeks to enjoin the Attorney General—not the state of Texas—from abusing his office to suppress speech. Such "official-capacity actions for prospective relief are not treated as actions against the State," *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985), and "do[] not affect[] the state in its sovereign or governmental capacity," *Ex parte Young*, 209 U.S. 123, 159 (1908).

As to the fourth and sixth factors, California has "a 'manifest interest' in providing its residents a convenient forum for redressing injuries inflicted by out-of-state actors." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473-74 (1985). The Attorney General's efforts to suppress Yelp's speech not only deprive Yelp of its rights in California, they impact Californians' receipt of accurate information. *See Grewal*, 971 F.3d at 495 & n.9 (censorship "damaging … to

surrounding audiences"); *see also* Cal. Code Civ. P. § 425.16 (California anti-SLAPP statute); Dkt. 29-2 Ex. 4 (discussing audiences' injuries). In fact, the California Attorney General has stated that "[a]ctions like Yelp's warnings to consumers help inform patients," "prevent" misinformation, and "protect[] the public health." *Id.* at 23. California thus has a demonstrated significant interest in the adjudication of this dispute, and Yelp has a strong interest in litigating here, where it can obtain convenient and effective relief.

The fifth factor, efficiency, favors jurisdiction because the relevant issues have been briefed in this Court. *See DIRECTV v. EQ Stuff, Inc.*, 207 F. Supp. 2d 1077, 1082 (C.D. Cal. 2002) (efficiency "achieved by a court that is already 'familiar with the facts and procedural history of the litigation'"). Relitigating these issues in Texas would waste resources. This Court is the better forum because the First Amendment bars the Attorney General's action against Yelp's speech, without consideration of the Texas DTPA. California federal courts can, and routinely do, interpret the DTPA, which is just one of many deceptive acts and practices statutes on the books in every state. *See, e.g., Dajani v. Dell Inc.*, 2009 WL 815352, at *3 (N.D. Cal. 2009) (applying Texas DTPA); *Banh v. Am. Honda Motor Co.*, 2020 WL 4390371, at *13-14 (C.D. Cal. 2020) (same).

The remaining factors, burden on the defendant and existence of an alternative forum, do not tip the scale. The "inconvenience" of defending in a foreign state does "not overcome clear justifications for the exercise of jurisdiction" unless the burden "is so great as to constitute a deprivation of due process." *Ballard*, 65 F.3d at 1501. The Attorney General makes no such showing here, instead conceding he can "minimize travel costs" by retaining local counsel. Mot. 12. The existence of an alternative forum "becomes an issue only when the forum state is shown to be unreasonable"—which the Attorney General has failed to show here. *Sierra Pac. Airlines v. Dallas Aerospace*, 6 F. App'x 606, 610 (9th Cir. 2001).

The Attorney General relies heavily on *Insurance Co. of North America v. Marina Salina Cruz*, 649 F.2d 1266 (9th Cir. 1981). But that case involved an attempt to sue the Mexican Navy in Alaska after a boat negligently repaired in Mexico later sank in Alaska—facts far different from the Attorney General's intentional punishment of speech spoken in California, by a California resident, and available to all Californians. *See id.* at 1272.



DAVIS WRIGHT TREMAINE LLP
50 CALIFORNIA STREET, 23RD FLOOR
SAN FRANCISCO, CALIFORNIA 94111
Tel: (415) 276-6500

The Attorney General's actions subject him to jurisdiction here.

**B. Venue is Proper in this District.**

The Attorney General claims, without any evidence, that venue is improper because the "events giving rise to this lawsuit …. occurred only in Texas." Mot. 16. That is wrong.

Under 28 U.S.C. § 1391(b), "venue is proper in a judicial district if 'a substantial part of the events or omissions giving rise to the claim occurred' in that district." *Myers v. Bennett L. Offs.*, 238 F.3d 1068, 1075 (9th Cir. 2001). A "substantial part of the events or omissions" in a tort case occur where the plaintiff's harms were "felt." *Id.* at 1075-76; *accord Twitter*, 2021 WL 1893140, at *2 (venue proper in this District over claims relating to issuance of civil investigative demand to Twitter). Indeed, in cases "brought on First Amendment grounds, impact becomes the *most important part* of the case," *Serv. Women's Action Network v. Mattis*, 320 F. Supp. 3d 1082, 1088 (N.D. Cal. 2018) (quoting *Kalman v. Cortes*, 646 F. Supp. 2d 738, 742 (E.D. Pa. 2009)) (emphasis added), because "[t]he suppression [of speech] is a more 'substantial' event than the decision to suppress," *Kalman*, 646 F. Supp. 2d at 742. Here, the most substantial events giving rise to Yelp's claim occurred in this District: Yelp engaged in speech and the Attorney General suppressed it in this District.

