Alyssa Bixby-Lawson
Assistant Attorney General
CA Bar No. 267107 / TX Bar No. 24122680
Tel.: (210) 270-1118 | Fax: (512) 302-0667
Alyssa.Bixby-Lawson@oag.texas.gov

Ryan S. Baasch
Division Chief, Consumer Protection Division
TX Bar No. 24129238 (*pro hac vice*)
Tel: (512) 463-9917
Ryan.Baasch@oag.texas.gov

Scott Froman
Assistant Attorney General
TX Bar No. 24122079 (*pro hac vice*)
Tel: (512) 463-1264
Scott.Froman@oag.texas.gov
Office of the Attorney General
P.O. Box 12548, Capital Station
Austin, Texas 78711-2548

Eric Grant
CA Bar No. 151064
Tel: (916) 241-8414
grant@hicks-thomas.com
Hicks Thomas LLP
701 University Avenue, Suite 106
Sacramento, California 95285

Attorneys for Defendant
KEN PAXTON, ATTORNEY GENERAL OF
THE STATE OF TEXAS

IN THE UNITED STATES DISTRICT COURT

THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| YELP INC.,<br><br>　　　Plaintiff,<br><br>v.<br><br>KEN PAXTON, ATTORNEY GENERAL OF THE STATE OF TEXAS, in his official capacity,<br><br>　　　Defendant. | Case No. 3:23-cv-04977-TLT<br><br>**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS**<br><br>Date:  February 20, 2024<br>Time: 2:00 p.m.<br>Place: Courtroom 9<br><br>Case Filed: September 27, 2023 |

**TABLE OF CONTENTS**

Page(s)

I.   INTRODUCTION ...............................................................................................................1

II.  *YOUNGER* ABSTENTION BARS THIS COURT FROM EXERCISING JURISDICTION AFFECTING THE STATE COURT PROCEEDING................. 3

III. YELP CANNOT ESTABLISH PERSONAL JURISDICTION .........................................6

IV.  VENUE IN CALIFORNIA IS IMPROPER ............................................................. 7

V.   YELP'S FIRST AMENDMENT ARGUMENT FAILS.......................................... 8

VI.  CONCLUSION ................................................................................................. 10

# TABLE OF AUTHORITIES
**Cases**                  **Page(s)**

*Am. Acad. of Pain Mgmt. v. Joseph*,
    353 F.3d 1099 (9th Cir. 2004) ............................................................................................ 9

*Anonymous v. Association of the Bar of City of N.Y.*,
    515 F.2d 427 (2d Cir. 1975) ............................................................................................... 6

*Applied Underwriters, Inc. v. Lara*,
    37 F.4th 579 (9th Cir. 2022) ............................................................................................... 3

*Bose Corp. v. Consumers Union of U.S.*,
    466 U.S. 485 (1984) ...................................................................................................... 9-10

*Bruton v. Gerber Products Co.*,
    703 F. App'x 468 (9th Cir. 2017) ....................................................................................... 5

*Carden v. State of Mont.*,
    626 F.2d 82 (9th Cir. 1980) ............................................................................................... 3

*Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*,
    447 U.S. 557 (1980) ........................................................................................................... 9

*Council for Periodical Distribs. Ass'n v. Evans*,
    642 F.Supp. 552 (M.D. Ala. 1986) ..................................................................................... 4

*CTS, Inc. v. CFTC*,
    149 F.3d 679 (7th Cir. 1998) ........................................................................................... 10

*Cullen v. Fliegner*,
    18 F.3d 96 (2d. Cir. 1994) .............................................................................................. 4-5

*Def. Distributed v. Grewal*,
    971 F.3d 485 (5th Cir. 2020) ............................................................................................. 7

*Diamond "D" Const. Corp. v. McGowan*,
    282 F.3d 191 (2d Cir. 2002) ............................................................................................. 3

*Flowers v. Seki*,
    1996 WL 311473 (9th Cir. 1996) ..................................................................................... 4

