UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YELP INC.,<br><br>    Plaintiff,<br><br>v.<br><br>KEN PAXTON,<br><br>    Defendant. | Case No. 23-cv-04977-TLT<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>Re: ECF No. 16 |

Plaintiff Yelp, Inc. ("Yelp") brought the present motion for a preliminary injunction against Defendant Ken Paxton, in his official capacity as Attorney General of the State of Texas ("Paxton"). *See* ECF No. 16 ("Mot."). Yelp seeks an order enjoining Paxton from taking any further action to penalize Yelp's publication of truthful speech about crisis pregnancy centers ("CPCs"), including the statement that CPCs "typically provide limited medical services and may not have licensed medical professionals onsite." *Id*. at 14. Having considered the parties' briefing, evidentiary submissions, and oral argument, the Court **DENIES** Yelp's motion for a preliminary injunction and **DISMISSES** the case, albeit reluctantly.

I.    **FACTUAL AND PROCEDURAL BACKGROUND**

Yelp "owns and operates Yelp.com," a website and mobile application that allows people to review local businesses. Compl. ¶¶ 2, 15, ECF No. 1; ECF No. 16-1 ("Malik Decl.") ¶ 2. Yelp users have contributed more than 260 million reviews of more than 6.3 million active business locations. Compl. ¶¶ 2, 16; Malik Decl. ¶ 3. Individuals rely on Yelp "to provide trustworthy and reliable information" about a wide array of businesses, including restaurants, home-related services, and healthcare providers. Compl. ¶ 2. Trust is an important aspect of Yelp's business, and when Yelp is concerned that consumers "may be deceived when they search for information

about local businesses," Yelp provides additional information to mitigate this risk. Compl. ¶¶ 2, 17; Malik Decl. ¶¶ 4, 6.

Defendant Paxton is the Attorney General of the State of Texas. *Id.* ¶ 8. He is the primary law enforcement officer of the State of Texas and is authorized to enforce the Texas Deceptive Trade Practices Act ("DTPA"). *Id.* ¶ 8; Tex. Bus. & Com. Code §§ 17.45(8); 17.47(a).

As Yelp describes them, CPCs are "businesses that offer pregnancy-related counseling but not abortion services or referrals to abortion providers." *Id.* ¶ 3. Starting in 2018, Yelp learned that some CPCs were attempting to mislead consumers about their services. *Id.* ¶¶ 3, 20; Malik Decl. ¶ 9. Yelp investigated the issue and found that a large percentage of CPC websites provided what the company considered to be false or misleading information. Compl. ¶ 21; Malik Decl. ¶ 9, Exs. A, B; ECF No. 16-2 ("Sieff Decl."), Ex. 1. Some studies found that CPCs operated in "bad faith" by employing strategies to draw in women seeking abortion services, even though CPCs do not provide abortions or referrals to abortion providers. Compl. ¶ 21; Sieff Decl., Ex. 4.

After *Dobbs v. Jackson Women's Health Organization*, 142 S. Ct. 2228 (2022), Yelp "recommitted" to providing accurate and useful information about reproductive health to users. Compl. ¶ 24. In August 2022, Yelp published a notice that informed consumers that CPCs "typically provide limited medical services and may not have licensed medical professionals onsite" (the "First Notice"). *Id.* ¶¶ 3, 24; Malik Decl. ¶¶ 13-14. According to Yelp, this was a true statement based on evidence of the types of services CPCs provide and the qualifications of CPC staff. *Id*. ¶ 24; Sieff Decl. Exs. 5-9, 19. Yelp also noted that some pro-life medical organizations have described CPCs as offering "limited medical services" and that some CPC websites post disclaimers stating they are a "limited medical clinic" or "limited medical facility." *See e.g*., Sieff Decl., Ex. 14; *id*. Ex. 15 at 9; *id*. Ex. 16 at 2; *id*. Ex. 17 at 3.

On February 7, 2023, a coalition of 24 state attorneys general, including Paxton, sent a letter to Yelp, claiming that Yelp's First Notice was misleading and demanding that Yelp remove it. Compl. ¶¶ 4, 25; Ex. 2, at 1–2, ECF No. 1-2. The letter also criticized Yelp's decision to not issue a comparable notice for "abortion facilities operated by Planned Parenthood and related organizations." Ex. 2 at 2. Yelp has noted that it has not seen any "widespread academic studies,

1   media reports, or other credible evidence indicating consumers are misled or confused about
2   [abortion facilities']" services.  Malik Decl. ¶ 15.  As a result, Yelp does not think it is necessary
3   to provide a notice for abortion facilities.  *Id*.