The Attorney General relies heavily on *Leroy v. Great Western United Corp.*, 443 U.S. 173 (1979). Mot. 14-16. In *Leroy*, a Texas plaintiff mounted a constitutional challenge to an Idaho statute. 443 U.S. at 175. Yelp does not claim the DTPA is invalid. Rather, Yelp bases its claim on the Attorney General's abuse of his office to punish First Amendment-protected speech made in California and to prevent residents in California (and elsewhere) from receiving that speech. Dkt. 1 ¶¶ 1-6, 33-37; *supra* § II.C.1.a. In any event, *Leroy* interprets a prior version of the venue statute, 443 U.S. at 178 n.8, 183-85, and the Attorney General's arguments that Texas is the "one obvious locus," Mot. 14, are no longer relevant. *See Newton v. Thomason*, 22 F.3d 1455, 1463-64 & n.8 (9th Cir. 1994) (venue no longer limited to "most convenient forum," so factors *Leroy* considered not controlling); 14D C. Wright & A. Miller, Fed. Prac. & Proc. Juris. § 3802 (4th ed.) ("*Leroy* is of limited, if any, significance now.").



DAVIS WRIGHT TREMAINE LLP
50 CALIFORNIA STREET, 23RD FLOOR
SAN FRANCISCO, CALIFORNIA 94111
Tel: (415) 276-6500

### C. The *Younger* Abstention Defense Fails.

Nor should this Court abstain from jurisdiction under *Younger.* "[O]nly exceptional circumstances" warrant *Younger* abstention. *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 368 (1989). There are none here.

#### 1. *Younger* does not insulate bad faith from federal review.

Federal courts "have jurisdiction over suits to enjoin state officials from interfering with federal rights." *Shaw v. Delta Airlines, Inc.*, 463 U.S. 85, 96 n.14 (1983). That a claim for violation of federal constitutional rights could also be litigated in a state forum is of no moment. "[W]herever the Federal courts sit, human rights under the Federal Constitution are always a proper subject for adjudication, and … we have not the right to decline the exercise of that jurisdiction simply because the rights asserted may be adjudicated in some other forum." *Cook v. Harding*, 879 F.3d 1035, 1040 (9th Cir. 2018) (quoting *Zwickler v. Koota*, 389 U.S. 241, 248 (1967)). Federal courts must therefore "enforce the mandated constraints on abstention so that such constitutional rights may be vindicated." *Id.* These constraints foreclose abstention where, as here, an indicted state official impeached and under federal investigation for abusing his office brings a meritless action in a stunt to punish core speech at odds with his politics.

The Attorney General addresses only the threshold requirements of abstention, i.e., related state proceedings "(1) are ongoing, (2) are quasi-criminal enforcement actions or involve a state's interest in enforcing the orders and judgments of its courts, (3) implicate an important state interest, and (4) allow litigants to raise federal challenges." *ReadyLink Healthcare, Inc. v. State Compensation Ins. Fund*, 754 F.3d 754, 759 (9th Cir. 2014). Mot. 4-6. But "[b]ad faith prosecution or harassment make abstention inappropriate even where these requirements are met." *World Famous Drinking Emporium, Inc. v. City of Tempe*, 820 F.2d 1079, 1082 (9th Cir. 1987); *see also see also Baffert v. Cal. Horse Racing Bd.*, 332 F.3d 613, 621 (9th Cir. 2003) (same). *Younger* itself held that a court should *not* abstain from enjoining a "bad faith" prosecution if "the danger of irreparable loss" "is both great and immediate." *Younger*, 401 U.S. at 45-46, 53-54; *accord Robertson v. Wegmann*, 436 U.S. 584, 586 n.2 (1978) ("bad faith prosecution establishes irreparable injury both great and immediate").