*Gibson v. Schmidt*,
    522 F. Supp. 3d 804 (D. Or. 2021) ................................................................................... 3

*Frampton v. City of Baton Rouge*,
    2022 WL 90238 (M.D. La. Jan. 7, 2022) .......................................................................... 4

*Lewellen v. Raff*,
    843 F.2d 1103 (8th Cir. 1988) ........................................................................................... 4

*Lowe v. SEC*,
    472 U.S. 181 (1985) ........................................................................................................ 10

*Miami Herald Publishing Co. v. Tornillo*,
    418 U.S. 241 (1974)..................................................................................................8-9

*Miller v. Thane Intern., Inc.*,
    519 F.3d 879 (9th Cir. 2008) .........................................................................................5

*Mir v. Kirchmeyer*,
    2014 WL 2436285 (S.D. Cal 2014) ..............................................................................4

*Netflix v. Babin*,
    641 F.Supp. 3d 319 (E.D. Tex. 2022) ...........................................................................4

*Postscript Enterprises v. Peach*,
    878 F.2d 1114 (8th Cir. 1989) .......................................................................................3

*Shaw v. Garrison*,
    467 F.2d 113 (5th Cir. 1972) .........................................................................................4

*Southland Sod Farms v. Stover Seed Co.*,
    108 F.3d 1134 (9th Cir. 1997) ...............................................................................3, 5, 8

*Stroman Realty, Inc. v. Wercinski*,
    513 F.3d 476 (5th Cir. 2008) .........................................................................................7

*Torries v. Hebert*,
    111 F. Supp. 2d 806 (W.D. La. 2000)...........................................................................4

*Twitter, Inc. v. Paxton*,
    2021 WL 1893140 (N.D. Cal. May 11, 2021)..............................................................7

*United States v. Philip Morris USA*,
    566 F.3d 1095 (D.C. Cir. 2009).....................................................................................9

*Yahoo! Inc. v. La Ligue Contre Le Racisme ET L'Antisemitisme*,
    433 F.3d 1199 (9th Cir. 2006) ....................................................................................6-7

**Statutes**

Tex. Bus. & Com. Code § 17.47..............................................................................................5

Tex. Bus. & Com. Code § 17.50..............................................................................................5

iv
Defendant's Reply in Support of Motion to Dismiss
Case No. 3:23-cv-04977-TLT

## I. INTRODUCTION

Yelp's complaint should be dismissed, and Yelp should be required to litigate its First Amendment arguments in *State* Court—just like all other litigants in State Attorney General enforcement actions. Yelp's federal suit is a classic illustration of how our federal system is not supposed to work, and precisely what the *Younger* abstention doctrine is intended to prevent. And Yelp's suit is fatally flawed for multiple other reasons.

Yelp's counterpoints all hinge on mischaracterizations about what the Attorney General's State Court suit is about. The State Court suit is an enforcement action against Yelp's use of misleading language—language that has *nothing to do with abortion*. Specifically, the offending language at issue there is Yelp's representation that: "Crisis Pregnancy Centers typically provide limited medical services and may not have licensed medical professionals onsite." Sieff Ex. 11 ¶ 19, ECF # 16-2. Among other things, the Attorney General's State Court suit seeks civil penalties for that misrepresentation. By contrast, once Yelp changed this language to reference *abortion*— specifically, that "Crisis Pregnancy Centers do not offer abortions or referrals to abortion providers," *id.* ¶ 25—the Attorney General recognized that Yelp's language was not misleading, and non-actionable.