4         Although Yelp asserted the First Notice was not misleading, Yelp updated its notice to
5   state that "Crisis Pregnancy Centers do not offer abortions or referrals to abortion providers" (the
6   "Second Notice").  *Id*. ¶ 16; Compl. ¶¶ 4, 26; Ex. 3, at 2–3, ECF No. 1-3.  On February 14, 2023,
7   Paxton's office issued a press release that stated the Second Notice provided an "accurate
8   description."  Compl. ¶ 28, n. 12; Sieff Decl., Ex. 10.  The lead author of the February 7 letter, the
9   Attorney General of Kentucky, publicly praised Yelp's response and stated, "I appreciate Yelp's
10  timely response in addressing our concerns."  Sieff Decl., Ex. 18 at 6.

11        About seven months later, on September 22, 2023, Paxton sent a letter to Yelp, notifying
12  the company that his office intended to sue because it concluded Yelp had violated the DTPA.
13  Compl. ¶ 29; Ex. 1, at 1, ECF No. 1-1. The letter called out Yelp's First Notice, that stated CPCs
14  "typically provide limited medical services and may not have licensed medical professionals
15  onsite."  Compl., Ex. 1 at 1.  The letter stated that Paxton was authorized to file suit within seven
16  days and that he could seek "civil penalties of up to $10,000.00 per violation," as well as
17  attorneys' fees and other penalties.  *Id*. at 1.  The letter did not limit its reach to "violations" in
18  Texas.  *See generally id*.

19        Consequently, Yelp filed suit against Paxton, in his official capacity as Attorney General
20  of the State of Texas, on September 27, 2023.  *See* Compl.  The next day—and within seven days
21  of Texas's letter to Yelp—Paxton filed a petition against Yelp in Texas state court, claiming the
22  First Notice was misleading.  Sieff Decl., Ex. 11.  The petition sought to permanently enjoin Yelp
23  from "posting any [ ] false and/or misleading disclaimers or representations" about CPCs.  *Id.*
24  ¶ 32.  The injunction Paxton sought was not limited to Yelp's conduct in Texas.  *See id.*

25        On October 2, 2023, Yelp moved for a preliminary injunction to enjoin Paxton from taking
26  any further action to penalize Yelp's publication of its CPC notices.  *See* Mot.  The hearing for
27  this preliminary injunction was held on November 7, 2023.

28

## II. LEGAL STANDARD

### A. Preliminary Injunction

A preliminary injunction is a matter of equitable discretion and "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). Its "purpose . . . is to preserve the status quo and the rights of the parties until a final judgment issues in the cause." *U.S. Philips Corp. v. KBC Bank N.V.*, 590 F.3d 1091, 1094 (9th Cir. 2010).

A party seeking a preliminary injunction must meet one of two variants of the same standard. The traditional *Winter* standard requires the movant to show that (1) it "is likely to succeed on the merits;" (2) it "is likely to suffer irreparable harm in the absence of preliminary relief;" (3) "the balance of equities tips in [its] favor;" and (4) "an injunction is in the public interest." 555 U.S. at 20. Under the "sliding scale" variant of the same standard, "if a plaintiff can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips sharply in the plaintiff's favor,' and the other two *Winter* factors are satisfied." *All for the Wild Rockies v. Peña*, 865 F.3d 1211, 1217 (9th Cir. 2017) (emphasis in original) (quoting *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013)). Under either standard, a plaintiff must demonstrate she is likely to suffer irreparable injury in the absence of preliminary relief.

## III. DISCUSSION

Yelp moves for a preliminary injunction to prevent Paxton from taking any further action to penalize Yelp's publication of truthful speech about CPCs. In response, Paxton raises three arguments. First, Paxton argues abstention is proper under *Younger v. Harris*, 401 U.S. 37, 41 (1971). Second, Paxton contends that the Court does not have personal jurisdiction over him. Third, Paxton maintains that Yelp has failed to show a preliminary injunction is merited based on the *Winter* factors.