The Attorney General's reliance on *Bristol-Myers Squibb Co. v. Connors*, 979 F.3d 732, 738 (9th Cir. 2020), is misplaced. There, the court held that an enforcement action relating to drug labeling under a deceptive trade practices statute may qualify as a "civil enforcement proceeding[]" that triggers *Younger* and that First Amendment protections do not always preclude *Younger* abstention. *See* Mot. 4-6. But the plaintiffs in that case "expressly disclaimed" the bad-faith exception. 979 F.3d at 738. It thus has no application here.

**2. The Attorney General's action is in bad faith.**

A prosecution is in bad faith when it is brought (1) "without a reasonable expectation of obtaining a valid conviction," *Baffert*, 332 F.3d at 621 (citation omitted), or (2) "in retaliation for or to discourage the exercise of constitutional rights," *Lewellen v. Raff*, 843 F.2d 1103, 1109 (8th Cir. 1988) (quoting *Fitzgerald v. Peek*, 636 F.2d 943, 945 (5th Cir. 1981)); *see also Cullen v. Fliegner*, 18 F.3d 96, 104 (2d Cir. 1994) ("retaliatory or bad faith prosecution" independently "establishes irreparable injury for the purposes of the *Younger* doctrine"). Thus in *Lewellen*, the Eighth Circuit held that *Younger* did not prevent adjudication of an attorney's claims that prosecutors charged him with witness bribery because of his race, as retaliation for vigorously defending his client in a separate criminal case, and to thwart his campaign for state office. 843 F.2d at 1110; *see also*, *e.g.*, *Torries v. Hebert*, 111 F. Supp. 2d 806, 816 (W.D. La. 2000) (finding bad faith to reject abstention where challenged prosecution for "contributing to the delinquency of a juvenile" by playing "gangster rap" was "motivated at least in part" to deter playing of "constitutionally protected" music).

Although the Ninth Circuit has not, in a published decision, considered the second category of *Younger*-preclusive bad faith, courts across the country (including in the Ninth Circuit) recognize and apply this majority rule.[1] *See, e.g.*, *Cullen*, 18 F.3d at 104 (disciplinary charges against teacher in bad faith when brought to retaliate for exercise of "First Amendment right to

[1] The Ninth Circuit addressed this issue once, in an unpublished decision, where it reversed a ruling refusing to find bad faith even though the state action "was brought with rather weak evidence, and without a strong basis to expect to prevail," holding that the state's "substantial bias" against the plaintiff and "speculative claims" both established bad faith. *Flowers v. Seki*, 87 F.3d 1318, 1996 WL 311473, at *2 (9th Cir. 1996) (citing decisions in Second, Fifth and Tenth Circuits). There is *no* evidence supporting the Attorney General's claim here.



DAVIS WRIGHT TREMAINE LLP
50 CALIFORNIA STREET, 23RD FLOOR
SAN FRANCISCO, CALIFORNIA 94111
Tel: (415) 276-6500

protest the school board elections"); *Council for Periodical Distribs. Ass'n v. Evans*, 642 F. Supp. 552, 565-67 (M.D. Ala. 1986), *aff'd*, 827 F.2d 1483, 1485 (11th Cir. 1987) (obscenity charges against magazine publishers and distributors brought in retaliation for filing lawsuit challenging prior restraint); *Netflix, Inc. v. Babin*, 641 F. Supp. 3d 319, 335 (E.D. Tex. 2022) (enjoining obscenity and child pornography charges against streaming service where evidence showed prosecution retaliated for service's rights of expression and petition of the government to challenge earlier charges over same film); *Frampton v. City of Baton Rouge*, 2022 WL 90238, at *35 (M.D. La. 2022) (enjoining prosecution motivated by retaliation for press release critical of the police department and posting a video depicting arrest); *Mir v. Kirchmeyer*, 2014 WL 2436285, at *13 (S.D. Cal. 2014) (no abstention where federal plaintiff "alleged repeated harassment") (citing *Partington v. Gedan,* 961 F.2d 852, 861-62 (9th Cir. 1992)).