Yelp's briefing obfuscates this straightforward backdrop to create a misimpression that this case is about something that it is not. The Attorney General is not seeking to "compel Yelp to publish advisories about abortion clinics." *Contra* ECF # 29[1] at 1. Indeed, the Attorney General is indifferent to whether Yelp publishes advisories, or anything else, about abortion clinics— instead, the Attorney General's State Court suit merely seeks to penalize Yelp for a specific misrepresentation *that does not reference abortion*. Similarly, the Attorney General has no "preferred message" for Yelp. *Contra* ECF # 29 at 2. The Attorney General is indifferent to Yelp's message on abortion or any other topic, so long as Yelp's message does not mislead consumers or violate any other Texas law. And it is silly for Yelp to say that the Attorney General, through

---

[1] ECF # 29 is Yelp's reply brief in support of its motion for preliminary injunction, and ECF # 36 is Yelp's opposition to the Attorney General's motion to dismiss. Because the substance of these two documents is materially similar, and because they both functionally respond to the points made in the Attorney General's motion to dismiss, the Attorney General cites to both throughout this reply brief.

1
Defendant's Reply in Support of Motion to Dismiss
Case No. 3:23-cv-04977-TLT

the State Court suit, is attempting to "project his personal view on abortion into other states." *Contra* ECF # 36 at 5. As explained, the State Court enforcement action seeks to penalize representations that are not about abortion.

Yelp uses these and other mischaracterizations to claim that the Attorney General's State Court enforcement action is a "'bad faith' prosecution." ECF # 36 at 13. The problem for Yelp is that courts place a heavy burden on litigants to substantiate claims of "bad faith" against government enforcers, and Yelp comes nowhere close to meeting that burden. For example, Yelp recognizes that "a coalition of 24 state attorneys general" complained to Yelp about the exact issue that the Texas Attorney General is litigating in the State Court enforcement action. ECF # 36 at 5. Yelp cites no precedent—and there is none—supporting the conspiratorial notion that **24 attorneys general** might all pursue something in bad faith. So how can Yelp show bad faith? Only by claiming that the Texas Attorney General is somehow differently situated because "[t]he other 23 state attorneys general . . .took no action" in court. ECF 36 at 5-6. But that happenstance is irrelevant to the bad faith inquiry. Yelp makes several other inaccurate suggestions in its desperate bid to show "bad faith." For example, Yelp suggests the Attorney General did not "conduct[] an investigation" before filing the State Court action. ECF # 36 at 6. That is demonstrably wrong. *See* Declaration of Ryan Hanlan ¶¶ 2-9. Yelp also suggests that the timing shows that the Attorney General "sued Yelp . . . apparently to score points with his base of voters" after returning from a "suspen[sion]" during a failed impeachment. ECF # 36 at 16. That is likewise wrong. *See* Hanlan Decl. ¶¶ 10-13.

Ultimately, Yelp appears to make this meritless "bad faith" argument because it has no choice—the Supreme Court's *Younger* precedent forecloses this suit otherwise, and Yelp has no argument to the contrary. Perhaps recognizing as much, Yelp invites this Court to overturn the Supreme Court's *Younger* precedent. ECF # 36 at 17 (claiming "[a]bstention . . . appears nowhere in the Constitution" and is "in direct 'tension with'" other Supreme Court doctrines). But that clearly inappropriate argument speaks volumes about the viability of Yelp's case.

This Court should dismiss Yelp's complaint.

## II. *YOUNGER* ABSTENTION BARS THIS COURT FROM EXERCISING JURISDICTION AFFECTING THE STATE COURT PROCEEDING.

As the Attorney General's motion to dismiss explained (at 4-6), *Younger* abstention bars this suit. Yelp notably does not dispute that *Younger* abstention's "threshold requirements" are satisfied. *See, e.g.*, ECF # 36 at 13. But Yelp says *Younger* abstention nevertheless should not apply because the Attorney General has acted in "bad faith." That argument fails.