4

A.  *Younger* **abstention applies.**

1.  **There is a prima facie case for *Younger* abstention.**

In most cases, if a federal court has jurisdiction, its obligation to hear and decide a case is "virtually unflagging." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013) (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)).  But *Younger* abstention carves out an exception to this general rule, requiring federal courts to "decline to exercise jurisdiction over the underlying claims for reasons of comity." *Washington v. Los Angeles Cnty. Sheriff's Dep't*, 833 F.3d 1048, 1058 (9th Cir. 2016) (citations omitted). *Younger* abstention applies in only three "exceptional" categories of cases: (1) "parallel, pending state criminal proceeding[s]," (2) "state civil proceedings that are akin to criminal prosecutions," and (3) state civil proceedings that "implicate a State's interest in enforcing the orders and judgments of its courts." *Sprint*, 517 U.S. at 70 (internal citations omitted).

"In civil cases, therefore, *Younger* abstention is appropriate only when the state proceedings: (1) are ongoing, (2) are quasi-criminal enforcement actions or involve a state's interest in enforcing the orders and judgments of its courts, (3) implicate an important state interest, and (4) allow litigants to raise federal challenges." *ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*, 754 F.3d 754, 759 (9th Cir. 2014) (citing *Sprint*, 571 U.S. at 80–81).  If these elements are met, the court then considers "whether the federal action would have the practical effect of enjoining the state proceedings and whether an exception to *Younger* applies." *Id.* (internal citations omitted).

Paxton argues that these elements are met, Opp'n 4–6; Yelp does not contest that they are, Reply 10–15; and the Court concludes that Paxton is correct.  There is an ongoing state proceeding—Paxton filed his complaint in Bastrop County court on September 28, 2023, one day after Yelp filed suit in the Northern District of California.[1]  *See* Compl.; Opp'n 6.  The state

---

[1] To be sure, Yelp filed suit before Paxton did.  But whether the state proceeding was "ongoing" depends on more than just the commencement date of either the federal or state lawsuits.  *See M & A Gabaee v. Cmty. Redevelopment Agency*, 419 F.3d 1036, 1042 (9th Cir. 2005) (noting that even when the federal suit was filed before the state suit, that "the federal filing date is not determinative").  Indeed, this factor is met "when state court proceedings are initiated before any proceedings of substance on the merits have taken place in the federal court." *Id.* at 1040 (quoting *Hicks v. Miranda*, 422 U.S. 332, 349 (1975)).

5

proceedings are quasi-criminal enforcement actions that involve sanctions, including civil penalties of up to $10,000.00 per violation of the DTPA. *See e.g.*, Compl. ¶ 29. The state proceedings implicate an important state interest, because Texas has an interest in protecting its consumers from "deceptive trade practices." *See* Opp'n 5. And the federal action would have the practical effect of enjoining the state proceedings—Yelp is specifically requesting that the Court issue a preliminary injunction to prevent Paxton from taking any action to prosecute, fine, or penalize Yelp. *See* Compl. 10.

### 2. *Younger* does not apply to state actions brought in bad faith.

The Court thus asks whether an exception to *Younger* applies. *Younger* abstention is inappropriate when the "state proceeding is motivated by a desire to harass or is conducted in bad faith.'" *Gilbertson v. Albright*, 381 F.3d 965, 983 (9th Cir. 2004) (citing *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 611 (1975)). "A plaintiff who seeks to head off *Younger* abstention bears the burden of establishing that one of the exceptions applies." *Calvary Chapel San Jose v. Cody*, No. 20-CV-03794, 2023 WL 2638318, at *4 (N.D. Cal. Mar. 10, 2023) (citing *Diamond "D" Const. Corp. v. McGowan*, 282 F.3d 191, 198 (2d Cir. 2002)). This burden is heavy, as these exceptions are "narrow." *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 602 (1975).

Yelp argues that a state case is brought in bad faith and *Younger* does not apply in two circumstances: first, when it is brought "without a reasonable expectation of obtaining a valid conviction," Reply (quoting *Baffert v. California Horse Racing Bd.*, 332 F.3d 613, 621 (9th Cir. 2003)), and second, when it is brought "in retaliation for or to discourage the exercise of constitutional rights," *id.* (first quoting *Lewellen v. Raff*, 843 F.2d 1103, 1109 (8th Cir. 1988); and then citing *Cullen v. Fliegner*, 18 F.3d 96, 103–04 (2d Cir. 1994)).