Under either formulation, the Attorney General's bad faith is plain. First, the Attorney General has not even tried to defend his putative DTPA claim, let alone shown a "reasonable expectation" that it *might* have merit. *Cullen*, 18 F.3d at 103. The Attorney General admits Yelp's statement to consumers is "literally true"; suggests without support, and in defiance of settled law, that it should still be classified as commercial speech subject to scrutiny for supposedly material omissions; and submits no evidence to show that the alleged omission actually or could have objectively misled anyone. *See* Dkt. 29 at § II.A-B. Although he claims this case "fits neatly" within *Younger* because of his "investigation," Mot. 5, there is no evidence of any investigation. *See* Dkt. 29-2 ¶¶ 2-4. Nor was there anything *to investigate*, as there was never any question what the Notice says or how Yelp uses it. This conduct is especially galling given the Texas Attorney General's office's *successful* prosecution of *a CPC* under the DTPA for advertising itself in the "Abortion Information & Services" and "Clinics – Medical" sections of the Yellow Pages. *See Mother & Unborn Baby Care of N. Tex., Inc. v. State*, 749 S.W.2d 533 (Tex. App. 1988). To now claim Yelp's accurate communications about CPCs *to the same effect* are somehow deceptive because they do not affirm the Attorney General's dogma is the archetype of bad faith. *See, e.g.*, David E. Pozen, *Constitutional Bad Faith*, 129 HARV. L. REV. 885, 925 (2016) ("inconsistency" is a "paradigmatic type of subjective bad faith"). As the Attorney General himself has stated,



DAVIS WRIGHT TREMAINE LLP
50 CALIFORNIA STREET, 23RD FLOOR
SAN FRANCISCO, CALIFORNIA 94111
Tel: (415) 276-6500

government pressure "to suppress speech violates America's most fundamental principles," Dkt. 29-2 Ex. 9, particularly where it seeks to "force individuals to be 'instruments for fostering public adherence to an ideological point of view they find unacceptable.'" Br. of Tex. et al. as Amici in Supp. of Pet., *303 Creative LLC v. Elenis*, 2021 WL 5053177, at *6 (U.S. filed Oct. 28, 2021).

Second, the Attorney General's conduct confirms his actions are retaliatory and designed to punish and prevent Yelp (and others) from speaking on a contested political issue. The Attorney General's opposition to abortion is a centerpiece of his political platform. *See* Dkt. 16-2 Ex. 12; Dkt. 29-2 Ex. 7. When the Supreme Court decided *Dobbs v. Jackson Women's Health Organization*, 142 S. Ct. 2228 (2022), he "celebrat[ed]" the result and created a holiday to commemorate the decision. Dkt. 16-2 Ex. 12 at 147. Another federal court found that the Attorney General used his powers to project his own view on abortion into other states, with the intent to limit access to legal abortions and information about them. *See Fund Tex. Choice*, 2023 WL 2558143 at *5-7. And here, in announcing his enforcement action, the Attorney General highlighted a "lengthy public statement" from Yelp's CEO vowing to "fight[] the legal battle against abortion bans," after *Dobbs.* Dkt. 29-2 Ex. 1; Dkt. 29-1 Ex. A. He repeated those justifications in his Petition, *see* Dkt. 16-2 Ex. 11 ¶¶ 17-19, and suggests *Yelp's* "politics" were "the primary motivation" for the CPC-related communications, Mot. 2.

The timing and circumstances of the Attorney General's actions underscore his retaliatory political motive. The Attorney General first signed a letter from a coalition of his peers asserting Yelp's CPC Notice was "misleading" and "misguided." Dkt. 16-1 Ex. F at 3-5. Under pressure, Yelp amended the (already truthful) Notice using new language that is concededly "accurate." Dkt. 16-2 Ex. 10. After the letter's primary author praised this as a "timely response" (*id.* Ex. 18), no other state acted against Yelp, nor suggested such action would be proper. But during this time, the Attorney General was impeached and suspended from office by the Texas House of Representatives. *See* Dkt. 29-2 Exs. 5-6. In his first announced action after he returned to office, he sued Yelp for the Notice it had already amended, apparently to score points with his base of voters. Courts routinely find bad faith precludes abstention in cases like this one "where a prosecutor has pursued highly questionable charges against the plaintiff apparently for the sole



DAVIS WRIGHT TREMAINE LLP
50 CALIFORNIA STREET, 23RD FLOOR
SAN FRANCISCO, CALIFORNIA 94111
Tel: (415) 276-6500

purpose of gaining publicity for himself." *Lewellen*, 843 F.2d at 1112 n.10; *see, e.g.*, *Shaw v. Garrison*, 467 F.2d 113, 118 (5th Cir. 1972) (*Younger* did not apply when it was "obvious" state court prosecution was designed to "promote[]" "the sale of [the prosecutor's] book").