The burden to show "bad faith" within the meaning of *Younger* is remarkably high. "[I]n the context of *Younger*, bad faith generally means that a prosecution has been brought without a reasonable expectation of obtaining a valid conviction." *Applied Underwriters, Inc. v. Lara*, 37 F.4th 579, 596 (9th Cir. 2022); *see also Gibson v. Schmidt*, 522 F. Supp. 3d 804, 818 (D. Or. 2021) ("facially meritless" standard). Courts do not find these circumstances lightly. For example, even when the courts find that a prosecutor's charging conduct is "unfair," they have nevertheless concluded that bad faith is not present. *Carden v. State of Mont.*, 626 F.2d 82, 84 (9th Cir. 1980). Nor have courts found bad faith when government officials express animus, such as that they will "run [Plaintiff] out of business." *Postscript Enterprises v. Peach*, 878 F.2d 1114 (8th Cir. 1989). Nor when the conduct of the government's proceeding is "unconstitutional in its execution" (provided the proceeding is "legitimate in its purposes"). *Diamond "D" Const. Corp. v. McGowan*, 282 F.3d 191, 199 (2d Cir. 2002). And here, of course, nothing even approximating those (insufficient) showings is present. It cannot be said that the Attorney General has no "reasonable expectation," *Applied Underwriters*, 37 F.4th at 596, of obtaining penalties in the State Court proceeding against Yelp. As the Attorney General's motion to dismiss explained (at 2-3), the success (or not) of the State Court action turns on whether consumers were misled by Yelp's deceptive and discriminatory treatment of pregnancy resource centers. The Attorney General contends the deception is plain, but at a bare minimum a deception finding cannot be rejected without factual evidence of what consumers would actually perceive. *See Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1140 (9th Cir. 1997). Yelp cites no Texas Deceptive Trade Practices Act case that comes close to showing that the Attorney General's suit has no reasonable expectation of success.

Yelp's "bad faith" case law (ECF # 36 at 14-15) is so patently inapposite that it underscores just how inapplicable the exception is here. Yelp fails to identify a single published decision from either the Ninth Circuit,[2] or any district court in the Ninth Circuit, that actually found bad faith in the *Younger* context. Instead, Yelp identifies, for example, a case where a black lawyer was being prosecuted in a State "County Court system" replete with "pervasive racism and discriminatory treatment of blacks" and where *eight* witnesses testified to corroborate this pervasive racism. *Lewellen v. Raff*, 843 F.2d 1103, 1110 (8th Cir. 1988). In one of Yelp's other cases, law enforcement seized a skating rink's "gangster rap" CDs and arrested the owners for "contributing to the delinquency of a juvenile"; significant evidence confirmed that law enforcement's decision was content-based and would not have been made for a different type of music. *Torries v. Hebert*, 111 F. Supp. 2d 806, 812, 818-19 (W.D. La. 2000). In another, the New Orleans District Attorney tried to prosecute an individual for perjury after the same District Attorney failed to convict the subject for "conspiracy" to assassinate JFK; the absurdity of the facts are *sui generis*. *Shaw v. Garrison*, 467 F.2d 113, 114-15 (5th Cir. 1972) (District Attorney accused federal government of conducting "fake investigation" into JFK). Yelp's other cases similarly come from different factual universes.[3]

---

[2] The one unpublished (and non-citable) Ninth Circuit decision finding bad faith did so only after observing, among other things, that the plaintiff "introduced undisputed evidence that effectively negates each charge leveled against him by" the government. *Flowers v. Seki*, 1996 WL 311473, at *2 (9th Cir. 1996). Yelp has offered no evidence—there is none—that could "negate" any of the allegations in the Attorney General's State Court action. The core facts, as Yelp admits, are undisputed. ECF # 36 at 15 ("[T]here was never any question what [Yelp's] Notice says or how Yelp uses it."). It is instead primarily a legal question, and a question about consumer perceptions, whether Yelp is exposed to liability for those facts.