It bears noting that the Ninth Circuit has not recognized the second exception to *Younger*—retaliation for exercising constitutional rights—in a published decision. *See* Reply 11 & 11 n.1. Still, other circuit courts routinely rely on this exception. *See Lewellen*, 843 F.2d at 1109; *Cullen*, 18 F.3d at 103–04 (2d Cir. 1994). And when it comes to *Younger*, the Ninth Circuit

looks to other circuits to define the doctrine's scope.[2]  *See Applied Underwriters, Inc. v. Lara*, 37 F.4th 579, 596 (9th Cir. 2022) ("The Second Circuit has provided . . . helpful guidance for determining what constitutes an allegation of 'bad faith'" (citing *Diamond "D" Const. Corp. v. McGowan*, 282 F.3d 191, 200 (2nd Cir. 2002))).  While the Ninth Circuit has not used the second exception, district courts within the Ninth Circuit have.  *See, e.g.*, *Cornell v. Off. of Dist. Att'y, Cnty. of Riverside*, 616 F. Supp. 3d 1026, 1039 (C.D. Cal. 2022); *Gibson v. Schmidt*, 522 F. Supp. 3d 804, 817 (D. Or. 2021); *but see Gibson*, 522 F. Supp. at 818 ("Some courts have held that the bad faith exception applies only where plaintiffs prove that the state has initiated the state court proceedings without any reasonable expectation of success." (collecting cases)).  And *Younger* itself endorsed this second exception, at least implicitly.  *See Lewellen*, 848 F.2d at 1109 ("Bad faith and harassing prosecution also encompass those prosecutions that are initiated to retaliate." (citing *Younger*, 401 U.S. at 48)).  The Court thus asks whether Paxton pursued a claim against Yelp in bad faith, under either standard.  In doing so, and in keeping with the Ninth Circuit's practice, it looks both inside and outside the Ninth Circuit for guidance.

### 3. Neither exception to *Younger* applies.

The first exception to *Younger*—bringing a case without a reasonable expectation of success—"does not come into play simply because the state might have brought a weak case against a defendant." *Gibson*, 522 F. Supp. 3d at 816–17 (citing *Kihagi v. Francisco*, No. 15-cv-01168-KAW, 2016 WL 5682575, at *4 (N.D. Cal. Oct. 3, 2016)).  While "facially meritless" cases meet the bad faith exception, *id.* at 818, otherwise "investigat[ing] the merits of the [state's case]—i.e., evaluat[ing] claims, defenses, and attendant evidence . . . is precisely what *Younger* abhors," *Cornell,* 616 F. Supp. 3d at 1037.  Beyond meritless cases, courts have found bad faith "in cases involving repeated harassment with no intention of securing a conclusive resolution or where there is evidence of pecuniary bias by the tribunal." *Applied Underwriters*, 37 F.4th at 596 (cleaned up).

---

[2] As do other circuits.  *See, e.g.*, *Lewellen*, 843 F.2d at 1109 (citing the Fourth, Fifth, Seventh, and Eleventh Circuit); *Cullen*, 18 F.3d at 104 (citing the Fifth, Eighth, and Eleventh Circuits).

*Younger's* second exception for retaliation sets a similarly high bar. The Second Circuit's decision in *Cullen v. Fliegner* and the Eleventh Circuit's decision in *Lewellen v. Raff* help illustrate the difficulty of meeting it. *See* 18 F.3d at 99–104; 843 F.2d at 1109–1111. In *Cullen*, a school board brought a claim against a teacher for distributing election materials too close to a voting site. *See id.* at 99–100. In holding that the claim was brought to retaliate and that the second exception applied, the court pointed to the multiple disciplinary charges that the board had filed against the teacher in the past, its "past history of personal conflict" with him, and its "ad hominem" attacks against him. *See id.* at 104. The court relied on a similar bevy of evidence of bad faith in *Lewellen*. *See* 843 F.2d at 1109–1112. There, a defense attorney sought an injunction to halt a criminal proceeding against him, arguing that the prosecution was based on his race. *Id.* at 1105. In holding that the proceeding was brought in bad faith, the court noted the complaint's allegations of "pervasive racism and discriminatory treatment of blacks in the [ ] [c]ounty court system," "the testimony of eight witnesses at the preliminary injunction hearing" about that racism, and the fact that the plaintiff's criminal case was scheduled less than a month before an election he was running in, apparently to doom his electoral chances. *Id.* at 1110–1112. In short, a plaintiff faces a tall hurdle to show retaliation.