Yelp is not the first publisher whose editorial choices the Attorney General has targeted—it is just the first to fight back. The Attorney General previously demanded Google not downrank search results for CPCs, warning in a publicized letter that if Google "fail[ed] to resist th[e] political pressure" from pro-choice leaders to ensure accurate search results, the Attorney General would "act swiftly" in retaliation. Dkt. 29-2 Exs. 2-3. Yelp stood on its rights, and the Attorney General followed through on his threat.

**3. Abstention would threaten Section 1983's protections.**

The statute upon which Yelp's First Amendment claims are premised—42 U.S.C. § 1983—was enacted as part of the Civil Rights Act of 1871 to provide an affirmative remedy for federal constitutional rights denied in former Confederate states that "could not, or would not, fully protect" them in their own judicial systems. *Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166, 176-77 (2023). The remedy recognizes "the paramount role Congress has assigned to the federal courts to protect constitutional rights," *Steffel v. Thompson*, 415 U.S. 452, 472-73 (1974), and demands skepticism whenever a state actor colorably accused of violating federal rights seeks to evade federal judicial review of his conduct. The Fifth Circuit explained the danger of letting state officials hide behind abstention in cases like this one:

> State officials disposed to suppress speech could easily do so by bringing oppressive criminal actions pursuant to valid statutes rather than by enacting invalid statutes or using other parts of the state legal machinery, and § 1983 would give no effective relief unless they happen to warn their victims in advance.… When a significant chilling effect on free speech is created by a bad faith prosecution, the prosecution will thus as a matter of law cause irreparable injury regardless of its outcome, and the federal courts cannot abstain from issuing an injunction.

*Wilson v. Thompson*, 593 F.2d 1375, 1383 (5th Cir. 1979) (citation omitted).

Uncodified principles of "comity" do not overcome this foundational commitment to equal justice under law. Abstention, which appears nowhere in the Constitution, is in direct "tension with" the Supreme Court's repeated "reaffirmation of the principle that a 'federal court's obligation to hear and decide' cases within its jurisdiction is 'virtually unflagging.'" *Susan B.*



DAVIS WRIGHT TREMAINE LLP
50 CALIFORNIA STREET, 23RD FLOOR
SAN FRANCISCO, CALIFORNIA 94111
Tel: (415) 276-6500

*Anthony List v. Driehaus*, 573 U.S 149, 167 (2014) (quoting *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013)); *see also Cohens v. Virginia*, 19 U.S. 264, 404 (1821) (federal court has "no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given"). Yelp joins a unanimous Supreme Court in questioning the "continuing vitality" of such "prudential" justiciability doctrines, especially in cases that implicate constitutional rights. *Driehaus*, 573 U.S at 167 (declining, for now, to "resolve the continuing vitality" of one such doctrine). The Court should exercise jurisdiction and enjoin the Attorney General from engaging in further conduct that violates those rights.

### D. Any Doubts About Jurisdiction Should Be Resolved Through Discovery.

If nothing else, the Court should allow discovery on jurisdictional issues and then hold an evidentiary hearing. "[D]iscovery should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003) (district court abused discretion by failing to allow discovery as to subject matter jurisdiction) (collecting cases); *see also Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1135 (9th Cir. 2003) (district court abused discretion in denying discovery on personal jurisdiction). Here, discovery will further develop the factual record of the Attorney General's bad faith and retaliatory motivations, as well as his intent to target Yelp in California. Thereafter, the Court may hold an evidentiary hearing. *See Kern v. Clark*, 331 F.3d 9, 12 (2d Cir. 2003) (error to deny preliminary injunction on *Younger* grounds without evidentiary hearing regarding bad faith); *see also, e.g., Kenneally v. Lungren*, 1992 WL 163605, at *1 (C.D. Cal. 1992) (not ruling on *Younger* until allowing plaintiff to "take the deposition of certain witnesses to determine whether the bad faith, harassment or discriminatory prosecution exception … applied").

## V. CONCLUSION

For these reasons, Yelp respectfully asks the Court to deny the motion to dismiss.

DATED: October 30, 2023

DAVIS WRIGHT TREMAINE LLP

By: /s/ *Ambika Kumar*
Ambika Kumar
Attorneys for Plaintiff YELP INC.



DAVIS WRIGHT TREMAINE LLP
50 CALIFORNIA STREET, 23RD FLOOR
SAN FRANCISCO, CALIFORNIA 94111
Tel: (415) 276-6500