[3] *Council for Periodical Distribs. Ass'n v. Evans*, 642 F.Supp. 552, 563, 567 (M.D. Ala. 1986) (finding that District Attorney "decided to institute criminal proceedings against the [local pornography] merchants because, in so doing, he [could] disrupt the plaintiff's chain of distribution and deny plaintiffs local outlets for their publications," and "his words and deeds avow[ed] a calculated scheme to provoke retreat by those who dared to sell sexually explicit magazines."); *Netflix v. Babin*, 641 F.Supp. 3d 319, 336 (E.D. Tex. 2022) (finding District Attorney's child pornography indictment against Netflix was brought without hope of a conviction when film contained "no sex scenes and there is only one scene that contain[ed] nudity," and District Attorney "received notice—well before he sought the New Indictments—that [partially nude actress] was over eighteen at the time of filming"); *Frampton v. City of Baton Rouge*, 2022 WL 90238, at *46 (M.D. La. Jan. 7, 2022) (City and Parish brought contempt motion against lawyer for releasing video "that was in the public domain, belonged to [lawyer's] clients, and he released it on the instructions and with the knowledge of his clients," and "[i]t was only immediately after [lawyer] issued [an] unfavorable press release . . . that the City/Parish filed its Contempt Motion."); *see also Mir v. Kirchmeyer*, 2014 WL 2436285, at *2, *13 (S.D. Cal 2014) ("The Superior Court directed the Medical Board to set aside its decision to revoke Plaintiff's licenses and remanded the matter to redetermine the penalty issues," but "[d]espite the California Superior Court's explicit instructions to the contrary, . . . [the Board] refused to reconsider their opinions, each time re-issuing the same opinion word-for-word."); *Cullen v. Fliegner*, 18 F.3d 96, 101-02 (2d. Cir. 1994) (statute

---

4
Defendant's Reply in Support of Motion to Dismiss
Case No. 3:23-cv-04977-TLT

Yelp's specific arguments about the Attorney General's State Court action fail to come close to "bad faith."

- Yelp says, for example, (ECF # 36 at 15) that its statement at issue in the State Court action was "literally true." But it is well-settled that "literally true" speech can nevertheless be misleading. *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1140 (9th Cir. 1997); *Bruton v. Gerber Products Co.*, 703 F. App'x 468, 471 (9th Cir. 2017) ("The California courts have held that even technically correct labels can be misleading."); *Miller v. Thane Intern., Inc.*, 519 F.3d 879, 886 (9th Cir. 2008) (reiterating, in the securities fraud context, that "some statements, although literally accurate, can become, through their context and manner of presentation, devices which mislead" (cleaned up)).

- Yelp says (ECF # 36 at 15) that the Attorney General failed to identify "evidence to show" anyone was "misled" by Yelp's statement. The Attorney General does not have to show evidence of specific consumer harm to plead a Deceptive Trade Practices Act case (*compare* Tex. Bus. & Com. Code § 17.47 *with id.* § 17.50), but that evidence nevertheless will likely be developed in the State Court litigation.

- Yelp says (ECF # 36 at 15) "there is no evidence" the Attorney General conducted an investigation. It is not clear how that is relevant—no principle of law requires that the Attorney General conduct an investigation before filing suit. That is particularly true where, as here, Yelp admits there was not "anything *to investigate*" given that the facts were public. But, as a matter of fact, the Attorney General *did* conduct an investigation. Hanlan Decl. ¶¶ 2-9.

- Yelp says (ECF # 36 at 16) that the Attorney General is seeking to "prevent Yelp (and others) from speaking on a contested political issue": abortion. That is transparently false—the Attorney General accepts that once Yelp changed its notice on pregnancy resource centers to expressly address abortion the statement was not actionable.

---

mandating a minimum distance for electioneering required a school district to set up distance markers to minimize the potential for arbitrary or discriminatory enforcement, but the "distance from the High School [had] never been measured, so no School District employee even knew where the campaign free zone actually ended," and the district had never enforced the statute before the election in question).

- Yelp resorts (ECF #36 at 16) to pure speculation about the "timing and circumstances of the Attorney General's actions," and presumes that the Attorney General filed this suit to "score points with his base of voters" upon his acquittal in impeachment proceedings. That is also wrong; this case was being investigated before the Attorney General's impeachment, and that investigation was escalating toward litigation *during* the impeachment (while the Attorney General was suspended from office). Hanlan Decl. ¶ 13.
- Yelp implies (ECF # 36 at 1) that the "[s]even month[]" gap between when Yelp changed its notice and when the Attorney General filed suit shows bad faith. But that lapse of time is irrelevant. *Anonymous v. Association of the Bar of City of N.Y.*, 515 F.2d 427, 434 (2d Cir. 1975) (five year delay not evidence of bad faith).