In proving either exception applies, "the subjective motivation of the state authority in bringing the proceeding is critical to, if not determinative of, [the] inquiry." *Diamond "D"*, 282 F.3d at 199; *see also Cornell*, 616 F. Supp. 3d at 1038 ("[O]ther district courts in the Ninth Circuit have endorsed the subjective approach outlined in *Diamond "D"*."). To prove such motivations, "conclusory allegations" are not enough; a plaintiff must provide concrete evidence. *See Laine v. Cnty. of Contra Costa*, No. 21-CV-10052-JST, 2022 WL 19975414, at *7 (N.D. Cal. Sept. 2, 2022) (citing *Anderson v. McKim*, No. C-14-4463 EMC, 2015 WL 831227, at *4 (N.D. Cal. Feb. 23, 2015)).

Yelp's allegations of bad faith tell a persuasive story: in the past, the Texas Attorney General prosecuted a CPC under the DTPA for advertising itself under "Abortion Information & Services" in the medical clinic section of the Yellow Pages. *See* Reply 12 (citing *Mother & Unborn Baby Care of N. Tex., Inc. v. State*, 749 S.W.2d 533 (Tex. App. 1988)). Now, Texas is

8

1    pursuing Yelp under the same statute for the First Notice, which describes the *lack* of medical
2    services at CPCs. It is pursuing Yelp even though it conceded that the Second Notice is accurate,
3    even though it agreed at the hearing on the preliminary injunction that the First notice is "literally
4    true," and even though no other attorney general that initially complained about the First Notice
5    has sued Yelp. *See id.* 12–13. Indeed, this is the first case Paxton pursued after surviving
6    impeachment, which—by Yelp's account—was an apparent attempt "to score points with his base
7    of voters." *Id.* at 13. And he brought the case one day after Yelp filed its case in this Court to
8    protect its First Amendment rights.

9         While persuasive, Yelp's story does not escape *Younger's* pull. For one, Paxton's lawsuit
10   is not "facially meritless." *Gibson*, 522 F. Supp. 3d at 818. To be sure, "[a]bsent evidence that the
11   defendant's statement was false, a DTPA action for misrepresentation cannot survive." *Doe v.*
12   *Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 480 (Tex. 1995); *see also Top Rank, Inc. v.*
13   *Gutierrez*, 236 F. Supp. 2d 637, 659 (W.D. Tex. 2001) ("[A] statement must be false to be
14   actionable." (citing *Pennington v. Singleton*, 606 S.W.2d 682, 687 (Tex. 1980))). And Paxton's
15   counsel conceded at the hearing that the First Notice is "literally true." But he also walked this
16   concession back, equivocating about whether the First Notice was true or false. *See* ECF No. 40,
17   at 8 ("[The First Notice is] true in the abstract, but when you append it to a specific [CPC] . . . it's
18   going to be literally false."). Moreover, Paxton is suing Yelp for, among other things,
19   "disparaging the goods, services, or business of another by providing a false or misleading
20   representation of facts"—arguing that First Notice falsely or misleadingly disparaged CPCs. Mot.
21   Ex. 11, at 10 (quoting citing Tex. Bus. Prof. Code § 17.46(b)(c)). Whether the First Notice is true
22   or misleading under this provision is open to interpretation: Yelp's own exhibits show that 26%
23   of CPCs have a registered nurse, that 16% have a registered doctor, and that 66% provide limited
24   medical services. *See* Sieff Decl., Ex. 7, at 760; *id.* Ex. 19, at 2, 5.

25        While it appears that Paxton conducted a thin investigation into the matter—it seems that
26   the state corresponded with only one or two CPCs—he did not fail to conduct any investigation at
27   all, as Yelp originally supposed. *See* Reply 12; Reply Mot. Dismiss, Decl. Ryan Hanlan, ECF No.
28

9

37-1.[3]  Though he brought the case after Yelp filed in this Court, he had advised Yelp that he might sue one week before Yelp filed.  And Yelp has not pointed to concrete evidence of Paxton's desire to rebound from his near-impeachment or to curry favor among Texas voters.  Nor has Yelp pointed to a history of harassment from Paxton similar to the history of disciplinary charges in *Cullen*.  *See* 18 F.3d at 99–104.