Ultimately, Yelp claims (ECF # 36 at 17-18) that the Supreme Court's *Younger* abstention case law should be revisited. That is plainly not an argument for *this* Court, and it underscores how, under current doctrine, Yelp's case belongs back in State Court.[4]

### III.  YELP CANNOT ESTABLISH PERSONAL JURISDICTION.

The Attorney General's motion to dismiss explained that this Court lacks personal jurisdiction over him because all of the relevant, complained of conduct occurred in Texas. Yelp's primary response (ECF # 36 at 8) is that the Attorney General is "demanding that Yelp alter its speech, including *in California*." But that is wrong.

The Ninth Circuit's decision in *Yahoo! Inc. v. La Ligue Contre Le Racisme ET L'Antisemitisme*, 433 F.3d 1199 (9th Cir. 2006), is the key precedent here, and it demonstrates that the Court lacks personal jurisdiction over the Attorney General. In that case, Yahoo! sued French parties who obtained French court orders requiring Yahoo! to block French citizens' access to Nazi material. Yahoo! sued the French parties seeking "a declaratory judgment that" these French orders were "unrecognizable and unenforceable." *Id.* at 1201. The *en banc* Court recognized that "letter[s]" from the French parties, and the French parties' "service of process on Yahoo!" was insufficient to subject them to personal jurisdiction in Yahoo!'s suit. *Id.* at 1209.

---

[4] There is no basis for discovery, *contra* ECF # 36 at 18, where, as here, no *factual* dispute is relevant to whether the Attorney General has a reasonable expectation of success on his State Court action.

But, and "most important" to the Court, the French parties had additionally "obtained two interim orders from the French court directing Yahoo! to take actions in California, on threat of substantial penalty." *Id. That* gave rise to personal jurisdiction, although it was nevertheless "a close question whether" even that was enough. *Id.* at 1211. Here, by contrast, the Attorney General has not obtained an order requiring Yelp to do anything at all, much less anything in California. Moreover, the Attorney General's State Court action is not seeking to force Yelp to do anything in California. Instead, the State Court action is Texas-centric, asserting Yelp "has caused injury, loss, and damage to the State of Texas" and that "[p]regnancy resource centers . . . are located throughout the State of Texas." Sieff Ex. 11 ¶¶ 7, 15. And that does not give rise to personal jurisdiction. *Cf. Def. Distributed v. Grewal*, 971 F.3d 485, 493-94 (5th Cir. 2020) (New Jersey Attorney General subject to personal jurisdiction in Texas where it demanded party "cease publication of their materials generally" rather than merely publication to New Jersey residents). Instead, all that has occurred so far is quite similar to the "letter" in *Yahoo!* and the "service of process" *that the Yahoo! court concluded was not enough*. 433 F.3d at 1209.

A contrary ruling on personal jurisdiction would open a Pandora's box and force Attorneys General to "have to defend [their] attempt to enforce [their] laws in courts throughout the nation." *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476 (5th Cir. 2008) (rejecting this state of affairs). That is especially true in the Internet age, where any Internet platform—like Yelp—could manufacture personal jurisdiction in its home State for another State's attempt to enforce its own laws for conduct that occurs in that State. That is not how personal jurisdiction works.[5]

### IV.   VENUE IN CALIFORNIA IS IMPROPER.

As stated above, Yelp "has caused injury, loss, and damage to the State of Texas" and "[p]regnancy resource centers . . . are located throughout the State of Texas." Sieff Ex. 11 ¶¶ 7, 15. The State brought suit against Yelp in Bastrop County, Texas, because that county contains one of Texas's many pregnancy resource centers. While Yelp's misrepresentations affected