Yelp draws a comparison between this case and *Shaw v. Garrison*, 467 F.2d 113 (5th Cir. 1972), in which the bad faith exception applied because "a prosecutor [had] pursued highly questionable charges against the plaintiff apparently for the sole purpose of gaining publicity for himself."  *Lewellen*, 843 F.2d at 1112 n.10; Reply 13.  If anything, however, *Shaw* makes clear that Yelp has not evinced enough evidence to show bad faith.  In *Shaw*, the defendant in a state court perjury case sought a restraining order in federal court to stop the prosecution.  *Shaw*, 467 F.2d at 115.  The Fifth Circuit upheld the district court's decision that the perjury charge was brought in bad faith, pointing to not only the prosecutor's desire to gain publicity, but also to a previous—and meritless—charge the prosecutor had brought against the same defendant and the prosecutor's decision not to prosecute similarly situated defendants, among other things.  *Id.* at 117–18.  Yelp does not point to such ample evidence of bad faith, and its strong circumstantial evidence is not sufficiently concrete.

To be clear, the Court is not convinced that Paxton acted entirely in good faith in bringing this case against Yelp; still, Yelp has not provided enough concrete evidence of his subjective motivations to prove otherwise.  *See Laine*, 2022 WL 19975414, at *7.  The Court thus concludes that neither exception to *Younger* applies.

**B.     Because *Younger* applies, the case is dismissed.**

Yelp requests that the Court stay the case if it determines that *Younger* applies.  *See* Reply 15.  As a general rule, however, "*Younger* abstention requires dismissal."  *Beltran v. State of Cal.*, 871 F.2d 777, 782 (9th Cir. 1988) (emphasis omitted) (citing *Gibson v. Berryhill*, 411 U.S. 564,

---

[3] Though the Hanlan declaration was appended to briefing on the motion to dismiss, the parties discussed it at the hearing on the preliminary injunction at issue here.

10

577 (1974). That said, "federal courts should not dismiss actions where damages are at issue; rather, damages actions should be stayed until the state proceedings are completed." *Gilbertson v. Albright*, 381 F.3d 965, 968 (9th Cir. 2004); *see also Roshan v. Lawrence*, No. 20-CV-04770-AGT, 2021 WL 151979, at *7 (N.D. Cal. Jan. 18, 2021). But Yelp does not request damages in its Complaint. *See generally* Compl. As a result, the Court has no choice but to dismiss the matter.[4]

**IV. CONCLUSION**

Because *Younger* abstention applies and its bad-faith exception does not, the Court **DENIES** Yelp's Motion and **DISMISSES** the case. *See Washington*, 833 F.3d at 1058 ("Dismissal on jurisdictional grounds occurs not only before an examination of the merits, but curtails such an examination." (citation omitted)).[5]

**IT IS SO ORDERED.**

Dated: January 31, 2024

_____
TRINA L. THOMPSON
United States District Judge

---

[4] Yelp also requests an evidentiary hearing. Reply 15. It is true in other circuits that district courts err "by dismissing [a] complaint as barred by *Younger* abstention without holding an evidentiary hearing to resolve factual disputes." *Kern v. Clark*, 331 F.3d 9, 10 (2d Cir. 2003). And such hearings are certainly held. *See, e.g.*, *Lewellen*, 843 F.2d at 1110 (describing the district court's six-day evidentiary hearing). Yet in the Ninth Circuit, "an evidentiary hearing should not be held 'when the magnitude of the inquiry would make it impractical.'" *Hall v. Val-Chris Invs., Inc.*, No. 23-CV-1349 TWR (JLB), 2023 WL 4943290, at *5 (S.D. Cal. Aug. 1, 2023) (quoting *Int'l Molders' & Allied Workers' Loc. Union No. 164 v. Nelson*, 799 F.2d 547, 551 (9th Cir. 1986)). A hearing is more appropriate "[w]here sharply disputed [ ] facts are simple and little time would be required." *Nelson*, 799 F.2d at 555 (citation omitted). Given the magnitude of the inquiry into bad faith and the fact that a hearing (though an evidentiary hearing) has already been held, the Court declines Yelp's request.

[5] See *Moore v. Maricopa Cty Sheriff's Office*, 657 F.3d 890, 895 (9th Cir. 2011). "Unlike those situations where a federal court merely abstains from decision on federal questions until the resolution of underlying or related state law issues ... Younger v. Harris contemplates the outright dismissal of the federal suit, and the presentation of all claims, both state and federal, to the state courts." *Gibson v. Berryhill*, 411 U.S. 564, 577, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973). *Washington v. Los Angeles Cnty. Sheriff's Department*, 833 F.3d 1048, 1058 (9th Cir. 2016)

11