---

[5] The Court's conclusion in *Twitter, Inc. v. Paxton*, 2021 WL 1893140 (N.D. Cal. May 11, 2021), that the Attorney General of Texas was subject to personal jurisdiction in California should not be followed because it was supported only by a one-sentence legal analysis, *id.* at *2, and because it was purely advisory, since the Court concluded in the same opinion that it lacked Article III jurisdiction, *id.* at *4.

pregnancy resource centers nationwide, the State's suit deals specifically with Yelp's misrepresentations about *Texas* pregnancy resource centers; the State never once alleges that it is seeking relief on behalf of California consumers. Any allegations that the State infringed upon Yelp's First Amendment rights would necessarily pertain only to subject matter located in Texas.

### V. YELP'S FIRST AMENDMENT ARGUMENT FAILS.

Finally, Yelp's First Amendment arguments do not prevent dismissal. The Attorney General's motion to dismiss explained that Yelp's First Amendment argument will fail. Yelp's responses lack merit.[6]

As the Attorney General explained, Yelp's First Amendment argument will fail because its statement at issue in the State Court action was misleading and deceptive to consumers. The First Amendment does not protect such statements, particularly in the commercial arena, even if the statements may be "literally true." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1140 (9th Cir. 1997). Yelp's primary response is to make this case about something that it is not—namely, by accusing the Attorney General of enforcing against Yelp because Yelp's statement failed to contain "the government's preferred message." ECF # 29 at 2. But that is not true—the Attorney General is indifferent to Yelp's message (so long as it is not misleading), and the proof is in the pudding: the Attorney General has recognized that Yelp's new, specific statement on abortion is *not* actionable. So why does Yelp make this inapposite argument? Presumably, Yelp does this to open the door to a body of case law that would bolster Yelp's First Amendment theory. The problem for Yelp, though, is that that body of cases is demonstrably inapplicable.

Yelp's reliance on *Miami Herald Publishing Co. v. Tornillo*, 418 U.S. 241 (1974), illustrates the point. *See* ECF # 29 at 3 (Yelp featuring that case, and asserting that it "is on point"). That case was about a Florida "right of reply" law—it allowed a political candidate who was attacked by a newspaper to "demand that the newspaper print, free of cost to the candidate, any reply the candidate may make to the newspaper's charges." *Tornillo*, 418 U.S. at 244. The

---

[6] Yelp may claim that the Attorney General's bases for dismissal were limited to abstention, personal jurisdiction, and venue, and so the Attorney General should not make argument on the First Amendment in this reply to its motion to dismiss. That would be wrong, but the validity (or not) of Yelp's First Amendment arguments is also relevant to Yelp's "bad faith" argument under *Younger* abstention.

Supreme Court concluded that this kind of "[g]overnment-enforced right of access" to newspapers is unconstitutional. *Id.* at 257. But that is irrelevant to the Attorney General's suit. The Attorney General is not seeking, through its State Court action, to force Yelp to give anyone access to its platform. Nor is he forcing Yelp to print anyone's message, including his own. He is merely seeking to enforce against Yelp for misleading consumers.

      Yelp next offers (ECF # 29 at 3-4) an artificially cramped understanding of "commercial speech" and claims that its speech at issue in the State Court action does not qualify. As a threshold matter, even if Yelp were right, that would not necessarily mean that the Attorney General cannot enforce. But Yelp's premise is also wrong. Yelp says that its speech is not commercial because its speech did not "propose a commercial transaction." ECF # 29 at 3. But commercial speech includes other kinds of content too. "[C]ommercial speech" also includes, for example, "expression related . . . to the economic interests of the speaker *and* its audience." *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 561 (1980). And Yelp's statement about pregnancy resource centers is highly related to the economic interests of pregnancy resource centers and about the audience for those services. Precedent underscores how similar speech, and even speech with a far more attenuated commercial nexus, qualifies as commercial speech for First Amendment purposes. *See, e.g.*, *Am. Acad. of Pain Mgmt. v. Joseph*, 353 F.3d 1099, 1101 (9th Cir. 2004) (commercial speech for physician to "advertis[e] that he or she is 'board certified' in a medical specialty"); *United States v. Philip Morris USA*, 566 F.3d 1095, 1143 (D.C. Cir. 2009) ("In addition to information related to proposing a particular transaction, such as price, [commercial speech] can include material representations about the efficacy, safety, and quality of the advertiser's product, and other information asserted for the purpose of persuading the public to purchase the product.").

      Yelp's case law (ECF # 29 at 3-4) about "Consumer Reports alert[s]" are also inapposite. *Bose Corp. v. Consumers Union of U.S.*, for example, is about the standard of review when "actual malice" is an element of a plaintiff's case. 466 U.S. 485, 487 (1984). The Attorney General is not required to show actual malice in his Deceptive Trade Practices Act suit, and the private plaintiff's claim in *Bose*, by contrast, arose under a distinct "product disparagement" cause of action. *Id.* at

9
Defendant's Reply in Support of Motion to Dismiss
Case No. 3:23-cv-04977-TLT

489. At the *very* most, *Bose* might be construed (it should not be) to stand for the proposition that the Attorney General would need to show "actual malice" in his State Court action; not that the Attorney General's State Court action is categorically unconstitutional. But the Attorney General pled facts that show "actual malice"—namely, that Yelp's reasoning about informing consumers is disingenuous, and that its own public statements indicate that it wanted to "take action" to harm pregnancy resource centers and to elevate other service providers to pregnant women because it disagreed with the Supreme Court's *Dobbs* decision. Sieff Ex. 11 ¶ 18. But that gets well into the weeds of the merits of the State Court litigation and discovery on that specific topic—issues that underscore why *Younger* abstention is appropriate and why this Court should not hazard a First Amendment ruling in this procedural setting. Yelp's other case law in this area is similarly inapposite. *Lowe v. SEC* was about an "*opinion* about a commercial product," 472 U.S. 181, 210 & n.58 (1985)—but the Attorney General's State Court action is not seeking to hold Yelp liable for an "opinion." And *CTS, Inc. v. CFTC* concluded that an advisory was not "commercial speech" in a *pre-enforcement* challenge to a federal rulemaking, outside the context of any specific speech at issue, such as here. 149 F.3d 679, 686 (7th Cir. 1998).

Furthermore, Yelp's contention (ECF # 36 at 4) that the State offered "no evidence" to support its claims against Yelp is false. The February 7, 2023 letter to Yelp from 24 attorneys general cited a 2019 study in which it was found that pregnancy resource centers served nearly two million people, and provided services and assistance worth over $266 million. The same letter identified how Yelp's treatment of pregnancy resource centers was discriminatory and deceptive, because many abortion providers do not offer significant medical services (such as operating onsite emergency rooms to handle surgery-related complications), and do not have on-site licensed medical professionals. The Attorney General's State Court suit referenced all of this information. Sieff Ex. 11 ¶ 24.

## VI.  CONCLUSION

Defendant respectfully requests this Court to grant Defendant's Motion to Dismiss, and order any other relief, either at law or in equity, to which Defendant has shown itself justly entitled.

DATED: November 6, 2023

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

GRANT DORFMAN
Deputy First Assistant Attorney General

JAMES LLOYD
Deputy Attorney General for Civil Litigation

KIMBERLY GDULA
Acting Chief, General Litigation Division

*/s/ Alyssa Bixby-Lawson*
ALYSSA BIXBY-LAWSON
Assistant Attorney General

Ryan S. Baasch
Chief, Consumer Protection Division

Scott Froman
Assistant Attorney General
Office of the Attorney General

Eric Grant
Hicks Thomas LLP

ATTORNEYS FOR DEFENDANT
KEN PAXTON, ATTORNEY GENERAL
OF THE STATE OF TEXAS